IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| | 1:07 CV 2787 |
| PETER LORA, et al | JUDGE DAN AARON POLSTER |
| V. | MOTION TO DISMISS |
| DEAN BOLAND | FINDINGS OF FACT<br>AND<br>CONCLUSIONS OF LAW REQUESTED |

Now comes Dean Boland and respectfully requests this court issue findings of fact and

conclusions of law in support of an order dismissing this complaint for the reasons contained in the

attached brief.

/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

Table of Contents

TABLE OF AUTHORITIES..................................................................................................................II

ARGUMENT POINTS ....................................................................................................................IV

PROCEDURAL AND FACTUAL HISTORY........................................................................................1

LAW AND EXPLANATION ..............................................................................................................2

    I.    DOES THE First Amendment protect PLAINTIFFS' possession of THE COURT EXHIBITS necessary TO SUPPORT THEIR CLAIMS..................................................................................................................2

        A.    First Amendment Ruling .........................................................................................3

        B.    First Amendment Protection of Possession of Contraband Images for Proper Purposes ............3

    II.    ABSOLUTE WITNESS IMMUNITY ......................................................................................6

        A.    Witness Immunity Generally ...................................................................................6

        B.    Even Perjury Is Immune From Civil Liability ........................................................7

    III.    JUDICIAL PROCEEDINGS IMMUNITY ..............................................................................8

    IV.    FEDERAL STATUTE DOES NOT PREEMPT STATE STATUTE ................................................9

    V.    STATUTE OF LIMITATIONS HAS RUN ON DEFAMATION CLAIMS ......................................9

    VI.    STATUTE OF LIMITATIONS HAS RUN ON THE INVASION OF PRIVACY CLAIMS ................10

    VII.    DAMAGES ...................................................................................................................10

    VIII.    18 U.S.C. 2256(8)(C) DEFINITION IN FEDERAL STATUTE IS UNCONSTITUTIONAL ...........10

    IX.    The R.C. 2741 claim is not Applicable to Boland's Conduct ..................................14

CONCLUSION................................................................................................................................14

i

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. ACLU, et al 542 U.S. 656,  124 S.Ct. 2783) .......................................................... 11

Ashcroft v. Free Speech Coalition 122 S.Ct. 1389, 535 U.S. 234 ........................................... 11, 12, 13

Bennett v. Passic, 545 F.2d 1260 (10th Cir. 1976) ....................................................................... 8

Blevins v. Ford, 572 F.2d 1336 (9th Cir. 1978)............................................................................ 8

Briscoe v. Lahue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)...................................... 7

Briscoe v. LaHue, 663 F.2d 713 (7th Cir. 1981) .......................................................................... 8

Brown v. Collins, 131 U.S.App.D.C. 68......................................................................................... 7

Burke v. Miller, 580 F.2d 108 (4th Cir. 1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d
    487 (1979).............................................................................................................................. 8

Cantwell v. Connecticut, 310 U.S. 296, 309-311 (1940)............................................................. 11

Contra, Briggs v. Goodwin, 569 F.2d 10 (1977), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d
    1133 (1978)........................................................................................................................... 8

Dye v. Columbus Retail Merchants Delivery, Inc. (Nov. 4, 1975), 10th Dist. No. 75AP-252 ............. 10

Hilliard v. Williams, 516 F.2d 1344 (6th Cir. 1975), vacated on other grounds, 424 U.S. 961, 96 S.Ct.
    1453, 47 L.Ed.2d 729 (1976), on remand, 540 F.2d 220 (6th Cir. 1976)............................................ 8

Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) .................................. 7

Justice v. Mowery, 69 Ohio App.2d 75, 430 N.E.2d 960, 961-62 (Ohio Ct.App.1980) ........................ 8

Lewis v. Delaware County JVSD, 2005-Ohio-2550 ....................................................................... 9

M.J. DiCorpo, Inc. v. Sweeney, 69 Ohio St.3d 497, 634 N.E.2d 203, 208-09 (Ohio 1994) ................... 8

Macko v. Byron, 760 F.2d 95, C.A.6 (Ohio),1985 ........................................................................ 7

Myers v. Bull, 599 F.2d 863 (8th Cir. 1979), cert. denied, 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138
    (1980)..................................................................................................................................... 8

Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ....................................... 8

R.A.V. v. St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538 (1992)..................................................... 11

State v. Brady 2004-CR-349 ......................................................................................................... 2

Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) ................................. 8

Texas v. Johnson, 491 U.S. 397, 406 (1989) ................................................................................ 11

U.S. v. Reeder (1999), 1999 WL 985177 (N.M.Ct.Crim.App.) .................................................... 4

United States v . Lamb, 945 F.Supp. 441 ( N.D.N.Y.1996 ............................................................ 4

United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d
    865 (2000)............................................................................................................................. 11

Willitzer v. McCloud, 6 Ohio St.3d at 447, 6 OBR at 489, 453 N.E.2d at 693...................................... 6

Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)................................... 8

**Statutes**

18 U.S.C. 2252(A) ........................................................................................... 1, 3, 5, 6, 9, 10, 11, 13

18 U.S.C. 2252(A)(5)(b) ............................................................................................................. 1, 3

18 U.S.C. 2256(8).............................................................................................................. 1, 10, 11, 12

R.C. 2305.11(A)............................................................................................................................ 9

R.C. 2741 ...................................................................................................................................... 14

R.C. 2741.01(A)............................................................................................................................ 14

R.C. 2741.09(d)(4)........................................................................................................................ 14

R.C. 2741.09(d)(6)........................................................................................................................ 14

R.C. 2907.321 .............................................................................................................................. 4, 5, 9

**R.C. 2907.321(B)(1)**........................................................................................................................... 4

R.C. 2907.322 ..................................................................................................................................... 5

R.C. 2907.323 ..................................................................................................................................... 5

iii

LAW AND EXPLANATION

I.   DOES THE FIRST AMENDMENT PROTECT PLAINTIFFS' POSSESSION OF THE COURT EXHIBITS NECESSARY TO SUPPORT THEIR CLAIMS ................................................................ 2

II.   ABSOLUTE WITNESS IMMUNITY ................................................................ 6

III.   JUDICIAL PROCEEDINGS IMMUNITY ................................................................ 8

IV.   FEDERAL STATUTE DOES NOT PREEMPT STATE STATUTE ................................................................ 9

V.   STATUTE OF LIMITATIONS HAS RUN ON DEFAMATION CLAIMS ................................................................ 9

VI.   STATUTE OF LIMITATIONS HAS RUN ON THE INVASION OF PRIVACY CLAIMS ................................................................ 10

VII.   DAMAGES ................................................................ 10

VIII.   18 U.S.C. 2256(8)(C) DEFINITION IN FEDERAL STATUTE IS UNCONSTITUTIONAL ................................................................ 10

IX.   THE R.C. 2741 CLAIM IS NOT APPLICABLE TO BOLAND'S CONDUCT ................................................................ 14

<u>PROCEDURAL AND FACTUAL HISTORY</u>

Dean Boland is a licensed attorney.  He has been licensed as an attorney in Ohio since

November 13, 1995, admitted and qualified to practice in the Northern District of Ohio on December

10, 1996, the 6th Circuit Court of Appeals on December 21, 2005 and the United States Supreme Court

on August 21, 2006.  He has never been subjected to any attorney discipline.

Boland has been qualified and testified as an expert witness in digital imaging in state and

federal cases on the topic of digital imaging, computers and photography.  (Figure 1).  In many such

cases, he was appointed by the respective courts and paid by the state of Ohio for his work, including

trial preparation and testimony.  (Id).

On June 23, 2005 Federal Magistrate Baughman, Jr. signed a warrant to search Boland's house

and vehicle.  (Exhibit 1).  The affidavit alleged probable cause to believe Boland violated 18 U.S.C.

2252(A)(5)(b), the federal child pornography statute.  The specific and only conduct alleged was the

creation of court exhibits by Boland used exclusively in his capacity as attorney or expert witness in

cases in Summit County, Ohio (Id. at ¶ 7), Federal court for the Northern District of Oklahoma (Id. at ¶

10), Hamilton County, Ohio (Id. at ¶ 34) and Warren County, Ohio (Id)  Further evidence that the

entirety of the federal government's probable cause was court exhibits is revealed in ¶3 of Attachment

B to the search warrant.  In that paragraph, it identifies five court exhibits used in those cases as items

being sought in the warrant and allegedly illegal to possess.

18 U.S.C. 2252(A)(5)(b) prohibits the possession of items defined as child pornography in 18

U.S.C. 2256(8)(a), (b), or (c).  The government claimed Boland was in possession of items defined as

contraband under 18 U.S.C. 2256(8)(c).  2256(8)(c) defines as child pornography a legal image of a

minor that is computer generated to make that minor appear to be engaged in prohibited conduct.  The

statute contains no exceptions for the computer generation of such images for use as court exhibits in

1

civil or criminal cases, exhibits in presentations to legislatures, for use in training of law enforcement, etc.

On June 25, 2005, multiple federal agents detained Boland.  (Exhibit 2 at 4).  Simultaneously, another group of agents executed a search warrant on Boland's home.  (Id).  Agents seized items from Boland's vehicle including his office laptop computer and CDs with data.  (Id).  Among the CDs seized were those provided to Boland by the Ashtabula County Prosecutor's Office alleged to contain contraband images relevant to Boland's work as an appointed digital imaging expert in State v. Brady 2004-CR-349.  (Id).  Those disks were provided pursuant to a protective order issued by Ashtabula County Court of Common Pleas Judge.  (Id).  Approximately 7 agents searched Boland's home and seized boxes of computer equipment, disks, videotapes and family photographs.  (Id).  Boland's office was not searched.  No contraband was found on Boland's home computers.  The sole contraband found on Boland's office laptop were files in a folder called "Court Exhibits" that were, in fact, court exhibits for past and pending cases.  None of those files depicted the actual sexual abuse of any minor, i.e. what is commonly referred to as child pornography.

On April 5, 2007 Boland and the government entered into a deferred prosecution agreement. (Exhibit 1 to Complaint).  That agreement dealt with 18 U.S.C. 2252(a)(5)(b), **possession** of court exhibits Boland used in his capacity as an attorney or expert witness in cases as outlined above. Provided Boland voluntarily declines to create, **possess** and/or use those court exhibits, the government has agreed not to prosecute him.

<u>LAW AND EXPLANATION</u>

**I.    DOES THE FIRST AMENDMENT PROTECT PLAINTIFFS' POSSESSION OF THE COURT EXHIBITS NECESSARY TO SUPPORT THEIR CLAIMS**

To prove their claims, plaintiffs must possess, produce in discovery, produce to this court and display in court for the jury copies of the court exhibits referenced in the complaint.  They have asked

for compensatory and punitive damages necessitating that a jury actually view the court exhibits to calculate those damages, if any, at the appropriate time.  The federal government interprets 18 U.S.C. 2252(A)(5)(b) as prohibiting the possession, production in discovery and display in court of those very same court exhibits.  (Exhibit 1 to complaint).  Regardless of the courtroom context, the government does not interpret the First Amendment as protecting the possession, production and display in court of the court exhibits.  If the First Amendment does not protect the Plaintiffs possession, production and display of the court exhibits as evidence in this case, they cannot prevail on any claim as they are legally estopped from possessing or producing the necessary evidence to support their claims.  (See 18 U.S.C. 2252(A)(5)(b)).

A.  First Amendment Ruling

If this court determines the First Amendment protects plaintiffs' possession, production in discovery and display in court of the court exhibits, that ruling extends to Boland.  It extends to Boland's possession, duplication and display in court of the court exhibits for judicial purposes.  He has a procedural and substantive Due Process right to obtain copies of the relevant evidence supporting the claims against him.

If the court determines the First Amendment does not protect the plaintiffs' or Boland's possession, production in discovery and display in court of the court exhibits, it necessarily means plaintiffs cannot present the evidence necessary to support their claims.

B.  First Amendment Protection of Possession of Contraband Images for Proper Purposes

The U.S. Supreme Court has held the First Amendment protects the creation, possession and display of material deemed contraband under the federal child pornography statute in certain contexts:

**[T]he exhibition of [child pornography images or videos] before a legislative committee studying a proposed amendment to a state law, or before a group of research scientists studying human behavior, could not, in my opinion, be made a crime.  Moreover, it is at least conceivable that a serious work of art, a documentary on behavioral problems, or a medical or psychiatric teaching device, might include a scene from one of these films and, when viewed as a whole in a**

3

**proper setting, be entitled to constitutional protection.  The question whether a specific act of communication is protected by the First Amendment always requires some consideration of both its content and its context.**  (<u>New York v. Ferber</u>, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), Stevens, J., concurrence).

The consideration of First Amendment protection requires consideration of context.  (Id).  Presentation to the legislative branch (Id). and the executive branch (e.g. for law enforcement training and investigation) is protected First Amendment conduct.  A judicial proceeding is a context entitled to the same First Amendment protection.

Multiple Ohio and Federal courts have authorized the creation and use of the court exhibits identified in the complaint.  (Figure 1).  These court exhibits were critical to educating courts and juries about the state of digital imaging technology and the reliability or lack thereof in determining alterations in such images by mere visual examination.  In each of those cases, the prosecution also used exhibits depicting apparent minors engaged in prohibited conduct in pre-trial hearings and at trial.  Plaintiffs have not alleged the creation or use of the court exhibits by Boland was for a prurient interest, violated community standards or was obscene.

Other federal courts since <u>Ferber</u> have followed the U.S. Supreme Court's lead.  "[P]recedence indicates [the federal child pornography statute] is not a 'strict liability' statute." (<u>U.S. v. Reeder</u> (1999), 1999 WL 985177 (N.M.Ct.Crim.App.)).  "As applied" defenses have been recognized.  In <u>United States v . Lamb</u>, 945 F.Supp. 441 ( N.D.N.Y.1996.) the court held the possession of child pornography pursuant to research undertaken in the capacity of a psychiatrist at a correctional facility was a valid defense.  Ohio law recognizes a list of First Amendment exceptions to the application of the child pornography statutes.

**E.g. R.C. 2907.321(B)(1) "[the child pornography possession statute] does not apply to any material or performance that is sold, disseminated, displayed, *possessed*, controlled, brought or caused to be brought into this state, or presented for a bona fide *medical*, *scientific*, *educational*, *religious*, *governmental*, *judicial*, or *other proper purpose*, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian,**

4

clergyman, prosecutor, judge, or *other person having a proper interest* in the material or performance.").  (Emphasis added).

As a necessary tool in the defense of Ohio cases, the availability and use of such court exhibits also implicates an accused citizen's Sixth Amendment right to a fair trial.  (Exhibits 2 and 3).

Consistent with Ferber as excerpted above, the preparation and use of court exhibits in a state or federal criminal or civil case **is** protected by the First Amendment as well as the Sixth Amendment protecting a charged citizen's rights to a fair trial.  All prior authority supports this view.  Ohio's statutory exception reflects that First Amendment and Sixth Amendment protection.  (See exception in R.C. 2907.321, R.C. 2907.322 and R.C. 2907.323).  Two Ohio trial courts and one Ohio appellate court have also held the Sixth Amendment protects the creation and use of such exhibits.  (Exhibits 2, 3 and 4).  An Oklahoma federal judge issued an order that by its compliance required the creation, possession and use of the court exhibits.  (Exhibit 7 at pgs 139-140).  The court explicitly informed the government that Boland's creation, possession and transportation of the court exhibits was in compliance with the court's orders.  The government later acknowledged that Boland's conduct was in compliance with the court's orders as is noted below.

**[Boland] is here with some specific orders from the Court as set out in our April 12th, 2004, order, and one of the direct orders to this witness was to be prepared to address all of the issues in United States vs. Marchand. And clearly the preparation of these exhibits was done in response to that court order that he be prepared to address it…. (Id. at pg 113).**

The court later re-iterated those orders and found the creation of the court exhibits **necessary** to understanding and ruling upon issues in that case and essential to the ends of justice.

**[I]n order to develop such a fact record and to comply with the Court's order that such fact record be developed on Marchand and its progeny, it's necessary to create the very images that one might otherwise argue constitutes a statutory violation. So the Court so ordered that, we now have it. (Id. at 145).**

The government, during that hearing, asked questions on cross examination of Boland designed to establish a violation of 18 U.S.C. 2252(A).  (Id at pgs. 99-101).  Following that cross examination,

defense counsel whom had hired Boland specifically asked the court for assurance from the

government that it did not intend to arrest Boland for his compliance with the court's order based upon

the government's questioning.

> **[Defense Counsel] MR. SMALLWOOD: …I'm very concerned by the comments of Ms. Morgan saying he's not going to be arrested ["]today["].**
> **[Assistant United States Attorney] MS. MORGAN: You know, looking at this and seeing what he's doing with kids. If it turns out that he, as the Court was saying, he's distributing these in other places --**
> **MR. SMALLWOOD: No not at all.**
> **MS. MORGAN: -- that might give us pause, but because he testified here today with this, no.**
> **MR. SMALLWOOD: Okay.**
> **MS. MORGAN: <u>He was here because the Judge told him to do it.</u>**
> **MR. SMALLWOOD: Okay.**
> **THE COURT: All right. Does that give you --**
> **MR. SMALLWOOD: I was hoping they would say this Judge.**
> **MS. MORGAN: We just want to make sure he doesn't go out and do anything with them. (Id at 140-141).**

As noted above, the government acknowledged Boland's conduct regarding the creation,

possession and use of the court exhibits was pursuant to the court order.  i.e. "the Judge told him to do

it."  (Id).  Despite those assurances, Boland's conduct in the Oklahoma case was a basis for the

establishment of probable cause of a violation of 18 U.S.C. 2252(A) in the government's subsequent

search warrant.  (Exhibit 1 at p.5, ¶10).

## II.  ABSOLUTE WITNESS IMMUNITY

Plaintiffs allege Boland created and used the court exhibits at issue in his capacity as an expert

witness in several criminal cases.  (Complaint).  Boland is immune from civil liability for testimony in

court disclosing pertinent information under the First Amendment's free speech clause.

### A.  <u>Witness Immunity Generally</u>

"To achieve this noble goal, participants in judicial proceedings should be afforded every

opportunity to make a full disclosure of all pertinent information within their knowledge."  (<u>Willitzer v.</u>

<u>McCloud</u>, 6 Ohio St.3d at 447, 6 OBR at 489, 453 N.E.2d at 693).  In <u>Willitzer</u>, the court referenced

First Amendment protection in a judicial proceeding directly.  "For a witness, this means he must be permitted to testify without fear of consequences.  **Freedom of speech in a judicial proceeding is essential to the ends of justice**."  (Id).  (Emphasis added).

Other courts have referred to the First Amendment right as well. "The doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the **need for completely free speech** for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent (defamatory) litigation…." (Brown v. Collins, 131 U.S.App.D.C. 68).  (Emphasis added).  This immunity extends to persons who are severely harmed by that false testimony including indictment and wrongful imprisonment resulting from false testimony.  (Macko v. Byron, 760 F.2d 95, C.A.6 (Ohio),1985).  It is without dispute that no matter what damages the plaintiffs claim to have suffered, they are less severe than being indicted or wrongfully imprisoned.  Embarrassment does not compare to indictment or imprisonment.

B.  Even Perjury Is Immune From Civil Liability

Plaintiffs do not allege Boland gave false testimony.  Even if they had alleged he did, his testimony is still immune from civil liability.

"[W]itnesses in judicial proceedings are absolutely immune from civil liability under 42 U.S.C. 1983…even if they knowingly gave perjured testimony." (Briscoe v. Lahue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)).

The Supreme Court in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), devised a two-part test for determining the validity of an immunity defense.

First, the court must inquire into the immunity historically accorded the claimant at common law and the interests behind it.  (Id. at 421, 96 S.Ct. at 990).  Next the court must determine whether the considerations of public policy that underlie the common law rule likewise countenance absolute immunity in this circumstance  (Id. at 424, 96 S.Ct. at 992).  Absolute immunity extends to legislators,

7

(Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); judges and police officers, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and to school officials, Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).

A majority of circuits, including the 6th, have held judicial proceedings immunity to be absolute. (Briscoe v. LaHue, 663 F.2d 713 (7th Cir. 1981); Myers v. Bull, 599 F.2d 863 (8th Cir. 1979), cert. denied, 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1980); Burke v. Miller, 580 F.2d 108 (4th Cir. 1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); Blevins v. Ford, 572 F.2d 1336 (9th Cir. 1978); Bennett v. Passic, 545 F.2d 1260 (10th Cir. 1976). Contra, Briggs v. Goodwin, 569 F.2d 10 (1977), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); Hilliard v. Williams, 516 F.2d 1344 (6th Cir. 1975), vacated on other grounds, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976), on remand, 540 F.2d 220 (6th Cir. 1976)).  Boland is immune from liability for testimony supported by those exhibits as well as for the creation and presentation of the court exhibits in court.

## III.   JUDICIAL PROCEEDINGS IMMUNITY

Plaintiffs also allege Boland created and used the court exhibits in his capacity as an attorney in various criminal cases.

Under Ohio law, the absolute judicial privilege permits the use of false, **defamatory information** in judicial proceedings without civil liability.  (See M.J. DiCorpo, Inc. v. Sweeney, 69 Ohio St.3d 497, 634 N.E.2d 203, 208-09 (Ohio 1994).  (Emphasis added).  "[A]ttorneys conducting judicial proceedings are privileged from prosecution for libel and slander" based on writings or statements submitted to a court when the information is "material and pertinent to the question involved, regardless of how false, malicious, or injurious [it] may be."  (Justice v. Mowery, 69 Ohio App.2d 75, 430 N.E.2d 960, 961-62 (Ohio Ct.App.1980)). Plaintiffs have not alleged the court exhibits

Boland created were **not** material or pertinent to the question involved in the underlying cases.  Even had they alleged lack of materiality for the use of the court exhibits, their allegation fails.

In determining whether the writings or statements are reasonably related to the matter of inquiry, Ohio courts construe the absolute privilege with great liberality to assure that parties or their attorneys are not deterred from prosecuting an action vigorously for fear of personal liability.  (See id. at 962).

## IV.    FEDERAL STATUTE DOES NOT PREEMPT STATE STATUTE

Ohio law authorizes the use of the court exhibits as identified in the complaint for "judicial purposes."  (See R.C. 2907.321, et seq).  **All** courts who have addressed that exception and similar ones in other state statutes have reached the same conclusion.  (Exhibits 5 and 6 and Figure 1).  That exception is meaningless if civil liability can attach to that authorized "judicial purposes" conduct.

To avoid dismissal, the federal statute under which plaintiffs have proceeded must be held to preempt the conflicting state statutes that authorize Boland's conduct.  If this court finds the federal statute does not preempt, the claim under 18 U.S.C. 2252(A)(f) must fail as the statute conflicts with controlling state law and the witness and judicial proceedings immunity holdings noted above.

## V.    STATUTE OF LIMITATIONS HAS RUN ON DEFAMATION CLAIMS

"An action for libel, slander…must be brought within one year after the cause of action accrued…."  (R.C. 2305.11(A)).  A cause of action for defamation accrues upon the date of publication of the defamatory matter.  (Lewis v. Delaware County JVSD, 2005-Ohio-2550).

Plaintiffs allege the court exhibits were "published" in court from March 2004 to January 2005.  (Complaint at ¶ 15).  The complaint was filed in 2007.  This is more than one year from the latest date in Paragraph 15.  Plaintiffs defamation claim is barred by the statute of limitations.

Plaintiffs have not alleged Boland published any false statement about them. The court exhibits were used to demonstrate that apparent persons in images **who were never involved in prohibited conduct**, nonetheless, through computer generated imaging, could be made to appear to be otherwise.

9

Boland consistently testified he used images appearing to be minors or appearing to be adults, but whose existence as an actual person or actual minor was personally unknown to him.  (See, e.g. Exhibit 7 at p. 100).

## VI.  STATUTE OF LIMITATIONS HAS RUN ON THE INVASION OF PRIVACY CLAIMS

The one-year statute of limitations in R.C. 2305.11 applies to allegations of invasion of privacy. (Dye v. Columbus Retail Merchants Delivery, Inc. (Nov. 4, 1975), 10th Dist. No. 75AP-252).  Based upon paragraph 15 of the complaint, the invasion of privacy claims are time barred.

Plaintiffs have not alleged any private fact of plaintiffs that Boland disclosed.  They have not alleged that Boland communicated to any person that plaintiffs were engaged in any conduct whatsoever.  They failed to allege each element of any of the various forms of invasion of privacy claims.

## VII.  DAMAGES

The plaintiffs allege damages such as mental anguish, distress, embarrassment and humiliation. (Complaint at ¶ 24).  The minor plaintiffs do not allege they viewed the court exhibits.  No damages to the minors are possible as a result.  This fact disables their adult guardians from recovering for harm they claim to have suffered as bystanders.  If plaintiffs do allege the minors were shown the court exhibits, that person(s), as yet unidentified, who displayed the court exhibits to those minors is an intervening cause who is a necessary party and retains liability for damages inflicted on those minors by that intentional act.  That necessary party has not be named as a defendant.

## VIII.  18 U.S.C. 2256(8)(C) DEFINITION IN FEDERAL STATUTE IS UNCONSTITUTIONAL

The civil remedies of 18 U.S.C. 2252(A)(f) apply to conduct prohibited under 18 U.S.C. 2252(A)(a) or (b).  The only "colorable claim" against Boland is **possession** of the court exhibits. (Exhibit 1 to complaint).  The only definition of contraband covering the court exhibits is within 2256(8)(c).

10

18 U.S.C. 2256(8)(c) defines a category of contraband images as those computer generated/altered to make a minor appear to be engaged in prohibited conduct.  Computer generated images that "appear to be" child pornography images cannot be criminalized.  (Ashcroft v. Free Speech Coalition 122 S.Ct. 1389, 535 U.S. 234).  The 2256(8)(c) definition was mentioned in Free Speech Coalition, was not challenged by the respondents in that case and was expressly not considered by the court.  (Id. at 1397).  2256(8)(c) is unconstitutional.  If 2256(8)(c) is unconstitutional, the civil remedy section of 18 U.S.C. 2252(A) is not triggered by Boland's creation, possession and display of the court exhibits and plaintiffs' federal claim fails.

The First Amendment generally prevents government from proscribing speech, (Cantwell v. Connecticut, 310 U.S. 296, 309-311 (1940)), or even expressive conduct (Texas v. Johnson, 491 U.S. 397, 406 (1989), because of disapproval of the ideas expressed.  Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people.  (Ashcroft v. ACLU, et al 542 U.S. 656,  124 S.Ct. 2783).

To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid, R.A.V. v. St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538 (1992), and that the Government bear the burden of showing their constitutionality.  (United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000)).  This is true even when Congress has previously attempted to find a constitutional means to restrict, and punish, the speech in question.  (ACLU, et al at 660).

The ban on child pornography images was upheld in Ferber because of the harm to a child necessary to **create** them.  (Ferber).  Ferber suggested that virtual images would be an acceptable First Amendment protected replacement for those requiring harm to a child to create.  "Ferber did not hold that child pornography is by definition without value.  It recognized some works in this category might have significant value…but relied on virtual images--the very images prohibited by the CPPA--as an

11

alternative and permissible means of expression….Because Ferber relied on the distinction between actual and virtual child pornography as supporting its holding, it provides no support for a statute that eliminates the distinction and makes the alternative mode criminal as well. Pp. 1401-1402." (Free Speech Coalition at 1394).

The government's attempt to ban images that do not harm any minor in their creation was struck down. (Id). "In contrast to the speech in Ferber, speech that itself is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not 'intrinsically related' to the sexual abuse of children, as were the materials in Ferber." (Id at 1402). The court exhibits at issue here are no "record of sexual abuse", they "record no crime" and "create no victim" **by their production** and are not "intrinsically related" to the sexual abuse of children. (Id).

The First Amendment protects images that "appear to depict" prohibited conduct involving a minor. (Free Speech Coalition). 2256(8)(c) category images "appear to depict" prohibited conduct involving a minor. The court exhibits are not a record of an event that occurred. The creation itself of the court exhibits harms no one. The possession of the court exhibits harms no one.

In the creation alone of a 2256(8)(c) category of contraband image no person is harmed. The possession alone of such an image harms no one. Only if the image's existence becomes known to the person so depicted can they suffer humiliation or embarrassment.

The legal image of a minor can be manipulated in unlimited ways to cause humiliation or embarrassment to that minor. (Figure 2). Of all those potentially embarrassing manipulations of a minor's image, 2256(8)(c) chooses just one type to criminalize while avoiding all others. It criminalizes creation (no harm to anyone) and possession (no harm to anyone) of such images. 2256(8)(c) does not protect minors from the emotional or psychological effects of embarrassing manipulated images, otherwise it would seek to prohibit all such images. Instead, it seeks to protect

minors from only one form of embarrassing, repugnant to reasonable people, yet an idea with "serious redeeming value" and "that is a fact of modern society and has been a theme in art and literature for centuries."  (Free Speech Coalition at 1393).  2256(8)(c) criminalizes an image based upon its content, not based upon its effect on the minor depicted in the image.  This content-based restriction motive is revealed as the 2256(8)(c) definition applies to creation and possession of such images which acts alone cannot possibly harm, even emotionally, anyone.  If the government desired punishing embarrassment to minors, it would prohibit all embarrassing manipulations to images of minors, not just those related to apparent, although not real, sexual conduct.  It would also have narrowly tailored the language of 18 U.S.C. 2252(A) to require the publication or disclosure of the minor's identity in a 2256(8)(c) image to trigger a violation.  At least that language, arguably, is seeking to protect minors from some harm.  The application of the statute to the creation and possession of such images alone ignores any consideration of harm while still regulating "appears to be" images inconsistent with the First Amendment as indicated in Free Speech Coalition.  The conduct establishing the colorable claim outlined in exhibit 1 to the complaint is the creation and possession of the court exhibits.  The stated violation does not include conduct relating to disclosing the identity of any person depicted in the court exhibits.  Plaintiffs do not allege that Boland has ever disclosed to the public or in the courtroom their identity in any court exhibit.  As that identity was not known then and currently is not known to Boland, such disclosure by him was impossible.

The plaintiffs' allegations make plain that had other persons not removed the court exhibits from the court record, successfully identified persons in the image as real persons, located and communicated with those persons about the existence of the court exhibits, the plaintiffs would never have learned of the existence of the court exhibits which have been submitted under seal in every case in which Boland has participated.  Plaintiffs do not allege that Boland has disclosed their identity to any member of the public.

13

**IX.    THE R.C. 2741 CLAIM IS NOT APPLICABLE TO BOLAND'S CONDUCT**

R.C. 2741 applies to a persona.  R.C. 2741.01(A) defines a persona as "an individual's

…photograph…if any of these aspects have commercial value."  Plaintiffs have not alleged their

images, portions of which were used in the court exhibits, had commercial value.

R.C. 2741.09(d)(4) prohibits application of the statute to "[t]he use of the persona of an

individual solely in the individual's role as a member of the public if the individual is not named or

otherwise singled out as an individual."  Plaintiffs have not alleged they were singled out or identified

as a person in the court exhibits.

The statute also does not apply to court exhibits protected by the First Amendment.  (R.C.

2741.09(d)(6)).  No case law imposes civil liability for use of any image as part of a court proceeding.

The arguments relating to witness and judicial proceedings immunity apply equally to defeat this

claim.

<u>CONCLUSION</u>

It is respectfully requested this court issue findings of fact and conclusions of law in support of

the dismissal of the complaint.  All claims are barred by the common law doctrines of witness and

judicial immunity and the First and Sixth Amendments to the United States Constitution.  The

defamation and invasion of privacy claims are time barred.  The R.C. 2741 claim is barred as plaintiffs

have not alleged they meet the definition of "persona" in R.C. 2741.01(A), nor have they alleged their

images, portions of which were used in the court exhibits, had commercial value.  (R.C.

2741.09(d)(4)).  Finally, the First Amendment protects Boland's conduct exempting the court exhibits

and their creation and use from application of the statute under 2741.09(d)(6).

/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107

14

216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

CERTIFICATE OF SERVICE

A copy of the foregoing has been served on all parties by operation of the court's electronic filing system.

/s/ Dean Boland
Dean Boland (0065693)

16