## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Charles Sullivan, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Cleveland, Ohio, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the Federal Bureau of Investigation for seven years. As a Special Agent of the Federal Bureau of Investigation Affiant has conducted numerous investigations into alleged child abuse/sexual abuse and computer crimes. Affiant has received specialized training in investigative techniques and non-verbal communication, as well as training in the investigation of computer aided criminal activity, including computer-facilitated child exploitation.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. I am investigating the activities of Dean Boland of 2070 Brown Road, Lakewood, OH. As will be shown below, there is probable cause to believe that Dean Boland has possessed, and/or transported child pornography, in violation of Title 18, United States Code, Sections 2252A. I am submitting this affidavit in support of a warrant to search the residence at 2070 Brown Road, Lakewood, Ohio, the person of and vehicle driven by Dean Boland, and any and all computer(s), computer system(s) and digital media found therein and thereon, all described further in Attachment A, for the items specified in Attachment B hereto, which items constitute

constitute instrumentalities, fruits, and evidence of the foregoing violations.

4.     The statements in this Affidavit are based in part on information provided by Detective/Special Sheriff Deputy Greg King of the Cleveland Police Department and the Cuyahoga County Sheriff's Office, and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Section 2252A, are presently located in the residence at 2070 Brown Road, Lakewood, Ohio, and the person of and vehicle driven by Dean Boland.

## STATUTORY AUTHORITY

5.     This investigation concerns alleged violations of Title 18, United States Code, Section and 2252A, relating to material involving the sexual exploitation of minors. Title 18 U.S.C. § 2252A(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was

-2-

produced using materials that had traveled in interstate or foreign commerce. Title 18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping child pornography in interstate or foreign commerce by any means, including by computer. Title 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

6. The following definitions apply to this Affidavit and Attachment A to this Affidavit:

a. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created,

-3-

adapted, or modified to appear that an identifiable minor is
engaged in sexually explicit conduct), as well as any visual
depiction, the production of which involves the use of a minor
engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and
2256(2)).

b.    "Visual depictions" include undeveloped film and
videotape, and data stored on computer disk or by electronic
means, which is capable of conversion into a visual image.  See
18 U.S.C. § 2256(5).

c.    "Sexually explicit conduct" means actual or
simulated (a) sexual intercourse, including genital-genital,
oral-genital, anal-genital, or oral-anal, whether between persons
of the same or opposite sex; (b) bestiality; (c) masturbation;
(d) sadistic or masochistic abuse; or (e) lascivious exhibition
of the genitals or pubic area of any person.  See 18 U.S.C. §
2256(2).

d.    "Computer," as used herein, is defined pursuant to
18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical,
electrochemical, or other high speed data processing device
performing logical or storage functions, and includes any data
storage facility or communications facility directly related to
or operating in conjunction with such device."

e.    "Internet Protocol address" or "IP address" refers
to a unique number used by a computer to access the Internet.  IP

-4-

addresses can be dynamic, meaning that the Internet Service
Provider (ISP) assigns a different unique number to a computer
every time it accesses the Internet. IP addresses might also be
static, if an ISP assigns a user's computer a particular IP
address which is used each time the computer accesses the
Internet.

## BACKGROUND OF THE INVESTIGATION

7.   On April 1, 2004 Dean Boland testified in the case of.
State v. Bryan S. Sparks, CR 02-12-3669 in the Summit County
Court of Common Pleas. In advance of his testimony, Boland
prepared several exhibits which constituted visual depictions.
Detective Stanley Smith, of the Akron Police Department was a
witness for the State in that same case. Detective Smith
provided to Detective King, of the Cleveland Police Department, a
CD-ROM (hereinafter referred to as the "Summit CD")containing the
exhibits prepared by Boland for said trial.

8.   Your Affiant has reviewed the CD-ROM and has reviewed a
transcript of Boland's testimony wherein he describes the
exhibits and their creation.

9.   Boland created and displayed several visual depictions
which he adapted to appear as though an identifiable minor was
engaged in sexually explicit conduct.

10.  On April 15, 2004, Boland testified in the case of
United States v. Quinton Phillip Shreck, 03-CR-43-H in the U.S.

-5-

District Court for the Northern District of Oklahoma. Your
Affiant has reviewed the transcript of Boland's testimony from
said trial. Based on a review of the transcript, it is apparent
that Boland displayed and described many of the same images as
contained on the Summit CD. During his testimony, Boland
admitted to creating the images in Ohio and transporting them to
Oklahoma on his laptop computer. At the end of his testimony,
Boland was ordered, by the Court, to delete the images from his
computer.

11.   Several of these visual depictions involve the use of
two distinct digital images to create the final depiction which
appears to be an identifiable minor engaged in sexually explicit
conduct.

12.   One such image involves a digital image of a minor
female seated, wearing a white bikini. The other image depicts
the front of a partially nude adult female being vaginally
penetrated from behind by an adult male. During his testimony in
Oklahoma, Boland admitted that he used a computer software
program called Photoshop to manipulate the image of the adult
female to appear that she had smaller breasts and no pubic hair.
He then replaced the head of the adult female with that of the
minor in the bikini to give the impression that the minor female
was being vaginally penetrated from behind by an adult male.
Boland admitted that he downloaded the photo of the minor female

-6-

from a teen model web site, where parents allow photos of their children to be posted in hopes of getting modeling contracts - clearly showing Boland's knowledge that the image was of an actual, identifiable minor.

13. A second image of a minor used by Boland, and contained on the Summit CD depicts a close-up of the face of a minor female with her mouth open. Boland used that same image to create three separate visual depictions in which an identifiable minor appeared to be engaged in sexually explicit conduct. In one such image, Boland, using an image of an adult female lying nude face-up, while two nude adult males were masturbating on her torso, replaced the adult female's head with that of the aforementioned minor child to create an image which appeared to show the minor female engaged in the previously-described activity. Boland then modified that image further by superimposing a black collar around the minor female's neck, with the word "slave" on said collar, and inserting the text "www.slaveminors.com" below the image.

14. Using the same minor's image and another image of adult pornography, Boland replaced the minor female's face on that of an adult female performing oral sex on a male, resulting in a visual depiction in which an identifiable minor appeared to be engaging in sexually explicit conduct.

15. Another image created by Boland, contained on the

-7-

FROM :Ian N Friedman & Associates-DAP Fax No. :2165569779 Oct. 06 2005 04:34PM P15
OCT. 6. 2005 4:03PM USAO HCFU CLEVELAND NO. 9369 P. 15

Case 1:07-cv-02787-DAP Doc #: 5-1 Filed: 10/09/07 8 of 26. PageID #: 41

Summit CD, and displayed in Summit County and Oklahoma depicts a
very young blond female performing oral sex on a penis.

16. Boland testified regarding the creation of the image in
the Oklahoma case, as follows, "[a]nd what this image appears to
be is, or what it claims to be is a minor named Lena, under age
six, engaged in a sex act some male whose body off the side of
the image. The reality is no such thing. I started with this
image, which was downloaded off the internet, of what appears to
be a male penis coming from the left side of the image and then
juxtaposed it with this image downloaded off the internet, which
appears to be a minor eating a doughnut."

17. Regarding the same visual depiction, Boland testified
in the Summit County case that the original image depicts what
appears to be a "minor female child with blond hair and glasses
eating a donut." Boland also testified that such original image
was named I stock_000000149973_1.jpg.

18. On May 14, 2004 your Affiant interviewed Rich Sixto of
www.Istockphoto.com who advised that this web site, based in
Alberta, Canada, allowed photographers, at no charge, to complete
an application and submit three images to the web site in order
to attempt to become a member of the web site. If the
photographer's images were approved to be uploaded to the web
site they could then upload additional images to the web site so
others could view the images and then download them for a fee.

-8-

In order for a user to download an image from the web site the
user was obligated to pay $0.50 for a small sized image, $1.00
for a medium sized image and $1.50 for a large sized image. The
web site then paid the photographer who uploaded the image which
was downloaded by a user of the web site 20% of the purchase
price for the image. Sixto also advised your Affiant that if any
image which was uploaded to the web site had a recognizable human
face in the image the photographer was required to submit to the
web site a "model release" form before the image was displayed on
the web site. This form, which was to be signed by the person,
or the guardian of the person if they were less than 18 years of
age, whose facial features were captured in the image, authorized
the photographer to upload the image to the web site. Sixto
subsequently advised that Ron Bloom was the photographer who
uploaded the image which was assigned photograph file number
149973.

19. On July 15, 2004 your Affiant and Detective Gregory
King interviewed Ronald Bloom who advised that during the year
2003 he took a picture of his niece, who was 5 years of age when
the photograph was created, whose identity is known to your
Affiant but is not disclosed herein pursuant to Title 18, United
States Code, Section 3509, who will be referred to as CW1, while
she was in the kitchen of his residence. Bloom subsequently
uploaded the picture to the web site named www.Istockphoto.com

-9-

and entered into an agreement with this company which stated that
anyone who downloaded the picture from the web site agreed not to
use the picture in a "defamatory way". This agreement also
stated that Bloom would receive payment from the web site each
time the picture was downloaded from this web site. Bloom would
then be paid 20% of the funds which were collected by the web
site in regards to the picture of his niece which was downloaded
by the web site users. Bloom also stated that he has received
royalties from the above described web site regarding the above
described picture of his niece. Bloom also stated that he did
not authorize anyone to utilize the above described picture of
his 5 year old niece in order to create an image of his niece
involved in a sexual act. Bloom also stated that his mother,
Vicki Bloom, was the legal guardian of his niece. During this
interview, Detective King provided Bloom with a picture of a
minor female which Bloom acknowledged was the same picture of his
niece which he had taken and uploaded to www.Istockphoto.com.

20.  On July 20, 2004 your Affiant and Special Agent Joseph
M. Russ interviewed Vicki Bloom who stated that she was the legal
guardian of her grand daughter, CW1. Vicki Bloom said that she
did not authorize anyone to utilize the above described picture
of her 5 year old grand daughter in order to create an image of
her grand daughter involved in a sexual act.

21.  On July 26, 2004, Detective Gregory King interviewed

-10-

Patrick Lor, President of www.Istockphoto.com, who stated that Dean Boland had downloaded several images from the web site with the most recent download occurring on July 24, 2004. Lor confirmed that Dean Boland had previously downloaded photo number 149973. Lor also stated to Detective King that his company has records of the IP addresses from which customers download photos as well as search terms used by customers to find photos.

22. On July 26, 2004 at 5:18 p.m. EST, Lor transmitted an unsolicited electronic mail message to Detective King and Assistant United States Attorney Michael A. Sullivan, which contained one attached PDF file, named "dean bolland personal.pdf". This electronic mail message stated that the attached PDF file contained all of the account information related to Boland accessing www.Istockphoto.com.

23. Neither Detective King nor AUSA Sullivan opened the aforementioned PDF file. Nora Mauk, Systems Manager from the United States Attorney's Office, Northern District of Ohio, copied the PDF file, "dean bolland personal.pdf", from the email account of AUSA Sullivan and placed such file on a CD-ROM. Such CD-ROM was been provided to your Affiant.

24. On September 30, 2004, your Affiant applied for and received a federal search warrant authorizing the search of the PDF file, "dean bolland personal.pdf".

25. You Affiant viewed the contents of the PDF file, "dean

-11-

bolland personal.pdf", which included thumbnail images of the
photos downloaded by Boland from www.Istockphoto.com, as well as
the dates of the downloads and the IP addresses to which the
images were downloaded.

26.     Information contained in the PDF file, "dean bolland
personal.pdf", revealed that on February 13, 2004 at 3:12 p.m.
Boland downloaded a photo entitled "163510" from
www.Istockphoto.com, while connected to the Internet from IP
address 68.76.78.174.  The photo entitled "163510" is the same
photo used by Boland to create the images described in Paragraphs
13 and 14.

27.     On October 4, 2004, Detective Gregory King received an
email from Patrick Lor, President of www.Istockphoto.com,
indicating that Peter Lora was the photographer who uploaded the
image which was assigned photograph file number 163510.

28.     On October 5, 2004 your Affiant interviewed Peter
Lora, who advised that on January 21, 2004 or January 22, 2004 he
took a picture of his daughter, who was 6 years of age when the
photograph was created, whose identity is known to your Affiant
but is not disclosed herein pursuant to Title 18, United States
Code, Section 3509, who will be referred to as CW2, while she was
in front of his residence playing a game called "snow monster."
Lora subsequently uploaded the picture to the web site named
www.Istockphoto.com and entered into an agreement with this

-12-

company which stated that anyone who downloaded the picture from the web site agreed not to use the picture in a "defamatory way". Lora also stated that he did not authorize anyone to utilize the above described picture of his 6-year-old daughter in order to create an image of his daughter involved in a sexual act. During this interview, your Affiant provided Lora with a picture of the minor female depicted in photograph file number 163510 which Lora acknowledged was the same picture of his daughter which he had taken and uploaded to www.Istockphoto.com.

29.    Information contained in the PDF file, "dean bolland personal.pdf", revealed that from December 2, 2003 until July 24, 2004 Boland downloaded at least 56 photos from www.Istockphoto.com while connected to the Internet from two different IP addresses: 68.76.78.174 and 68.109.205.51, including 4 downloads on July 23, 2004 and July 24, 2004 while connected to the Internet from IP address 68.109.205.51. Between December 2, 2003 and July 24, 2004 Boland downloaded at least 36 photos while connected to the Internet from IP address 68.109.205.51.

30.    Your Affiant caused administrative subpoenas to be served on Cox Cable regarding IP addresses 68.109.205.51.

31.    Your Affiant received a response from Cox Cable on October 25, 2004 which revealed that IP address 68.109.205.51 was assigned to Dean Boland at 2070 Brown Road, Lakewood, OH on July 23, 2004 and July 24, 2004. On October 29, 2004, your Affiant

-13-

interviewed Christy Frederick, of Cox Communication. Ms. Frederick confirmed that the billing address for Dean Boland at 2070 Brown Road, Lakewood, OH was the same address as to where the service was being provided.

32. On April 18, 2005, Special Agent Lisa Quillen interviewed Barbara Guzik. Guzik confirmed that her daughter, whose identity is known to your Affiant, but is not disclosed herein pursuant to Title 18, United States Code, Section 3509, who will be referred to as CW3, is the child depicted in the image described in paragraph 12. Guzik indicated that the photo of her daughter, in the white bikini, was posted on a child-model web site. She further indicated that she never granted anyone permission to utilize her daughter's photo to create an image of her daughter engaged in sexually explicit conduct. She further indicated that her daughter was born in 1992 and was 11 years-old when her image was displayed, by Boland, in Summit County.

33. On May 13, 2004 your Affiant received the following information from NCIC: Dean M. Boland, residing at 2070 Brown Road, Lakewood, Ohio 44107; vehicle registration - 1997 Ford, license plate number CIY3878.

34. Boland remains active in displaying the above-referenced images. He testified in the case of State v. Huffman Case No. B-0401503 on November 17, 2004, and displayed some of the same images described above. On January 27, 2005, he

-14-

appeared as co-counsel in the case State v Kinnison, Case No.04CR21404 in Warren County, Ohio. During said case Boland had with him a laptop computer and submitted a disk to the prosecutor with exhibits he intended on using during cross-examination of a state's witness. Your Affiant has reviewed such disk, and it contains three of the images displayed in the Oklahoma case and ordered purged from his computer: the image of the minor with the "slave" collar, described in paragraph 13; the image described in paragraph 14; and the image described in paragraphs 15-17.

35. Your Affiant conducted surveillance on January 24, 2005 at 2070 Brown Road, Lakewood, Ohio and at 8:57 a.m., that date, observed a dark blue Ford Explorer, license plate number CIY-3878, traveling north on Brown Road, with Dean Boland as the operator of said vehicle. Boland was scheduled, on this date, to appear at a pretrial conference in the case State v Kinnison, Case No.04CR21404 in Warren County, Ohio, over 200 miles from his home. Consequently, there is reasonable cause to believe that Boland transports his laptop computer in his vehicle.

36. On September 13, 2004, your Affiant interviewed John Graceffo, an Assistant Prosecuting Attorney in the Franklin County Prosecutor's Office. Graceffo indicated that in April, 2004 he attended a Continuing Legal Education program where Boland was a speaker. Boland discussed his testimony in the Oklahoma case, referenced in paragraph 10. Boland admitted that

-15-

the Court had ordered him to delete the images from his computer and joked that he complied by hitting the delete key, knowing that the images would still be present and recoverable from his computer. Additionally, Boland indicated that he was concerned at the prospect of being arrested upon his return to Cleveland, Ohio when he got off the airplane. He was so concerned, Boland indicated, that he removed the hard drive from his computer, while still in Oklahoma, and mailed it to his mother so that he would not have the images on his computer upon his return to Cleveland.

37.    In an article written by James McCarty, and printed in the Cleveland Plain Dealer on June 25, 2004, Boland is quoted as stating, "I've been in hypersensitive siege mode ever since I got threatened with arrest in Oklahoma."

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

38.    Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

39.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can

-16-

store thousands of images at very high resolution.

40. Based on training and experience, your Affiant knows that digital files can be stored on a variety of media, including but not limited to a computer's hard drive, CD-Roms, DVDs, floppy diskettes, ZIP disks, thumb drives (a small removable drive approximately the size of a small pen knife), memory sticks, memory cards (some as small in height and width as a postage stamp). Consequently, digital media can be easily concealed on a person or in a vehicle.

41. Producers, collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

42. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can

-17-

be intentional, <u>i.e.</u>, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, <u>e.g.</u>, traces of the path of an electronic communication may be automatically stored in many places (<u>e.g.</u>, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

43. Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

     a.   Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can

-18-

store the equivalent of thousands of pages of information.
Especially when the user wants to conceal criminal evidence, he
or she may store it in random order with deceptive file names.
This requires searching authorities to examine all the stored
data to determine whether it is included in the warrant. This
sorting process can take days or weeks, depending on the volume
of data stored, and it would be impractical to accomplish this
kind of data search on site; and

b.    Searching computer systems for criminal evidence
is a highly technical process requiring expert skill and a
properly controlled environment. The vast array of computer
hardware and software available requires even computer experts to
specialize in some systems and applications, so it is difficult
to know before a search which expert should analyze the system
and its data. The search of a computer system is an exacting
scientific procedure which is designed to protect the integrity
of the evidence and to recover even hidden, erased, compressed,
password-protected, or encrypted files. Since computer evidence
is extremely vulnerable to tampering or destruction (which may be
caused by malicious code or normal activities of an operating
system), the controlled environment of a laboratory is essential
to its complete and accurate analysis.

44.    In order to fully retrieve data from a computer system,
the analyst needs all magnetic storage devices as well as the

-19-

central processing unit (CPU). In cases involving child
pornography where the evidence consists partly of graphics files,
the monitor(s) may be essential for a thorough and efficient
search due to software and hardware configuration issues. In
addition, the analyst needs all the system software (operating
systems or interfaces, and hardware drivers) and any applications
software which may have been used to create the data (whether
stored on hard drives or on external media).

45. In addition, there is probable cause to believe that
the computer and its storage devices, the monitor, keyboard, and
modem are all instrumentalities of the crime(s), within the
meaning of 18 U.S.C. §§ 2251 through 2256, and should all be
seized as such.

## SEARCH METHODOLOGY TO BE EMPLOYED

46. The search procedure of electronic data contained in
computer hardware, computer software, and/or memory storage
devices may include the following techniques (the following is a
non-exclusive list, as other search procedures may be used):

a. examination of all of the data contained in such
computer hardware, computer software, and/or memory storage
devices to view the data and determine whether that data falls
within the items to be seized as set forth herein;

b. searching for and attempting to recover any
deleted, hidden, or encrypted data to determine whether that data

-20-

FROM : Ian N Friedman & Associates
OCT. 6. 2005  4:06PM   USAO HCFU CLEVELAND
Case: 1:07-cv-02787-DAP Doc #: 5-1 Filed: 10/09/07 21 of 26. PageID #: 54
FAX NO. 5316556379
NO. 9369   P. 28
P11
04:41PM

falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.    surveying various file directories and the individual files they contain;

    d.    opening files in order to determine their contents;

    e.    scanning storage areas;

    f.    performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

    g.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

### TAINT TEAM

47.    Dean Boland is an attorney, licensed to practice in the State of Ohio. According to the Ohio Supreme Court website, Boland is assigned attorney registration number 0065693 and is currently listed as active. Consequently, some of the

-21-

information seized may relate to his clients and be subject to attorney-client privilege. Therefore, your Affiant will utilize other agents and Assistant United States Attorney(s), as a "Taint Team," to view any potentially privileged material.

48. Any suspected privileged materials will be provided to a "Taint Team," composed of a law enforcement agent who will only be responsible for the custody of such alleged privileged materials, a computer forensic analyst who will extract information from the computer storage systems, and an Assistant United States Attorney who will review the extracted information to determine whether such materials are, in fact, privileged. If any materials appear to be so privileged, such materials will be segregated by the forensic analyst and will be designated as such. The privileged materials will not be revealed in any way to members of the "Prosecution Team," including the prosecutor, case agent, or any other material witnesses. The privileged materials will be returned to Boland. The "Taint Team" will forward to the "Prosecution Team" any and all materials that are not privileged materials. If the "Taint Team" disagrees on whether or not certain materials are privileged, such materials will be submitted to the Court for an in camera review.

## CONCLUSION

49. Based on the aforementioned factual information, your Affiant respectfully submits that there is probable cause to

believe that Dean Boland is involved in transporting and
possessing child pornography. Your Affiant respectfully submits
that there is probable cause to believe that Dean Boland has
violated 18 U.S.C. § 2252A. Additionally, there is probable
cause to believe that evidence of the commission of criminal
offenses, namely, violations of 18 U.S.C. § 2225A, is located in
the residence at 2070 Brown Road, Lakewood, Ohio, the person of
and vehicle driven by Dean Boland, and any and all computer(s),
computer system(s) and digital media found therein and thereon,
and this evidence, listed in Attachment A to this affidavit,
which is incorporated herein by reference, is contraband, the
fruits of crime, or things otherwise criminally possessed, or
property which is or has been used as the means of committing the
foregoing offenses.

50. Your Affiant, therefore, respectfully requests that the
attached warrant be issued authorizing the search and seizure of
the items listed in Attachment B.

Charles Sullivan
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this 23rd day of June, 2005

*S* W. H. BAUGHMAN Jr
William H. Baughman, Jr.
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF 2070 BROWN ROAD, LAKEWOOD, OHIO 44107

This residence is described as a single family residence located south of Madison Avenue on the west side of Brown Road in Lakewood, Ohio. This residence is tan in color with white colored trim with the black colored numerals '2070' attached to one of the pillars on the front side of the residence. This residence also has a detached garage located behind the residence.

### DESCRIPTION OF VEHICLE

1997 Blue Ford Explorer, Ohio License Plate No. CIY-3878.

### DESCRIPTION OF DEAN BOLAND

Thirty-eight year-old white male, 6'1", 170 lbs., brown hair, blue eyes.

### DESCRIPTION OF PERSONAL COMPUTER(S) / COMPUTING SYSTEM(S)/DIGITAL MEDIA

Any and all personal computer(s)/computing system(s) located at the residence at 2070 Brown Road, Lakewood, Ohio, and the person of and vehicle driven by Dean Boland, to include input and output devices, electronic storage media, computer tapes, scanners, disks, diskettes, optical storage devices, printers, monitors, central processing units, and all associated storage media for electronic data, together with all other computer-related operating equipment and materials.

# 1:05 MJ 9059

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED:

1. Any and all computer system(s) to include input and output devices, electronic storage media, computer tapes, scanners, disks, diskettes, optical storage devices, printers, monitors, central processing units, disk drives, tapes, cassettes, cartridges and all associated storage media for electronic data, together with all other computer-related operating equipment, user manuals and instruction books.

2. Records evidencing use or ownership of the computers, including, but not limited to, registry and setup information within the computer's operating system and customizations to the operating system's directory structure.

3. Graphic files which are used, or capable of being used, to visually depict child pornography or child erotica, including, but not limited to, files formatted as Joint Graphic Experts Group (JPEG/JPG), Graphic Interchange Format (GIF, Moving Pictures Expert Group (MPEG/MPG), Photoshop Format (PSD) and Audio Video Interactive (AVI), and the data within the aforesaid objects relating to said materials, including, but not limited to graphic files depicting the following:
   a. A brunette minor female reclined and leaning on her right side, with her left leg being held up by a male reclined behind her and with the same male vaginally penetrating the female with his penis.
   b. A minor female with black hair, supine and grimacing with two males on either side of her apparently masturbating over her torso.
   c. A minor female with blonde hair and a black collar, bearing the word "SLAVE", supine and grimacing with two males on either side of her apparently masturbating over her torso.
   d. Frontal facial view of minor female with black hair, with her eyes squinted and with a penis in her mouth.
   e. A minor female with blonde hair and glasses, holding a penis in her hand and mouth, with said penis bearing the letters "INA".

4. Computer programs capable of viewing graphic files.

5. Text files containing information pertaining to an interest in child pornography or actual or fantasy sexual activity with children and/or pertaining to the actual or attempted

production of, trafficking in, distribution, receipt, trade
or possession of child pornography.

6.  Correspondence pertaining to the actual or attempted
    trafficking in, production of, trading of, or possession of
    visual depictions of minors engaged in sexually explicit
    conduct, as defined in Title 18, United States Code, Section
    2256, including, but not limited to, electronic mail, chat
    logs and electronic messages,

7.  Any and all written correspondences, notes, letters,
    diaries, address books, envelopes or other materials
    pertaining to communications involving child pornography,
    child erotica and the discussion of sexual activity or
    engaging in sexual acts with a minor.

8.  Any and all credit card information, including but not
    limited to bills and payment records.

9.  Records evidencing occupancy or ownership of the premises
    and vehicle, including but not limited to, utility and
    telephone bills, title, lease documents, mail envelopes or
    addressed correspondence.

10. Any and all records, documents, invoices and materials that
    relate to Internet service.

11. Any and all photographs (developed and undeveloped),
    negatives, photographic slides or other visual depictions,
    including books, magazines, films, video and other
    recordings, that contain or pertain in any way to child
    pornography, or that depict unclothed minors.

12. All material relating to children that is sexually
    suggestive and/or sexually explicit, including, but not
    limited to, drawings, sketches, fantasy writings and sexual
    aids relating to naked or partially clothed children.

13. All material indicating the sexual abuse of minors.

14. Any and all records, documents, invoices and materials that
    relate to an account with www.Istockphoto.com and any other
    commercial website relating to the purchase and or
    downloading of digital images.