[Cite as *State v. Brady*, 2007-Ohio-1779.]

# COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2005-A-0085** |
| DANIEL BRADY, SR., | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Court of Common Pleas, Case No. 2004 CR 349.

Judgment: Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellant).

*Dean Boland*, 18123 Sloane Avenue, Lakewood, OH 44107 (For Defendant-Appellee).

WILLIAM M. O'NEILL, J.

{¶1} Appellant, the state of Ohio, appeals the judgment entered by the Ashtabula County Court of Common Pleas. The trial court dismissed a total of 50 counts against appellee, Daniel Brady, Sr. ("Brady").

{¶2} Brady was indicted on 17 counts of pandering obscenity involving a minor, fourth-degree felonies, in violation of R.C. 2907.321; 17 counts of pandering obscenity

involving a minor, second-degree felonies, in violation of R.C. 2907.321; 16 counts of pandering sexually oriented material involving a minor, second-degree felonies, in violation of 2907.322; and five counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05. Brady pled not guilty to all the counts against him.

{¶3} Upon Brady's motion, the trial court bifurcated the five gross sexual imposition charges from the remaining counts. The gross sexual imposition charges were tried separately and are not at issue in this appeal.

{¶4} The trial court appointed Dean Boland to serve as an expert witness for Brady. Boland runs a consulting company. One of his specialties is the analysis of computer images. Boland has testified as an expert witness for defendants charged with possession of computer pornography in state and federal courts. Boland is also a licensed attorney and is Brady's appellate counsel in this appeal. Boland did not serve as Brady's counsel at the trial court level.

{¶5} Boland's testimony was necessary in light of the United States Supreme Court's decision in *Ashcroft v. The Free Speech Coalition*.[1] In *Ashcroft v. The Free Speech Coalition*, the United States Supreme Court held that virtual child pornography was protected speech under the First Amendment to the United States Constitution and, thus, could not be banned by child-pornography statutes.[2] Boland's expert assistance essentially entailed two functions. First, he would review the state's exhibits to determine whether they were virtual images or if they contained real children. Second, through the introduction of other exhibits, he would attempt to demonstrate the

---

1. *Ashcroft v. The Free Speech Coalition* (2002), 535 U.S. 234.
2. Id. at 256.

difficulty of distinguishing between actual and virtual child pornography.

{¶6} The same day the trial court appointed Boland as an expert, it issued a protective order regarding potential evidence. Specifically, the protective order provided:

{¶7} "A compact disc has been provided (or will be provided) by the State of Ohio to counsel for defendant, David W. PerDue, of evidentiary matter containing possible contraband in the nature of child pornography.

{¶8} "Defense counsel has a right and duty not only to review the images on the disc, but also to provide those images to imaging experts for purposes of examination and possible preparation of testimony pertaining to those images.

{¶9} "It is necessary to transport this compact disc to allow counsel for the defendant to render effective assistance of counsel to his client and that counsel for the defendant, counsel for the State of Ohio, as well as anticipated expert witnesses, including Dean Boland [address and phone number deleted] are hereby authorized to possess this compact disc for this purpose.

{¶10} "Defense counsel is authorized to transport this compact disc to Dean Boland for purposes of providing legal representation to their client.

{¶11} "Dean Boland is hereby authorized to possess this compact disc to perform the necessary examination on this compact disc for purposes of possible evidentiary use."

{¶12} Boland interpreted this protective order as giving him permission to view and possess the potentially illegal material with immunity from prosecution. His belief was based on the language in Ohio's obscenity statutes that permits possession of

certain otherwise illegal material if it is used for a "proper purpose" by a "prosecutor, judge, or other person having a proper interest in the material."[3]

{¶13} In June 2005, the state provided the evidentiary disc to Boland. In addition, the state sent similar materials to its expert witness, Dr. Hany Farid.

{¶14} On June 24, 2005, the Federal Bureau of Investigation ("FBI") executed a search warrant on Boland's residence. The FBI seized Boland's computer and several compact discs. Included in the seized material was computer equipment containing potential exhibits Boland had created for trial and the compact disc containing the images at issue in this matter. An affidavit submitted in support of the search warrant alleged Boland violated Section 2252A, Title 18, U.S.Code. This federal statute does not contain the exemption for a "proper person" using the material for a bona fide purpose similar to the exemptions contained in the Ohio statutes.

{¶15} A hearing was held before the trial court on October 14, 2005. At the time of the hearing, Boland still faced potential indictment stemming from the execution of the June 2005 search warrant. Boland testified that, upon the advice of his counsel, he would not accept another copy of the prospective exhibits containing the allegedly illegal images in this matter. At the conclusion of this hearing, Brady orally moved to dismiss the indictment.

{¶16} Following the hearing, Brady filed a written motion to dismiss the indictment. The state filed a brief in opposition to Brady's motion to dismiss the indictment. Attached to the state's motion was a copy of the search warrant affidavit.

---

3. See R.C. 2907.32(B); R.C. 2907.321(B)(1); R.C. 2907.322(B)(1); and 2907.323(A)(3)(a).

{¶17} The trial court granted Brady's motion to dismiss and dismissed all 50 counts of the indictment related to pornography.

{¶18} The state has timely appealed the trial court's decision pursuant to R.C. 2945.67.[4] The state raises two assignments of error. Its first assignment of error is:

{¶19} "The trial court erred in granting appellee's motion to dismiss, where it was based on facts that went beyond the face of the indictment."

{¶20} Brady's motion to dismiss was permitted by Crim.R. 12, which provides, in part:

{¶21} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue."

{¶22} In his motion to dismiss, Brady was arguing that his due process right to a fair trial was violated. His contention was that, due to circumstances beyond his control, namely the federal criminal matter against Boland, he was denied the assistance of an expert witness.

{¶23} The United States Supreme Court has held:

{¶24} "[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where *** a defendant is denied the

---

4. See, also, *State v. Hayes* (1986), 25 Ohio St.3d 173, 174-175.

5

opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."[5]

{¶25} In *Ake v. Oklahoma*, the Supreme Court recognized the fundamental right to expert witnesses in certain cases.[6] In following *Ake v. Oklahoma*, the Supreme Court of Ohio has held that when an indigent criminal defendant makes a sufficient showing that an expert is necessary, the Due Process Clause, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, requires the appointment of an expert witness to aid in the defense.[7]

{¶26} The state argues Brady's motion to dismiss was premature in that it challenged the sufficiency of the indictment. We agree that "a pretrial motion [to dismiss] must not entail a determination of the sufficiency of the evidence to support the indictment."[8] However, in this matter, Brady was not challenging the sufficiency of the potential evidence to support the charges in the indictment. Rather, he was making a constitutional challenge, arguing his right to a fair trial was compromised due to the FBI's actions against Boland.

{¶27} Brady's motion to dismiss did not implicate any trial issues; thus, it was capable of determination prior to trial pursuant to Crim.R. 12.

{¶28} The state's first assignment of error is without merit.

---

5. *Ake v. Oklahoma* (1985), 470 U.S. 68, 76.
6. Id. at 80-82.
7. *State v. Mason* (1998), 82 Ohio St.3d 144, 150.
8. *State v. Riley* (Dec. 31, 2001), 12th Dist. No. CA2001-04-095, 2001 Ohio App. LEXIS 5999, at *5, citing *State v. O'Neal* (1996), 114 Ohio App.3d 335, 336.

{¶29} The state's second assignment of error is:

{¶30} "The trial court erred in granting appellee's motion to dismiss where appellee claims he cannot receive a fair trial due to limitations placed upon appellee's expert witness."

{¶31} This court uses a de novo standard of review when reviewing a trial court's decision regarding a motion to dismiss.[9]

{¶32} "Pursuant to *Ake*, it is appropriate to consider three factors in determining whether the provision of an expert witness is required: (1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."[10]

{¶33} Presumably, the trial court considered these factors. Thereafter, the trial court determined an expert witness was necessary in this matter to ensure Brady's due process right to a fair trial. Such decision is left to the sound discretion of the trial court.[11] On appeal, the state does not contest the trial court's decision that Brady was entitled to the services of an expert.

{¶34} Boland testified that, upon the advice of counsel and due to the threat of additional federal prosecution, he could not possess another copy of a compact disc containing the allegedly illegal images in this matter. Further, he testified he could not conduct a proper investigation of any websites from which the images might have

---

9. (Citations omitted.) *State v. Palivoda*, 11th Dist. No. 2006-A-0019, 2006-Ohio-6494, at ¶4.
10. *State v. Mason*, 82 Ohio St.3d at 149, citing *Ake v. Oklahoma*, 470 U.S. at 78-79.
11. *State v. Mason*, 82 Ohio St.3d at 150.

allegedly originated. Finally, he could not use his expertise to create potential exhibits for Brady's trial.

{¶35} Not only was Brady denied the expert services of Boland, he was denied the expert services of all potential experts. Boland testified that no other expert witness would risk federal prosecution to assist Brady. Further, Boland testified that, in his opinion, Brady's counsel was duty-bound to inform potential experts about the possibility of federal prosecution. In light of this requirement, it would be nearly impossible to find a competent expert.

{¶36} The state asserts Brady was not prejudiced because Boland's creation of certain images involved "morphing." Morphing is the practice of altering innocent pictures of real children to make the children appear to be engaged in sexual conduct.[12] The affidavit described certain images that were allegedly in Boland's possession. The state contends these images violated R.C. 2907.323(A). A specific "morphed" image may or may not violate R.C. 2907.323(A), depending on a legal and factual conclusion of whether the particular image shows a minor "in a state of nudity." We decline to engage in an analysis of this issue at this time. There is no evidence in the record regarding these specific images. Since no actual images were introduced, we cannot conclude that Boland's alleged production of these images violated R.C. 2907.323. On a similar point, we note the state gleans all of its factual references from the search warrant affidavit. This affidavit, like many affidavits submitted in support of a search warrant, contains significant hearsay information.[13] Moreover, the sole purpose of the

---

12. *Ashcroft v. The Free Speech Coalition*, 535 U.S. at 242.
13. *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶33, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238.

8

affidavit was to provide the magistrate with sufficient probable cause to issue the search warrant.[14]  Finally, there is no evidence as to what the FBI agents actually found during the search of Boland's residence and person.

{¶37}  At the hearing, it was suggested that Boland could review the materials at issue in Brady's case at the prosecutor's office.  This suggested solution would still not permit Boland to create exhibits for trial.  Additionally, Boland testified that he uses certain software in his analysis that the prosecutor's office does not have.  Also, even though he would be in the prosecutor's office, it could be argued that he "received," albeit temporarily, child pornography in violation of Sections 2252(a)(2)(A) and/or 2252A(a)(2), Title 18, U.S.Code.  Another of Boland's concerns was visiting websites where the allegedly illegal images may have originated.  He believed he could still be subject to federal prosecution for conducting illegal internet activity at the prosecutor's office.  This belief was legitimate in that Sections 2252(a)(2)(A) and 2252A(a)(2), Title 18, U.S.Code prohibit receiving any images of child pornography that have traveled in interstate or foreign commerce, "including by computer."  Finally, Boland testified regarding his concern that he would not be able to record any of his work at the prosecutor's office for fear of federal prosecution, therefore, he would have to memorize his entire analysis of possibly hundreds of images for his trial testimony.  Upon consideration of Boland's testimony, the trial court concluded that viewing the images at the prosecutor's office was not a viable solution.  We agree.

---

14. *State v. Craig*, at ¶33, quoting *State v. George* (1989), 45 Ohio St.3d 325, paragraph two of the syllabus.

{¶38}  What occurred in this case was obviously troubling to the trial court.  It would be akin to the following hypothetic situation, where a defendant is charged with possession of cocaine.  The defendant contends the substance in question is baking soda.  Pursuant to R.C. 2925.51(E), the defendant seeks to have an independent analysis of the substance.  When the defendant's expert laboratory analyst receives the substance, the FBI seizes the substance and threatens to indict the analyst on federal narcotics charges.  Obviously, that analyst is not going to want to receive another sample of the purportedly illegal substance and risk further prosecution.  Moreover, in light of these circumstances, it is extremely doubtful that another analyst would risk federal prosecution and prison time for the purpose of assisting the defendant.  Thus, the defendant is left without his constitutional right to the assistance of an expert to defend against the charges.

{¶39}  In this matter, Brady had a constitutional right to an expert witness.  Due to circumstances beyond his or the trial court's control, Brady was denied the assistance of an expert witness.  Without the services of an expert witness, there was no way to provide Brady a fair trial.  Accordingly, the trial court did not err when it dismissed the charges against Brady.

{¶40}  We recognize there are a limited number of instances where it will be possible to determine that a defendant cannot have a fair trial prior to the trial itself.  However, the unique circumstances of this case qualify this matter as one of those instances.

{¶41} The state's second assignment of error is without merit.

{¶42} The judgment of the trial court is affirmed.

COLLEEN MARY O'TOOLE, J., concurs,

CYNTHIA WESTCOTT RICE, P.J., dissents with Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, P.J., dissents with Dissenting Opinion.

{¶43} A Crim.R. 12 pre-trial motion to dismiss cannot reach the merits or substance of the allegations as there is no equivalent of the civil rules' summary judgment procedure in the criminal arena. *State v. Riley*, 12th Dist. No. CA2001-04-095, 2001-Ohio-8618, *4-*5. Therefore, pre-trial motions to dismiss "can only raise matters that are capable of determination without a trial on the general issue." Id. at *4; see, also, *State v. Patterson* (1989), 63 Ohio App.3d 91, 95. It is the sufficiency of the indictment which is judged at this pre-trial stage. *Akron v. Buzek*, 9th Dist. No. 20728, 2002-Ohio-1960, *4.

{¶44} Brady claimed that his motion to dismiss "was not based upon any facts in his case," and maintains the trial court was correct in dismissing the matter on his pre-trial motion. I disagree. The trial court's ruling was premature and inappropriate at the pre-trial juncture and I must respectfully dissent.

{¶45} If a claim goes beyond the face of the indictment, then it is improperly presented under Crim.R. 12, and should be presented at the close of the state's case as

11

a motion for acquittal pursuant to Crim.R. 29. *State v. Varner* (1991), 81 Ohio App.3d 85, 86.  Under this guideline, it was premature for the trial court to grant Brady's motion to dismiss based on alleged facts that had not yet occurred.  Brady's motion went beyond the face of the indictment.  At no point in time did Brady challenge the sufficiency of the indictment as far as charging the proper offenses or the constitutionality of the offenses thus charged.  Rather, Brady only asserted that his expert witness and all similarly-situated experts would be precluded from effective performance.

{¶46} The majority upholds the pre-trial dismissal on the basis that Brady could not receive a fair trial.  In order to reach this conclusion, the majority must speculate first that Brady's expert could not perform his duties without violating federal law (a false assumption in any event because Brady's expert and appellate counsel conceded at the oral arguments that the expert could have viewed the material at the sheriff's or prosecutor's office and performed his tasks there).  Second, the majority must accept the assumption that Brady would not be able to find an expert to accomplish the expert tasks required.  The final assumption required by the majority's analysis is that the expert would have been able to show that the images in Brady's possession were indistinguishable from virtual pornography images.  This amounts to assumptions based on assumptions based on assumptions.  It is incredible to me that the majority would allow Brady to escape prosecution under these circumstances.  As much as I believe Brady is entitled to a fair trial, I also believe the victims of child pornography deserve to have their alleged perpetrator stand trial.

{¶47} Each aspect of Brady's motion to dismiss speculated that Brady would be precluded from presenting an adequate defense as a result of the chilling effect of the FBI's actions against Boland. Brady assumed that the State would present the expert testimony of Dr. Farid to support its theory that the materials were photos and depictions of actual children. Brady assumed that no other expert witness would be willing to testify on his behalf for fear of federal prosecution. Brady assumed that Boland could not present a convincing case by merely viewing the materials at a law enforcement office as opposed to transporting the materials for his own convenience. The trial court, and the majority, have accepted each and every assumption as fact.

{¶48} The cornerstone of Brady's argument lies in *Ashcroft v. The Free Speech Coalition* (2002), 535 U.S. 234. In *Ashcroft*, the Supreme Court held that a prohibition on virtual child pornography is overbroad. Virtual child pornography does not involve real children but digitally altered or created "children." In doing so, the Supreme Court determined that the government cannot prohibit speech that may, in some tenuous manner, induce a person to illegal behavior. Id at 253. *Ashcroft* did not address the issue as to whether morphed images of children, that is, the alteration of innocent pictures of actual children using digital technological means, is an appropriate ban. It appears from the record that Boland's activities in creating previous trial exhibits actually involves morphed images of children, activity still illegal under federal law with no exceptions.

{¶49} Boland testified that one of his tasks as Brady's expert would have been the creation of certain trial exhibits. Boland stated his "expertise is in the creation and manipulation alteration of digital images." Boland outlined his work product which would

13

include an analysis as to whether the materials contained images of actual children. Next, Boland would "prepare digital image exhibits that [would] address the technological issues ***." According to Boland, he would violate federal law by both the possession and analysis of the images as well as the preparation of trial exhibits.

{¶50} Presumably, the State's expert would testify that the images depicted actual children and Boland would testify that the images portrayed either virtual children or adults technologically morphed to look like children. Under this theory, Boland's analysis and work product would not violate Ohio or Federal law pursuant to *Ashcroft*.

{¶51} The problem lies in the speculation. Without actually going forward with the trial, it is conjecture to pre-determine Boland's testimony and the impact of the federal law on the effectiveness of that testimony. To that end, the trial court exceeded the scope of a pre-trial motion to dismiss. *State v. McNamee* (1984), 17 Ohio App.3d 175, 176-177. Boland attempts to cure this defect by asserting that all defense experts would be prohibited from adequate function under the federal application of the law. However, the only testimony elicited at the hearing was that of Boland himself. Boland opined that other experts may not want to work under these threatening conditions, thereby violating Brady's Sixth and Fourteenth Amendment rights. Although constitutional issues may be determined prior to trial in some circumstances, where that determination turns on an evidentiary issue and goes beyond the face of the indictment, it is inappropriate for a pre-trial adjudication pursuant to Crim.R. 12. *Lorain v. Slattery* (Sept. 22, 1999), 9th Dist. No. 98CA007140, 1999 Ohio App. LEXIS 4357, *4.

{¶52} The court accepted Boland's presumption that other experts may refuse employment on this basis. However, even Boland himself admitted that he would not

be precluded from reviewing and analyzing the evidentiary material; he is only prohibited from possessing that material. Boland acknowledged that he could perform the analysis portion of his expert witness activities at the prosecution's office or in the court. Certainly in either of these locales, Brady does not violate any law because he is merely reviewing the material – not possessing the contraband.

{¶53} Therefore, the possession aspect of Boland's expert activities can be cured by allowing Boland to work out of the sheriff's or prosecutor's office. The remaining activities of Boland, the creation of the digital images, would only be illegal under federal law if Boland morphed images of actual children. The problem is that morphed images are still illegal and properly banned under *Ashcroft.* Therefore, Boland is actively violating the law through the creation of these exhibits. However, the law does not preclude Boland from creating virtual pornography to support his expert testimony.

{¶54} Clearly, Brady's motion to dismiss went beyond the face of the indictment. It required the trial court to conduct an analysis into a hypothetical. Hypothetical questions are not appropriate questions of law. The circumstances could change. Boland may have completed his analysis and actually agreed with the State. Brady may have been able to find another expert willing to work under threat of federal prosecution. Boland could physically go to the prosecutor's office and review and analyze the materials. Brady's expert may be able to competently review and advise after viewing the images while they remained in the possession of the State. The same interests which prompted the legislation prohibiting the dissemination of this material,

are the same interests that weigh in favor of maintaining a stationary location for the images to be retained during the analysis.

{¶55} This dismissal has essentially provided Brady and any other like-minded individual with a free pass to possess, observe, disseminate, distribute and manufacture any type of pornography without fear of prosecution.  The ramifications of plunging down the slippery slope of the majority's analysis are many.  Following the reasoning of the majority, any expert can now assert that in order to properly offer an opinion, the expert must essentially recreate the crime.  Certainly the majority would be unwilling to allow this diversion in the arena of a murder trial.  Yet they see fit to do so here.  A murder suspect would not evade prosecution merely because his expert would not be permitted to strike another human being over the head with the murder weapon, yet Brady receives a pass from this court because his expert could not recreate unlawful pornography.  The public interest is certainly better served in protecting the victims of child pornography than in allowing such divertive tactics to succeed at evading prosecution.

{¶56} For the foregoing reasons, I would therefore reverse and remand this matter.