**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| JANE DOE, *et al.*, | ) | CASE NO.1: 07 CV 2787 |
| | ) | |
| | ) | |
| | ) | JUDGE Daniel A. Polster |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | **Plaintiffs' Brief In Opposition to** |
| | ) | **Defendant's Motion to Dismiss** |
| vs. | ) | |
| | ) | |
| DEAN BOLAND | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |

Now come the Plaintiffs in reply to Defendant's Motion to Dismiss and state that it is not well taken for the reasons set forth below. Plaintiffs respectfully request that his motion be denied and have attempted to respond to the motion using the same numbering system as the Defendant for clarity.

Plaintiffs submit that this is a complex case and that this memorandum adheres to the 30 page limitation imposed by ND Local R. 7.1(f)

<u>Procedural and Factual History</u>

Defendant professes to set forth the "procedural and factual history" of this case in the first section of his motion. Defendant does so improperly and incompletely if not inaccurately. Defendant cannot dispute the facts alleged in the complaint for the purposes of a motion to dismiss. The allegations in the complaint must be accepted as true. The Sixth Circuit has determined the standards and procedure regarding a motion to dismiss:

> The court must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief. *Id.* Though decidedly liberal, this standard does require more than bare assertions of legal conclusions. *Boveev. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir. 2001). Plaintiffs' obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *Bell Atlantic Corp. v. Twombley,* - U.S. - , 127 S.Ct. 1955,1964-65 (2007). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief. *Id.* at 1965. To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Id.* at 1969.

*League of United Latin American Citizens v. Bredesen*, 082807 FED6, 06-5306.

The operative factual allegations in the complaint, which must be acted as true, allege that the defendant did far more than "possess" obscene images of children as ordered by or condoned by several courts in his bid to defend "virtual" pornography. The complaint clearly alleges that:

2

During the time period beginning in February, 2004 and ending on March 15, 2004, Defendant downloaded images from the internet depicting real and identifiable minors in innocent poses.[1]

The images downloaded from Istockphoto.com, and/or other sources, were of Plaintiffs Jane Doe and Jane Roe.[2]

The Defendant then digitally manipulated the innocent images of Plaintiffs Jane Doe and Jane Roe to visually depict that minors Jane Doe and Jane Roe were engaging in sexually explicit conduct of a revolting and disgusting nature.[3]

Defendant then used and published these sexually explicit visual depictions in his capacity as an attorney and expert witness in a variety of criminal child pornography cases in several courts.[4]

Between March 2004 and January of 2005 Boland transported, used, possessed, published, displayed, presented, and testified about these sexually explicit visual depictions in Summit, Columbiana, Hamilton, and Warren Counties in the State of Ohio and in the U. S. District Court in Tulsa, Oklahoma, in interstate commerce, and otherwise as will be proven at trial.[5]

By committing the acts as set forth above, Defendant used an aspect of Jane Doe's and Jane Roe's "persona," as defined by Ohio Rev. Code § 2741.01 (A), for a commercial purpose, as defined by Ohio Rev. Code § 2741.01 (B) in violation of Ohio Rev. Code § 2741.02 (A).[6]

---

[1] Paragraph 10 of the Complaint
[2] Paragraph 11 of the Complaint
[3] Paragraph 13 of the Complaint
[4] Paragraph 14 of the Complaint
[5] Paragraph 15 of the Complaint
[6] Paragraph 19 of the Complaint

By committing the acts set forth above, Defendant violated 18 USC § 2252A (a) and (b).[7]

The gist of the complaint has little if not nothing to do with the defendant's possession of allegedly pornographic materials that he received, pursuant to his allegedly proper judicial purpose of serving as a defense expert witness that were confiscated from him by the FBI, the search warrant utilized to do so, and/or the sanctioning of this conduct by various courts whether proper or improper. The gist of this case has to do with the defendant downloading images of Plaintiffs Jane Doe and Jane Roe, who are real and actual persons under the age of 18, and then using their likenesses to create obscene images, the use of which has exposed him to civil liability based upon the causes of action set forth in the complaint[8] and below. Therefore, the complaint shows "entitlement" to relief.

The oft repeated lynch pin of the motion to dismiss is that the defendant merely possessed existing images he received in his capacity as an expert defense witness. This factual assertion is directly contradicted by the allegations in the complaint and is untrue. It is refuted by the search warrant affidavit improperly included as Exhibit "2" to the motion to dismiss. It is also refuted by the other exhibits filed with the motion to dismiss as revealed below.

By merely "possessing" existing images which enjoyed some ostensible judicial sanction; the defendant is in a better position to assert the constitutional protections of the First Amendment and judicial immunity which respectively prohibit the overbroad proscription of "virtual" pornography depicting minors who are not real and the prosecution of an expert who possesses existing pornography for a legitimate reason. Clearly, he did possess the altered

---

[7] Paragraph 20 of the Complaint
[8] First and Fifth Causes of Action premised upon 18 USC § 2252A(f), Second and Sixth Causes of Action premised upon 18 USC § 2255, Third and Seventh Causes of Action sounded in Common Law Invasion of Privacy,  Fourth and Eighth Causes of Action premised upon Ohio Rev. Code§ 2741.07

images of the juvenile plaintiffs and this is actionable, but he also created and produced them, all in violation of the federal statues cited in the complaint, Ohio Statutes as cited in the complaint, and the common law tort of invasion of privacy.

As set forth below, this First Amendment protection does not apply to the pornographic images created by the defendant using the likenesses of the real and identifiable Plaintiffs. The flaw in the defendant's attempt to escape civil liability for his misconduct by claiming his actions are constitutionally protected free speech arising from the possession of "virtual" pornography is laid bare by simply asking: if one can actually create virtual pornographic images depicting juveniles which are indistinguishable from real images depicting the same thing, then why was it necessary for the defendant to download the likenesses of two real and identifiable juveniles and use them to create the images which are the basis for the complaint?

Likewise, the logic and goals of the courts that sanctioned the defendant's possession of existing images seized from persons who were ultimately charged with crimes to examine the images as an expert witness does not extend to anyone who creates illegal images using the likenesses of real and identifiable children.

No greater illustration of this premise can be found than by considering the analogy used by the Court of Appeals for Ashtabula County.[9] The Eleventh Appellate District actually affirmed a dismissal of charges against a defendant charged with possessing child pornography based upon Defendant Boland's claim that he could be federally prosecuted if he "received" even temporarily the child pornography sought to be examined by him, visited websites where the images may have originated even if done at the prosecutor's office, or if he recorded any of his conclusions.[10] The appellate court analogized this to a situation wherein a defendant charged

---

[9] Exhibit "5" to the Motion to Dismiss at page 10 ¶ 38
[10] Exhibit "5" to the Motion to Dismiss at page 9 ¶ 37

with the criminal possession of cocaine could not mount a defense claiming the substance was actually baking soda because he could never retain an expert if any expert he hired could be charged with the criminal possession of cocaine for the sample the expert possessed for testing purposes. The appellate court concluded that the case must be dismissed because the State of Ohio could test the evidence when the defense could not.

Clearly, this logic fails under the facts alleged in the complaint which must be accepted as true. No court would ever sanction the defense expert to manufacture more cocaine. Yet, that is what the defendant has done. It is one thing to possess child pornography or cocaine for legitimate testing purposes. It is another to create "virtual" child pornography to substantiate expert testimony.[11] It is entirely different to create child pornography using the likenesses of real and identifiable children.

<u>Law and Explanation</u>

**I.    THE FIRST AMENDMENT NEED NOT PROTECT THE PLAINTIFF'S POSSESSION OF THE COURT EXHIBITS NECESSARY TO SUPPORT THEIR CLAIMS AND THE FIRST AMENDMENT CERTAINLY DID NOT PROTECT THE DEFENDANT WHEN HE CREATED ILLEGAL IMAGES USING THE LIKENESSES OF THE PLAINTIFFS.**

In the first section of his brief, the defendant again improperly goes outside of the complaint and the scope of a motion to dismiss and postulates that the Plaintiffs must possess and produce the images that underlie the complaint in discovery and in court. This factual assumption is incorrect. Neither the Plaintiffs nor their counsel possess the images the defendant created. They are in the possession of federal law enforcement and will be produced in court pursuant to subpoena.

---

[11] Plaintiffs are not conceding that such conduct is legal or appropriate only that the issue need not be addressed to resolve this suit.

The mere raising of this issue illustrates why the motion to dismiss is not well taken. Firstly, the defendant is attempting to distance himself from his actual conduct which gives rise to the complaint. He argues that he merely possessed the images in question and had not created them as alleged in the complaint.[12] He attempts to use this argument to set up a straw man to facilitate the argument that if he cannot possess them, then neither can the Plaintiffs nor their counsel. He then goes on to argue that his possession of them was protected by the First Amendment and that he can neither be prosecuted for their possession nor civilly sued for possessing them. This position is diametrically opposed to that espoused by him before the courts that purportedly sanctioned his conduct. In the exhibits that he has filed in support of his motion to dismiss, the defendant represented to the various courts that he absolutely could be federally prosecuted for possessing the images he was retained to examine and testify about. His testimony was so adamant on this point and his fear of prosecution so great that he could no longer serve as an expert. As a result, various courts dismissed the charges against the criminal defendants because they could not receive a constitutionally adequate defense.[13] Although, these exhibits are not properly before the court on a motion to dismiss, they clearly illustrate that the defendant's claim that his acts were constitutionally protected is contrary to his prior sworn testimony.

A.    First Amendment Ruling

The defendant again wrongfully postulates that the plaintiffs must possess the images which underlie the complaint to prove their case. This argument is beyond the scope of a motion to dismiss because it is based upon a false factual premise not contained in the complaint. Even

---

[12] The creation of these illegal images by the defendant involving the juvenile plaintiffs is also demonstrated by the search warrant affidavit filed as Exhibit  "2" to the Motion to Dismiss even though it is not properly before this court for consideration.

[13] Exhibit "3" at 8; Exhibit "4" at 5-8; Exhibit "5 "at 9-16

by assuming the defendant to be correct, a potential failure of proof cannot prove fatal in a motion to dismiss before the discovery process has begun. Additionally, the facts underlying the complaint may be proved by means other than producing the images the defendant illegally created. The testimony of the defendant and other witnesses who viewed the images can establish and describe that the defendant created obscene, pornographic, and illegal images using the likenesses of the juvenile plaintiffs; how he obtained the likenesses of the juvenile plaintiffs; and what he did with them.

The defendant himself has admitted the allegations of the complaint, including that he downloaded the images of the juvenile plaintiffs and two other juveniles, and that he "digitally manipulated such images and combined them with other images to create a series of visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors was engaged in sexually explicit conduct."[14] In fact, the defendant cannot deny the conduct alleged in the complaint without violating his pre-trial diversion agreement.[15]

However, the images will be produced by subpoenaing the proper federal law enforcement officials who possess them to bring them to trial. If the defendant needs to re-inspect his handiwork, then the plaintiffs will not oppose the creation of an appropriate court order permitting him to do so.

B.    The First Amendment Neither Protects the Possession Nor the Creation of the Images which Underlie the Causes of Action in this Case.

Throughout his brief, the defendant claims his actions were protected by the First Amendment. He attempts to shield himself from the civil ramifications of his misconduct by asserting First Amendment Protections and by claiming that his conduct was performed in a

---

[14] See paragraph 18 of the complaint and Exhibit "1" (Defendant's Pre-Trial Diversion Agreement) to the complaint
[15] Exhibit "1" to the complaint which is incorporated therein by reference.

"judicial" capacity. To succeed in falling under any of theses safe havens the defendant must misrepresent when he created the images, what images he created, and how he created these images.

The First Amendment does not protect what the defendant did in this case. The defendant relies on *New York v. Ferber,* 458 U.S. 747, 102 S. Ct. 3348 (1982) and *Ashcroft v. Free Speech Coalition,* 535 U. S. 234, 122 S. Ct. 1389 (2002). Neither of these cases provides First Amendment protection to persons who alter innocent pictures of real minors so that the children appear to be engaged in sexual activity as it is alleged the defendant did in the complaint.

The United States Court of Appeals Eighth Circuit dealt with this issue on facts that are remarkably similar to, if not identical with, those alleged in the complaint of this case:

> Section 2252A was enacted as part of the CPPA to target any person who "knowingly receives or distributes ... any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(A). In *Free Speech Coalition*, the Supreme Court declared that the CPPA definitions of child pornography in § 2256(8)(B) and (D) were unconstitutional. These definitions were held to be overly broad and to prohibit speech protected by the First Amendment. Bach contends that § 2256(8)(C), the definition of child pornography at issue in his conviction under § 2252A(a)(2), is similarly unconstitutional.
>
> The definition sections found infirm in *Free Speech Coalition* were broad enough to include apparent or suggested sexual conduct of a minor. Section 2256(8)(B) applied to any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," and § 2256(8)(D) covered the depiction of sexually explicit conduct "advertised, promoted, presented, described, or distributed" in a manner to suggest that the material shows a minor engaging in such conduct. Before the CPPA was enacted with its new definitions, child pornography had been defined simply as any visual depiction produced by using a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252, and that definition was retained in § 2256(8)(A) of the new legislation.
>
> Section 2256(8)(C), the definition applied in Bach's prosecution for receiving the image with AC's face, covers any visual depiction that "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." The definition in subsection (C) was intended by Congress to prevent

9

harm to minors resulting from the use of "identifiable images ... in pornographic depictions, even where the identifiable minor is not directly involved in sexually explicit activities." S. Rep. 104-358, at 8 (1996). In contrast to the definitions of child pornography in subsections (B) and (D), the definition in subsection (C) targets harm to an identifiable minor.

In *New York v. Ferber*, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children. The distribution of child pornography is "intrinsically related" to the sexual abuse of children because it creates a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation," and the production of pornography requiring the sexual exploitation of children cannot be "effectively controlled" unless that network is closed. *Id*. at 759, 102 S.Ct. 3348. In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389.

*Free Speech Coalition* noted that the definition of child pornography in § 2256(8)(B) "covers materials beyond the categories" "recognized in its earlier decisions in *Ferber* and *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)." 535 U.S. at 256, 122 S.Ct. 1389. As examples, it suggested that § 2256(8)(B) could potentially be applied to Hollywood movies filmed without any child actors, a Renaissance painting depicting a scene from classic mythology, and a computer generated image if the image "appears to be" a minor engaging in sexually explicit conduct. *Id.* at 241, 122 S.Ct. 1389. The Court stated that such images would not harm or involve any actual children in the production process. *Id.* Unlike the speech in *Ferber* which was itself "the record of sexual abuse," some speech covered by subsection (B) would record no crime and create no victims by its production since the virtual pornography covered under the section would not be " 'intrinsically related' to the sexual abuse of children." *Id*. at 250, 122 S.Ct. 1389. Subsection (B) went beyond the concerns in *Ferber* by prohibiting images that do not "depict an actual child," *id*. at 239, 122 S.Ct. 1389, and the definition could therefore not withstand facial attack under the First Amendment. *Id.* at 256, 122 S.Ct. 1389. The Court held that § 2256(8)(D) was also similarly overbroad because sexually explicit materials advertised as child pornography could be prohibited under it, even if no children were actually pictured. *Id.* at 257-58, 122 S.Ct. 1389.

Because the definitions in subsections (B) and (D) could be applied to situations where no actual child could be harmed by the production or distribution of the image, the Court struck them down in the declaratory judgment action in *Free Speech Coalition*. Not only did the Supreme Court not extend its analysis to the definition in § 2256(8)(C), it explicitly stated that it was not addressing the

constitutionality of subsection (C). It differentiated the definition in (C), noting that it prohibits a more common and lower tech means of creating visual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber.

*Id.* at 242, 122 S.Ct. 1389.

Unlike the virtual pornography protected by the Supreme Court in *Free Speech Coalition*, the picture with AC's face implicates the interests of a real child and does record a crime. The picture depicts a young nude boy who is grinning and sitting in a tree in a lascivious pose with a full erection, his legs spread, and his pelvis tilted upward. The jury could find from looking at the picture that it is an image of an identifiable minor, and that the interests of a real child were implicated by being posed in such a way. This is not the typical morphing case in which an innocent picture of a child has been altered to appear that the child is engaging in sexually explicit conduct, for the lasciviously posed body is that of a child. See S.Rep. No. 108-002, at n. 2 (2003) ("[T]he morphing provision is explicitly aimed at the creation of a sexually explicit image using an innocent image of a child.").

Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation. In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.

Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*.

11

*United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005) *cert denied* 546 U.S. 901, 126 U.S. 243 (2005).

Therefore, the defendant's conduct in altering innocent pictures of the juvenile plaintiffs so that they appear to be engaged in sexual activity enjoys no constitutional protection.

Altering innocent pictures of the juvenile plaintiffs so that they appear to be engaged in sexual activity does not enjoy protection under Ohio Rev. Code § 2907.321(B)(1) which protects child pornography that is "sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental judicial, or other proper purpose by or to . . . a person having a proper interest in the material or performance." This statute by its own terms only protects those who utilize **existing** child pornography for a proper purpose. It creates no safeguard for the creation of child pornography as the defendant has allegedly done. Nor can any reasonable interpretation of this statute condone the misuse of a real and identifiable child's likeness to create images of that child engaging in sexual activity to create court exhibits or liken such activity to a "proper purpose." Clearly, the Ohio Legislature did not condone any such activity when it enacted this statute.

None of the judges authoring the opinions and orders relied upon by the defendant condoned the defendant's using the likeness of real children and the creation of an image depicting that child engaging in sexual activity. The defendant was permitted to possess existing child pornography to examine and test it. He may have even been authorized by various courts to create "virtual" images to use as exhibits in his testimony. However, the defendant's claim that he was authorized by any court or that it was a "proper purpose" to take the likenesses of two

real juveniles and subject them to the harm recognized in *Ferber, supra,* and *Bach, supra*[16] exceeds any common sense reading of the grant of authority issued by the various courts.

## II.    ABSOLUTE WITNESS IMMUNITY

The defendant next claims that he enjoys absolute witness immunity for his actions. Witness immunity extends only to the actions/testimony of witnesses that occur in the courtroom. The facts adduced in the complaint allege activities that extend far beyond the any courtroom. The complete extent of the defendant's activities have yet to be ascertained since discovery has not yet been engaged in. However, it is alleged and the defendant has admitted downloading images of the juvenile plaintiffs over the internet, digitally manipulating these images, and combining them with other images to make it appear that the juvenile plaintiffs were engaging in sexually explicit conduct. This obviously did not occur in a court room. It is alleged that he did so either at his office or his home.[17] Therefore, the acts occurred outside of any courtroom for which the defendant may be held liable and for which he does not enjoy "witness immunity."

In any event, pre-trial non-testimonial conduct like that of the defendant's in this case does not enjoy the protection of absolute immunity. The United States Court of Appeals, Sixth Circuit has distinguished the federal case law relied upon by the defendant in this portion of his brief:

---

[16] "The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*." *Bach*, *supra at* 632; "In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348." *Bach*, *supra at* 631. "In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389." *Bach, supra at* 631.

[17] Paragraph 11 of the Complaint

13

\* \* \* More limited in application, but certainly broader in protection, is absolute immunity, which the Supreme Court has held applies to the performance of certain functions when those functions are integral to the functioning of our adversarial judicial system. *See Briscoe v. LaHue,* 460 U.S. 325, 345, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Supreme Court has carefully circumscribed the doctrine, however, because absolute immunity protects an official from liability even when the official acted with knowledge of the constitutional violation. *Id.* Testimony at adversarial judicial proceedings is the most historically grounded of these functions which merit absolute immunity. *See id.*

In circumscribing the doctrine, the Supreme Court has advanced the interest served by absolute immunity - the furtherance of our adversarial legal system - by employing a functional test: "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1995). Those functions more "intimately associated with the judicial phase of the criminal process" are more likely to merit careful consideration for absolute immunity. *Id.* In contrast, those functions more "investigative" in nature - searching for "clues and corroboration" - are more removed from the judicial process and merit only qualified immunity. *Id.* at 273, 113 S.Ct. 2606. The Supreme Court's decision in *Buckley v. Fitzsimmons* refused to extend absolute immunity to prosecutors accused of fabricating expert evidence when the prosecutors were acting in an investigatory fashion rather than as advocates. *Id.* at 275, 113 S.Ct. 2606.

Following the Supreme Court's direction, this Circuit therefore looks to the "nature of the function performed" in evaluating whether to extend absolute immunity. *See id. at* 269, 113 S.Ct. 2606. This Circuit, like most of our sister circuit courts of appeals, has held that absolute testimonial immunity does not "relate backwards" to "protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his [] testimony." *Mastroianni v. Bowers,* 160 F.3d 671, 677 (11th Cir.1998) (denying defendant's motions for summary judgment based on absolute and qualified immunity); *accord Spurlock,* 167 F.3d at 1001. Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence. *Id.* This Court has never endorsed such a self-serving result. Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from actions for redress.

This Court has consistently held that nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony.

\* \* \*

14

"Expert" forensic examiners act in an investigatory fashion when they interpret and document physical evidence. Under the Supreme Court's functional test, the pre-trial investigatory acts by forensic examiners merit no more protection under absolute immunity than do other persons performing investigatory actions. This Court sees no reason to treat the intentional fabrication of a forensic report differently from the intentional fabrication of a police officer or prosecutor. The Ninth Circuit has noted that absolute immunity "does not shield non-testimonial conduct. . . . [P]olice officers . . . obviously enjoy no immunity for non-testimonial acts such as fabricating evidence." *Paine v. City of Lompoc,* 265 F.3d 975, 981 (9th Cir.2001) (internal quotations and citations omitted). More specifically, the Fifth Circuit has declined to extend absolute immunity to a forensic examiner who allegedly falsified a forensic report. *See Keko v. Hingle,* 318 F.3d 639, 644 (5th Cir.2003). In a case with facts very similar to the case at bar, the Tenth Circuit held that an action could proceed against a forensic hair examiner accused of falsifying her investigative report and recording a "match" when one did not exist. *See Pierce v. Gilchrist,* 359 F.3d 1279, 1300 (10th Cir.2004) (upholding district court's denial of qualified immunity to the forensic examiner on a motion to dismiss).(fn4)

*Gregory v. City of Louisville*, 444 F.3d 725 at 738-40 (Fed. 6th Cir. 2006)

In this case, the defendant was not acting as an attorney or advocate but an investigating expert or forensic examiner. He fabricated evidence using the innocent images of the juvenile plaintiffs. He did so prior to his appearances in various courts. The act of creating and possessing the images underlying the suit is non-testimonial in nature and does not enjoy immunity.

Likewise the immunity will not be extended to create situations which are more harmful that the legitimate concerns that resulted in the creation of the privilege:

The public policy concerns behind providing witnesses (or parties) the litigation privilege in the first instance militate against protecting the conduct at issue here. The Supreme Court of Washington has explicitly identified the policies behind the litigation privilege. It "is a judicially created privilege founded upon the belief that the administration of justice requires witnesses in a legal proceeding to be able to discuss their views without fear of a defamation lawsuit." *Deatherage,* 948 P.2d at 830. Moreover, the "privilege of absolute witness immunity creates an 'extraordinary breadth' of protection and should not be extended absent the existence of compelling public policy justifications." *Id.* Encouraging frank, candid, honest witness testimony without fear of future "perjury" litigation is precisely the policy goal behind the privilege that will *not* be accomplished if the Court now protects, in the name of the litigation privilege, the evasive, fabricated, and dishonest testimonial conduct that allegedly occurred here. If events occurred

15

as Plaintiffs allege, Defendants' conduct extended beyond perjury and into the realm of accomplishing a wrong greater than perjury alone.

*FMC Technologies, Inc. v. Edwards*, 464 F.Supp.2d 1063 at 1071-72 (W.D. Wash. 2006).

The plaintiffs respectfully suggest that the harm caused by permitting "experts" to "morph" innocent images of real and identifiable children into images that depict explicit sexual conduct is a harm far greater than the need for witnesses to speak freely and frankly in court and would clearly create a greater wrong that would even outweigh a potential prison sentence.

## III.   JUDICIAL PROCEEDINGS IMMUNITY

As stated above, Plaintiffs do not contend, at this time, that that the defendant acted in his capacity as an advocate before any court but rather he was a licensed attorney acting as a forensic witness as a part of his law practice. Therefore, the law cited above precludes him from enjoying any type of immunity. Litigant immunity and witness immunity are both premised upon judicial proceedings immunity in any event.

If the discovery process reveals that the defendant was acting in his role as an advocate, then the same limitations or concerns about extending the privilege to this situation apply as stated above. As will be discussed below, Congress did not enact any defense or exception to the civil penalty provisions of 18 USC §§ 2252A and 2255 as the Ohio Legislature did and for the reasons set forth above the defendant's conduct is not protected by Ohio Rev. Code § 2907.321(B)(1). There is no federal or state judicial, witness, or "proper purpose" defense/immunity/privilege that applies to the facts alleged in the complaint and the burden is upon the defendant to establish that one applies.

If prosecutors while investigating their case were not afforded immunity, judicial or otherwise, as attorneys in *Gregory v. City of Louisville, supra,* then neither is the defendant who although an attorney was hired by counsel to function solely as a forensic expert.

It was not necessary for the plaintiffs to allege in their complaint that the "exhibits" created by the defendant were not material to allege a cause of action. However, that does not preclude them from arguing as much. Plaintiffs do claim that the actual likenesses of these particular juvenile plaintiffs were immaterial to the defense crated by the defendant. This is especially true if the defense was actually that "virtual" pornography could not be distinguished from the real thing.

> Materiality/relevance is a requirement for immunity:
>
> Anglo-American defamation rules traditionally impose a relevancy requirement on the absolute privilege for participants in judicial proceedings. To fall within the absolute privilege for participants in judicial proceedings the defamatory statement must be "relevant" or "pertinent to the proceeding. The judicial privilege may be "waived" if the same statements are made outside of the scope of the judicial proceeding."
>
> Law of Defamation, 2d Ed. Smolla, Vol 2 at § 8:13 (2006 Thompson/West).

See also: *Surace v. Wuliger* (1986), 25 Ohio St.3d 229 at 235 stating:

> We believe that the standard requiring that the alleged defamatory statement bear some reasonable relation to the judicial proceeding in which it appears is the proper restraint which should be made in order to insure the free and open discussion of competing interests that is a necessary part of our adversarial system of justice.

In this case, the use of the likenesses of these specific juvenile plaintiffs is neither relevant nor material to the defense. The images of any juveniles would have sufficed. Therefore, even when assuming that the causes of action sound in defamation, there is no particular relevance or materiality to using these specific images so necessary to the defense of this matter that their publication in court by the defendant should be protected as vital to the effective administration of justice. Why the defendant chose to manipulate the images of these particular juvenile plaintiffs is not yet known, but it is apparent that any the image of any juvenile would have

sufficed. Therefore, the particular images used have neither the relevance nor materiality to necessary to cause their "defamation" to be governed by immunity.

## IV.    FEDERAL LAW NEED NOT PREEMPT STATE STATUE

In this section of his brief, the defendant represents that "Ohio law authorizes the use of the court exhibits as identified in the complaint for 'judicial purposes.'(See R.C. 2907.321, et seq). **All** courts who have addressed that exception and similar ones in other state statutes have reached the same conclusion."[Emphasis in the original][18] The defendant goes onto argue, without citing any supporting authority, that to "avoid dismissal, the federal statute under which the plaintiffs have proceeded must be held to preempt the conflicting state statutes that authorize Boland's conduct."[19]

Firstly, for the reasons set forth above, these claims are unfounded both legally and factually. Since Ohio law only protects the use of "existing" child pornography and not the creation of new, there is no conflict.

Secondly, the United States of America can criminalize any conduct it desires so long as it meets constitutional requirements without obtaining approval from any state even if it proscribes what has been locally sanctioned as legal conduct. One of the local courts that defendant claims has reached the conclusion supporting his position opined that:

> "Morphing is the practice of altering innocent pictures of real children to make the children appear to be engaged in sexual conduct. The affidavit described certain images that were allegedly in Boland's possession. The state contends these images violate R. C. 2907.323 (A). A specific "morphed" image may or may not violate R. C. 2907.323(A), depending on a legal and factual conclusion of whether the particular image shows a minor "in the state of nudity."[20]

---

[18] Motion to Dismiss at 9
[19] Motion to Dismiss at 9
[20] Exhibit "5" to the Motion to Dismiss at 8

The acknowledgment by this court that the defendant's conduct may constitute a crime hardly suffices as condoning his conduct and refutes the defendant's position that Ohio law protects his "morphing" of innocent images into children appearing to be engaged in sexual conduct.

Thirdly, the defendant has previously given sworn testimony in a successful effort to obtain the dismissal of criminal charges pending against an alleged child pornographer that the federal law has preempted the state law on these very issues.[21]

## V. and VI.     THE STATUTE OF LIMITATIONS HAS NOT RUN ON THESE CLAIMS

The defendant next claims in his motion that the statute of limitations for libel and slander is one year from the date the defamatory material is first published. The plaintiffs do not dispute this. However, the plaintiffs do dispute that this is a "libel" or "slander" action and that the statue of limitations has expired for these claims.

Firstly, the statue of limitations in Ohio for a minor does not begin to run until the minor reaches the age of majority.[22] Clearly paragraphs one and two of the complaint allege that two of the plaintiffs are minors. Therefore, the one year time frame in which to bring this action has not yet commenced. Additionally, the statute provides that "When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all." Because the claims of all the Plaintiffs are joint and inseparable, the claims of the adult plaintiffs are preserved as well.

---

[21] " He [Boland] believes now that the federal law preempts the Ohio exception under § 2907.323(A)(2) and he places himself in jeopardy of indictment in continuing his duties as an expert in this matter by possession the CD's or preparing trial exhibits." *State v. Brady*, Ashtabula County Common Pleas Case No. 2004-CR-349 at 7 a copy of this opinion is filed as Exhibit "3" to the Motion to Dismiss.

[22] Ohio Rev. Code § 2305.16 states: Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.

Secondly, Ohio Rev. Code § 2305.11 specifically addresses actions for "libel" and "slander." It does not address all defamation torts. It does not address Chapter 2741. It was re-enacted on April 11, 2003 by the Ohio legislature with no reference to any action under Ohio Rev. Code Chapter 2741 or the tort of invasion of privacy. Therefore, it has no application to Ohio Rev. Code Chapter 2741 which was enacted on April 3, 2003. Had the Ohio Legislature intended to have the one year statute of limitations apply to all defamation actions, Chapter 2741 actions, and not just actions for libel and slander, it would have done so. Having not done so,it must be presumed that the Legislature did not intend to do so[23]

Likewise, the Ohio Supreme Court has recognized the tort of Invasion of Privacy as actionable through the appropriation of one's likeness since 1956. [24] Yet, the Ohio Legislature has not chosen to specifically include this cause of action within the purview of Ohio Rev. Code § 2305.11. Since it has not, the statue of limitations for invasion of privacy[25] is four years.

## VII.   DAMAGES

The defendant continues his bid to support his motion to dismiss by inaccurately setting up "straw men" and then apparently knocking them down. In this section of his brief, he alleges that "the plaintiffs allege damages such as mental anguish, distress, embarrassment and

---

[23]" We must view the legislature's failure to make such prohibition more expansive as purposeful. See, e.g., *Guider v. LCI Communications Holdings Co.* (1993), 87 Ohio App.3d 412, 419 (as the legislature could have included certain language had it wanted, the court must assume that the General Assembly's failure to do such was intentional); *State v. Hanning* (Feb. 9, 1999), Franklin App. No. 98AP-380 (the court must assume that the General Assembly's omission of language was intentional, and the court cannot construe the statutory language otherwise); *Havre v. Havre* (Nov. 29, 1996), Portage App. No. 96-P-0058 (the court must assume the failure of the legislature to include language in the code section was purposeful); *Rickabaugh v. Village of Grand Rapids* (June 9, 1995), Wood App. No. WD-94-102 (as the legislature is capable of adding a requirement to a statue, the court can only conclude that the General Assembly intended not to add such)." *Scheilder v. Ohio Bur. of Workers' Comp.*, 2005-Ohio-105 at ¶ 19
[24] *Housh v. Peth* (1956), 165 Ohio St. 35
[25] Ohio Rev. Code § 2305.09 provides in part: "An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code. * * *"

humiliation" and then he goes onto write about how the juvenile defendants did not allege they saw the exhibits.

The concept of what damages may ultimately be proved is not the proper subject of and exceeds the scope of a motion to dismiss a civil complaint for the reasons set forth above.

Contrary to the defendant's limited assertions, there are four plaintiffs and the guardians of the minor plaintiffs saw the sexually explicit images causing them to suffer traditional emotional damages. The complaint also alleges that the juvenile plaintiffs will suffer such damages as they age and eventually learn of the defendant's misdeeds.[26]

To claim that the children have not been injured as a result of this conduct, whether they learn of the existence of the sexually explicit images or not, flies in the face of the recognized interests of and harm to real children that the Child Pornography Protection Act protects and which underlies the United States Supreme Court's reasoning in *Ashcroft v. Free Speech Coalition, supra at* [27]

However, it is not necessary for the juvenile plaintiffs to have suffered these traditional damages under the causes of action alleged in the complaint or that they saw the sexually explicit images. It is sufficient under 18 USC § 2252A (f) that they need only be a person "aggrieved" by conduct prohibited by 18 USC § 2252A to recover "appropriate relief" including injunctive relief, compensatory and punitive damages, costs and attorneys fees. Similar language is contained in 18 USC § 2255 which also creates a civil remedy for violations of 18 USC § 2252 and 2252A.

---

[26] Complaint at paragraphs 24, 28, 35, and 39

[27] "Section 2256(8)(C) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber. Respondents do not challenge this and we do not consider it." See f.n 16 above for the Court's concern for harm caused.

Ohio Rev. Code § 2741.07 also provides for actual damages, liquidated damages, profits, and punitive damages[28] regardless of whether the juvenile plaintiffs suffer emotional damages.

Finally, under Ohio law, the proving of an intentional tort under the common law and even nominal damages entitles a litigant to recover punitive damages, attorney's fees, and costs.

## VIII.   18 USC § 2256(8)(C) HAS BEEN HELD TO BE CONSTITUTIONAL

As discussed above *Ashcroft v. Free Speech Coalition, supra,* has no application to Section 2256(8)(C).[29] The United States Court of Appeals Eighth Circuit specifically upheld a conviction for "morphing" innocent images of real children into sexually explicit images under 18 USC § 2252A and child pornography as defined by 18 USC § 2256(8)(C) as constitutional in *United States v. Bach*, 400 F.3d 622(2005). The United States Supreme Court denied certiorari thereby affirming the reasoning and holding in *Bach*.[30] Therefore, the defendant's claim that the definitional section of 18 USC § 2256(8)(C) is unconstitutional has been specifically addressed and decided adversely to him.

Even if 18 USC § 2256(8)(C) were unconstitutional, Plaintiffs still can civilly recover under 18 USC § 2252A(f) and 18 USC § 2255 for a violation of 18 USC § 2252A(a) which is

---

[28] Ohio Rev. Code § 2741.07 provides:

(A)(1) A person who violates section 2741.02 of the Revised Code is liable in a civil action to the person injured by the violation for the following:

(a) Actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona for a commercial purpose as determined under division (A)(2) of this section;

(b) At the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars, as determined in the discretion of the trier of fact, taking into account the willfulness of the violation, the harm to the persona in question, and the ability of the defendant to pay a civil damage award;

(c) If applicable pursuant to section 2315.21 of the Revised Code, punitive or exemplary damages.

[29] See f.n. 27
[30] 546 U. S. 901, 126 S.Ct. 243 (2005)

neither premised upon nor uses the definition of child pornography contained in 18 USC § 2256(8)(C).

## IX.   OHIO REV. CODE CHAPTER 2741 IS APPLICABLE TO BOLAND'S CONDUCT

Defendant next wrongfully claims that since "Plaintiffs have not alleged that their "images… had commercial value", the complaint does not sustain a claim pursuant to Ohio Rev. Code § 2741.02[31] which prohibits the use of one's "persona" for commercial purposes. Ohio Rev. Code § 2741.01(A) defines persona as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." This claim is also beyond the scope of a motion to dismiss.

By using the defined term "persona" and alleging in the complaint[32] that the defendant "used an aspect of Jane Doe's and Jane Roe's "persona," as defined by Ohio Rev. Code § 2741.01 (A), for a commercial purpose, as defined by Ohio Rev. Code § 2741.01 (B) in violation of Ohio Rev. Code § 2741.02 (A)", Plaintiffs have in fact alleged that their "name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."

Additionally, the defendant had to pay for the use of these images when he downloaded them clearly proving they had "commercial value." Yet, he misappropriated them contrary to the agreement he entered into with this commercial modeling website.

---

[31]Ohio Rev. Code § 2741.02 reads in pertinent part:
(A) Except as otherwise provided in this section, a person shall not use any aspect of an individual's persona for a commercial purpose during the individual's lifetime or for a period of sixty years after the date of the individual's death.
[32] Paragraph 19 of the complaint

The exception set forth in Ohio Rev. Code § 2741.09(A)(4)[33] has no application to the facts of this case. Neither juvenile plaintiff's likeness was taken from a public appearance. The images were downloaded from a private internet modeling service and used in violation of the agreement Boland agreed to be bound by. Boland had to pay for the use of the images clearly proving they had "commercial value." The images taken were not available to the public in general, were not open to public, and were not the "persona of an individual solely in the individual's role as a member of the public."

Conclusion

Plaintiffs respectfully request that this Court deny the defendant's motion to dismiss for the reasons set forth above and to set this matter for further proceedings consistent with that denial so that Plaintiffs may have their day in court.

Respectfully submitted,

/s/ Jonathan E. Rosenbaum
JONATHAN E. ROSENBAUM
Supreme Court Reg. No. 0021698
Attorney for Plaintiffs
230 Third Street, Suite 104
Elyria, Ohio 44035
(440) 322-7972
fax (440) 322-7972
Email: jerosenbaum@alltel.net

---

[33] Ohio Rev. Code § 2741.09(A)(4) states:
(A) This chapter does not apply to any of the following:* * *
(4) The use of the persona of an individual solely in the individual's role as a member of the public if the individual is not named or otherwise singled out as an individual;

**<u>Proof of Service</u>**

A true and accurate copy of the foregoing has been electronically served this 30th day of

October, 2007 by the Court's electronic filing system.

/s/ Jonathan E. Rosenbaum

JONATHAN E. ROSENBAUM
Supreme Court Reg. No. 0021698
Attorney for Plaintiffs
