IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PETER LORA, et al

V.

DEAN BOLAND

1:07 CV 2787

JUDGE DAN AARON POLSTER

REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

Now comes Dean Boland and respectfully submits his reply to Plaintiff's Opposition to his

motion to dismiss and accompanying law and explanation.


/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

## Table of Contents

**TABLE OF AUTHORITIES**................................................................................................**II**

   I.    ISSUES RAISED IN PLAINTIFF'S OPPOSITION...................................................1

      A.   Publication ..........................................................................................................1

      B.   Court Ordered Conduct Subjecting Boland to Liability .......................................3

      C.   Principles of Comity...........................................................................................4

      D.   Pandora's Box .....................................................................................................5

      E.   Problems for Prosecutors ....................................................................................6

      F.   Claim of Inability to Deny Claims ......................................................................6

      G.   Bach Case Reference...........................................................................................7

      H.   Limits on Witness Immunity ..............................................................................8

      I.    Boland was an investigator .................................................................................8

      J.    Relevance of the Court Exhibits .........................................................................8

      K.   Source Images were Not Publicly Available .......................................................9

**CONCLUSION** ..................................................................................................................**9**

## TABLE OF AUTHORITIES

**Cases**

Deford v. Schmid Prod. Co., 120 F.R.D. 648, 650, 655 (D .Md.1987) ................................... 5

Flavorland Indus., Inc. v. United States, 591 F.2d 524, 525 (9th Cir.1979) ........................... 5

Mezibov v. Allen, 411 F.3d 712, C.A.6 (Ohio) 2005 ............................................................. 3

Ohio v. Sparks 2002-12-3669 ............................................................................................. 3

Puerto Rico Aqueduct and Sewer Auth. v. Clow Corp., 111 F .R.D. 65, 67-68 (D.P.R.1986) ............... 4

State v. Brady, 2007-Ohio-1779 ......................................................................................... 6

Tucker v. Ohtsu Tire & Rubber Co., Ltd., 191 F.R.D. 495, 499-500 (D.Md.2000).............................. 4

United States v. Bach, 400 F.3d 622 at 630-32 (8th Cir. 2005)............................................ 7

**Statutes**

18 U.S.C. 2252 ................................................................................................................. 1

18 U.S.C. 2256(8)(C) ....................................................................................................... 7

**I.      ISSUES RAISED IN PLAINTIFF'S OPPOSITION**

Plaintiffs allege Boland downloaded images depicting Jane Doe and Jane Roe.  No tort liability applies to that conduct.  (Dkt. #6 at 3).  They then allege the images were manipulated to make the minors appear to be engaged in prohibited conduct.  (Id).  No tort liability applies to that conduct under Ohio law or federal statute.  They then allege these court exhibits were "published" in courtrooms solely in Boland's capacity as an attorney or expert witness in various cases.  (Id).  It is the "publishing" conduct to which tort liability attaches, if at all.

A. Publication

The federal statute does not specify as to what type of harm is being compensated for in its provisions.  The section on civil liability offers no explanation and the legislative history of 18 U.S.C. 2252, along with federal and state case law, offer no insight.

The **criminal** conduct covered by 18 U.S.C. 2252, et seq. involves the creation, possession and distribution of images depicting the actual sexual abuse of minors.  Therefore, the civil remedies section must be interpreted to apply to harm arising from one or more of those acts.  i.e. creation, possession or distribution of images defined as contraband under 18 U.S.C. 2256(8).

Based on Plaintiff's allegations, the only potential harm being addressed by the civil remedies section of the federal statute in this case is psychological or perhaps to a person's reputation as in a defamation or invasion of privacy claim.  Either state statutes or Ohio state case law address any such claim.  Nonetheless, a prerequisite of plaintiff's recovery is a finding of "publication."  The First Amendment prohibits the punishment of persons for their thoughts.  It prohibits punishment of thoughts expressed in visual form.  Even though defamation and invasion of privacy are not protected by the First Amendment, the private, undisclosed creation of an image that does not involve the physical harm to any person is no defamatory or an invasion of privacy nor does it equate to any of the plaintiff's claims.  If plaintiffs are to recover at all, it can only be upon a theory that the "publication"

1

of such previously privately held expressions of an idea (i.e. that images can be manipulated to appear to be contraband when they are in fact not contraband) are actionable once "published" in a courtroom.

It is plain that Boland's creation and use of any court exhibits was solely to support testimony and/or argument that apparently real, **but not real** depictions of contraband images could be created. Defamation nor any claim related to it is possible given that plaintiffs are not alleging Boland communicated to anyone that the depictions in which plaintiffs were alleged portrayed were in face true and accurate depictions.  In fact, the court can review Exhibit 7 to the Motion to Dismiss and plainly see that Boland's testimony in the Oklahoma Federal Case, for example, made clear that the court exhibits **were not depictions of conduct that actually occurred** but were offered to demonstrate how images could be created to make such conduct appear to have occurred when it did not.  It is illogical to apply tort liability to words stating "this did not occur, but images could be manipulated to make it appear to occur."  There is no false fact being claimed in such words causing harm to any reputation.  Moreover, only portions of any image, including those alleged to be of plaintiff's, were used to create court exhibits.  Merely displaying an entire image, unaltered, of plaintiffs, as they allege, to a court is useless in demonstrating how apparently contraband images can be created by manipulating otherwise non-contraband images.  It is without question then that Plaintiffs' claims rest on harm caused by using **a portion** of their alleged image to make a court exhibit.

Plaintiffs do not allege their names were used to identify the images.  They do not allege Boland "published" the court exhibits outside the courtroom.  Plaintiffs were only even made aware that these images existed following the sequence of events laid out in the Motion to Dismiss which involved, exclusively, state and federal law enforcement.  That sequence began with Summit County Detective Stan Smith.  With Boland's assistance, counsel in Ohio v. Sparks 2002-12-3669 succeeded in excluding Smith as a digital imaging expert.  (Exhibit 2).  Following that, Boland was qualified as a digital imaging expert.  While Sparks was convicted of more serious charges, he was found not guilty

as to all digital imaging related counts after a trial to the judge without a jury.  Following that trial,

Smith removed sealed court exhibits from the court file and provided a copy of those exhibits to law

enforcement in Cleveland.  (See Exhibit 1 to Motion to Dismiss).  Plaintiffs do not allege that any

person in the world, besides themselves and the various law enforcement officials copying and

distributing the court exhibits, has ever seen the court exhibits.

No publication has occurred.  The 6th Circuit has held a courtroom is a non-public forum.

(Mezibov v. Allen, 411 F.3d 712, C.A.6 (Ohio) 2005).

B.  Court Ordered Conduct Subjecting Boland to Liability

Boland was specifically ordered, in one instance, to produce the very court exhibits subject to

this lawsuit, among others.  That same court deemed such exhibits, unfortunately, necessary to deal

with the technological issues of contraband image cases.

**[Boland] is here with some specific orders from the Court as set out in our April 12th, 2004, order, and one of the direct orders to this witness was to be prepared to address all of the issues in United States vs. Marchand. And clearly the preparation of these exhibits was done in response to that court order that he be prepared to address it…. (Exhibit 7 to Motion to Dismiss at pg 113).**

The court later re-iterated those orders and found the creation of the court exhibits **necessary** to

understanding and ruling upon issues in that case and essential to the ends of justice.

**[I]n order to develop such a fact record and to comply with the Court's order that such fact record be developed on Marchand and its progeny, it's necessary to create the very images that one might otherwise argue constitutes a statutory violation. So the Court so ordered that, we now have it.  (Id. at 145).**

The court also pointed out that Boland took all reasonable steps possible to avoid even the

psychological harm to any minor by randomly downloading images available publicly on the Internet

and not retaining any identifying information about them, if any existed, and not investigating whether

the images depicted actual minors or merely appeared to depict actual minors as such information was

irrelevant.

3

Permitting liability to attach to conduct Boland was ordered to perform as an expert witness injects chaos into the justice system.  What if this court orders the parties to produce a document or evidence in this case?  The parties have no ability to calculate whether compliance with that order, and this court's explicit finding that compliance is necessary for the case, can still subject them to liability in some other future forum.  The absolute judicial and witness immunity doctrines were developed and have been well protected over the years specifically to avoid this chaos and unfairness.

The plaintiffs claim "[n]o court would ever sanction the defense expert to manufacture more cocaine.  Yet, that is what the defendant has done."  (Dkt. #6 at 6).  While the analogy is inapt, the federal district court in Oklahoma **did sanction and order** the production of the very court exhibits that are the subject of this lawsuit.  (Exhibit 7 to Motion to Dismiss).

C.  Principles of Comity

Principles of comity help promote efficiency, consistency and respect for federal district court orders.  "Courts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity, courtesy, and where a federal court is asked to take such action with regard to a previously issued state court protective order, federalism."  (Tucker v. Ohtsu Tire & Rubber Co., Ltd., 191 F.R.D. 495, 499-500 (D.Md.2000).

The court in Oklahoma issued an order that was followed by Boland as noted in Exhibit 7 to the Motion to Dismiss.

The proper way for a third party to challenge the Oklahoma protective order is to move to intervene in the action in which it was issued, and principles of comity require a subsequent court to await a ruling by the court that issued the order.  (Puerto Rico Aqueduct and Sewer Auth. v. Clow Corp., 111 F .R.D. 65, 67-68 (D.P.R.1986).  Issues of comity and courtesy are involved where federal court is asked to modify or contradict an order issued earlier by a state court.  (Deford v. Schmid Prod.

4

<u>Co</u>., 120 F.R.D. 648, 650, 655 (D .Md.1987).   A corporation, which was served with federal grand jury subpoena seeking discovery which was part of discovery in prior state court action between private parties, was directed to petition state judge for modification of protective order so that judge might indicate whether it was his intention to shield the discovery material from the grand jury; court refused to "issue an order which would have the effect of contravening any purpose of [the state judge] in preserving the orderly process of private litigation ... pending before him." (<u>Flavorland Indus., Inc. v. United States</u>, 591 F.2d 524, 525 (9th Cir.1979).

The federal magistrate signing the search warrant did not adhere to principles of comity in regard to the federal court order in Oklahoma.  There is a good reason for the federal magistrate's failure in this regard.  The United States' affiant to Boland's search warrant *withheld from the magistrate* that Boland produced the allegedly illegal court exhibits in compliance with a federal district court judge's court order.  The district court in Oklahoma at a pre-trial hearing, following the execution of the search warrant, on October 31, 2005 suggested to the United States that the affidavit to Boland's warrant was "incomplete."  The United States agreed.  (Transcript of the October 31, 2005 hearing has been requested and will be provided upon receipt to this court).

   D.  <u>Pandora's Box</u>

Permitting this litigation to proceed places all attorneys, civil and criminal, into jeopardy for anything they say or do in a courtroom as well as exhibits they create and provide to their experts in all forms of cases.  Witnesses and attorneys complying with court orders must have some confidence that other courts will respect those orders.  In addition, they must have confidence that their very compliance with such orders, the defiance of which subjects them to civil and criminal penalties including imprisonment, will not later subject them to civil liability.  This Hobson's choice calls into question the work of lawyers and witnesses who would be constantly looking over their shoulder, so to

5

speak, and perhaps restricting their advocacy, research, investigation or testimony to avoid a speculative perception of potential future civil liability.

E. <u>Problems for Prosecutors</u>

In hundreds if not thousands of cases each year, state and federal prosecutors as well as defense counsel, handle, copy, distribute, make exhibits of and generally possess images depicting what appears to be minors engaged in prohibited conduct.  They do so in the performance of duties as officers of the court to enable the justice system to function.  Undoubtedly, some of those images depict the actual sexual abuse of actual minors, unlike the case here.  Undoubtedly, those minors are or would be uncomfortable, perhaps embarrassed, perhaps perceiving their reputations or privacy harmed, by the handling, copying, viewing, distributing and display in courtrooms of images of their horrific abuse.  Permitting this litigation to proceed necessarily approves of litigation by minors depicted in such images against attorneys, experts and others who copied, distributed to experts, manipulated in any way or displayed in a courtroom those images.  That net of potential civil liability would include prosecutors, their experts (especially in cases like <u>State v. Brady</u>, 2007-Ohio-1779 where state prosecutors sent such images to a private citizen in another state), defense attorneys, defense experts, pediatricians, FBI agents and the like.  The civil remedies section of the federal statute has no exception prohibiting litigation against any of these individuals just as the plaintiffs argue here that no exception exists for Boland's conduct in his capacity as expert witness and attorney.

F. <u>Claim of Inability to Deny Claims</u>

Plaintiffs argue in Dkt. #6 that "the defendant cannot deny the conduct alleged in the complaint without violating his pre-trial diversion agreement."  (Id. at 8).  This statement is false.  There are no filenames, names of persons nor any other descriptive content in the agreement between Boland and the government.  It is unknown and unknowable to Boland whether the plaintiffs and related John Doe

6

and Jane Roe are the same or different persons that the government is referring to in its list of John Doe 1-4 in that agreement.

    G.  <u>Bach Case Reference</u>

      The plaintiffs claim that <u>United States v. Bach</u>, 400 F.3d 622 at 630-32 (8th Cir. 2005) somehow supports this civil litigation is meritless.  <u>Bach</u> involved a child pornographic image onto which the face of another minor was superimposed.  The court in <u>Bach</u> reached its conclusion that 18 U.S.C. 2256(8)(C) applied because the underlying image was itself illegal.  It did not reach the issue of whether the alteration of an otherwise legal image to appear to be contraband was an appropriate application of 18 U.S.C. 2256(8)(C).

      The <u>Bach</u> court specifically distinguished the facts of its case from the facts in this case.

**Unlike the virtual pornography protected by the Supreme Court in Free Speech Coalition, the picture with AC's face implicates the interests of a real child and does record a crime. The picture depicts a young nude boy who is grinning and sitting in a tree in a lascivious pose with a full erection, his legs spread, and his pelvis tilted upward. The jury could find from looking at the picture that it is an image of an identifiable minor, and that the interests of a real child were implicated by being posed in such a way. <u>This is not the typical morphing case in which an innocent picture of a child has been altered to appear that the child is engaging in sexually explicit conduct, for the lasciviously posed body is that of a child.</u> See S.Rep. No. 108-002, at n.2 (2003).** (<u>Bach</u> at 632).  (Emphasis added).

      The <u>Bach</u> court also recognized that "there may well be instances in which the application of § 2256(8)(C) violates the First Amendment…"  (Id).  The application of 2256(8)(C) to the creation of court exhibits is precisely the type of First Amendment violation to which <u>Bach</u> refers.

      Plaintiffs conclude their <u>Bach</u> reliance by stating that "[t]he United States Supreme Court denied certiorari thereby affirming the reasoning and holding in <u>Bach</u>."  (Dkt. #6 at 22).  The U.S. Supreme Court disagrees that denial of certiorari equals affirming.  "The denial of a petition for a writ of certiorari signifies only that the Court has chosen not to accept the case for review and does not express the Court's view of the merits of the case."  (Exhibit 1 at 1).

7

H.  Limits on Witness Immunity

Plaintiffs argue, without citation to case law, "[w]itness immunity extends only to the actions/testimony of witnesses that occur in the courtroom."  (Dkt. #6 at 13).  While for spoken words this claim may or may not be true, plaintiffs argue it applies to the creation of court exhibits.  As noted above, no civil liability can attach to the conduct Boland performed outside of the courtroom, i.e. the creation of court exhibits in his office.  There can be no harm for the creation of the court exhibits.  It is the alleged "publication" in the courtroom that harmed plaintiffs, if at all.  Plaintiffs are not and cannot allege harm arising from the mere creation of the court exhibits in Boland's office.  Such a finding punishes thought.  Even if case law supported the claim that witness immunity does not extend outside the courtroom, the conduct alleged to have occurred outside the courtroom in this case is not actionable.

I.  Boland was an investigator

"In this case, the defendant was not acting as an attorney or advocate but an investigating expert or forensic examiner.  He fabricated evidence using the innocent images of the juvenile plaintiffs."  (Dkt. # 6 at 15).  The creation of the court exhibits was supplemental to Boland's testimony.  It involved no investigation or forensic examination.  It merely involved the same conduct as any other expert witness discussing evidence contained in images such as crime scenes, victim injuries, property damage and the like.  There is no allegation in the complaint that Boland fabricated (as in represented falsely) any evidence.  Plaintiffs' case law relating to liability for fabricated testimony is inapplicable.

J.  Relevance of the Court Exhibits

Every case in which Boland testified resulted in the court exhibits being admitted as relevant. The federal court in Oklahoma went further by ordering the court exhibits be produced and finding them necessary as noted above.  Plaintiffs' argument that the court exhibits were not material or relevant is meritless.

8

K.  <u>Source Images were Not Publicly Available</u>

Plaintiffs claim that images used, in part, as portions of court exhibits were not publicly

available is false.  Plaintiffs alleged their images were obtained from the website

www.istockphoto.com.  The site permits free accounts and copies of images can be downloaded free as

this image was on November 9, 2007.



Any member of the public can download the same image free by entering this address in their

web browser.

http://www.istockphoto.com/file_closeup/who/facial_expressions/happiness/3481984_confident_constr
uction_man.php?id=3481984.

Plaintiffs do not allege in the complaint their images were only available from a private

"Internet modeling service."  They do not allege Boland had a membership to an "Internet modeling

service" and with good reason – he did not.

<u>CONCLUSION</u>

It is respectfully requested this court issue findings of fact and conclusions of law in support of

the dismissal of the complaint.

/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

CERTIFICATE OF SERVICE

A copy of the foregoing has been served on all parties by operation of the court's electronic

filing system.

/s/ Dean Boland
Dean Boland (0065693)