IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
|  | 1:07 CV 2787 |
| PETER LORA, Victoria Bloom, et al | JUDGE DAN AARON POLSTER |
| V. | MOTION TO STRIKE EXHIBIT 1 TO PLAINTIFF'S COMPLAINT |
| DEAN BOLAND | FINDINGS OF FACT AND CONCLUSIONS OF LAW REQUESTED |

Now comes Dean Boland and respectfully requests this court enter an order striking Exhibit 1 to Plaintiff's complaint for the reasons contained in the attached brief.

/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

PROCEDURAL AND FACTUAL HISTORY

In April 2007, Defendant signed a deferred prosecution agreement that was attached to the complaint in this matter as Exhibit 1.  (See Complaint).  Plaintiffs have alleged in their complaint and various other filings in this case that Defendant's deferred prosecution agreement is relevant to this matter.  The argued relevance of the agreement is that it involves, amongst its four items, two images depicting the two minor plaintiffs in this matter.  In addition, as the plaintiffs have argued and this court adopted in its initial denial of Defendant's motion to dismiss, the agreement contains "admissions" that creating and possessing the four items are violations of the federal child pornography statute.

On May 13, 2008, Defendant visited the Cleveland FBI office in compliance with this court's order.  An FBI agent showed Defendant two images.  It is presumed that plaintiffs' counsel had communicated with the agent to show Defendant what plaintiffs are claiming are one image each of the two minor plaintiffs in this matter.

The gist of plaintiffs' complaint is that Defendant "displayed or presented", as a court exhibit, an image (or images) of the two minor plaintiffs engaged in apparent prohibited conduct in court.  They have particularly stated the complaint is not alleging liability for the mere possession of said exhibits.  "Plaintiffs counter that they are not seeking damages for Boland's conduct in possessing pornographic pictures which were provided to him by the prosecution in the other cases, which may be protected by various asserted immunities." (Dkt. 8 at 3).

1

Plaintiffs attached the Deferred Prosecution Agreement to their complaint claiming its relevance to their claims. In several of the pre-trial conferences the court has interchangeably referred to the agreement by its name, as a "plea agreement", as a "guilty plea" or as an "admission of guilt."

Now that the non-pornographic images of the two minor plaintiffs have been displayed/presented by the FBI to Defendant, it is clear that plaintiffs' claim of a connection between the Deferred Prosecution Agreement and their claims is inaccurate. No image involving the two minor plaintiffs was part of the four images listed by the government in the Deferred Prosecution Agreement. This is further obvious in that the offense referenced in the first paragraph of the Deferred Prosecution Agreement is that of **possession** of the four listed items. Finally, the United States Attorney's office was present at a prior pre-trial conference in this matter. At that pre-trial, the matter of viewing the non-pornographic images of the two minor plaintiffs was discussed. The Deferred Prosecution Agreement prohibits the use or suggestion of use, in any way, by Defendant of any of the four items referenced in the Deferred Prosecution Agreement. The government at that pre-trial conference stated that Defendant's viewing of the images of the minor plaintiffs would not violate his Deferred Prosecution Agreement.

Plaintiffs' counsel claimed at the July 10, 2008 pre-trial conference that he had various FBI and United States' Attorney's office witnesses lined up to testify that the four items referenced in the Deferred Prosecution Agreement do, in fact, include the two minor plaintiffs.

The court responded, "perhaps that is an issue for the jury to decide, not the court." In addition to being a collateral matter in this litigation, the determination whether the Deferred Prosecution Agreement's terms did or did not describe the two minor plaintiffs, is a legal matter, the interpretation of a term of the agreement. The government, however, is not a party to this litigation.

The government drafted the Deferred Prosecution Agreement in this matter. The agreement required Defendant to waive fundamental constitutional rights to a speedy trial as well as others.

The construction of a plea agreement "presents a question of law which this court reviews de novo." (United States v. Fitch, 282 F.3d 364, 366 (6th Cir.2002) (citing Lancaster Glass Corp. v. Philips ECG, Inc., 835 F.2d 652, 658 (6th Cir.1987)). Plea agreements are contractual in nature, and as such, courts are guided by general principles of contract interpretation when construing plea agreements. (See United States v. Mandell, 905 F.2d 970, 973 (6th Cir.1990)). Plea agreements are to be enforced according to their terms. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Because a defendant obtains a plea agreement only at the expense of his constitutional rights, "prosecutors are held to meticulous standards of performance." (United States v. Vaval, 404 F.3d 144, 152-53 (2d Cir.2005)). "Satisfying this obligation requires more than lip service on a prosecutor's part. The

3

Santobello rule 'proscribes not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'" (United States v. Saxena, 229 F.3d 1, 6 (1st Cir.2000) (brackets removed) (quoting United States v. Voccola, 600 F.Supp. 1534, 1537 (D.R.I.1985)). The Court will thus construe "[a]mbiguities in a plea agreement ... against the government." (Fitch, 282 F.3d at 367 (citing United States v. Randolph, 230 F.3d 243, 248 (6th Cir.2000)).

The Deferred Prosecution Agreement was drafted by the government. As the court will note, the Deferred Prosecution Agreement, Factual Statement and Public Statement all refer exclusively to the "four images" listed and described in words used by the government in that agreement. ("Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4", Deferred Prosecution Agreement at 1; "accept[ing] responsibility for...behavior...in the Statement of Facts"; Id. at 2; "used **the images**...as a witness and/or defense attorney", (Emphasis added). Id. at 2; "You certify that you have destroyed...all visual depictions...depicting Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4….", Id. at 5; "You...will not access...all visual depictions...depicting Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4….", Id.; "Boland downloaded at least four (4) images…depicting four (4)...minors….", Statement of Facts at 1; "Such visual depictions were created...to appear that each of the four (4)…." Id. at 1; "downloaded images...depicting four minors…." Public Statement at 1; "There was nothing about **these images** to suggest that they were not real identifiable children…." Id. (Emphasis added).; "I then digitally manipulated

4

such images…." Id.; "Such visual depictions were created…to appear that each of the four…was engaged in sexually explicit conduct…." (Id).

There are no descriptions, filenames, ages, names, identities, states of residence, etc. regarding the four items. Defendant and the government were the only two parties to the Deferred Prosecution Agreement. Plaintiffs' counsel and plaintiffs were in no way involved in the drafting or execution of that agreement. At no time during the discussions about the agreement did the government provide any descriptions, filenames, ages, names, identities, states of residence or any other information about the four Does referred to in the agreement. In short, the only information about the four items that were contemplated by the agreement is Defendant's knowledge at the time of the signing of the agreement and the descriptions therein.

Plaintiffs' counsel, not a party to the drafting or execution of the agreement, claims that the four items, as described, do include the two minor plaintiffs. Defendant, a party to the drafting and execution of the agreement, knows that the two minor plaintiffs are not among the four items referenced in the agreement. Defendant knows that none of the four items he was agreeing to in the agreement included any part of the non-pornographic images of the two minor plaintiffs he was shown at the FBI offices in compliance with this court's order.

Even presuming that somehow in this matter, the government enters an appearance or has witnesses testify as to the government's intent in its listing of four Does, at best, that confirms the ambiguity in the Deferred Prosecution Agreement. The

5

agreement itself refers to four separate items, yet this matter only involves two minor plaintiffs.

With an ambiguity being obvious, the above case law directs that any such ambiguity is not litigated in an unrelated civil matter. In fact, it is not litigated at all. The Court must construe the obvious ambiguity "against the government." (Fitch, 282 F. 3d at 367 (citing United States v. Randolph, 230 F.3d 243, 248 (6th Cir.2000)).

In light of present case law, Defendant respectfully requests this court enter an order striking Exhibit 1 from the complaint.

/s/ Dean Boland
Dean Boland (0065693)
18123 Sloane Avenue
Lakewood, Ohio 44107
216.529.9371 phone
866.455.1267 fax
dean@deanboland.com

CERTIFICATE OF SERVICE

A copy of the foregoing has been served on all parties by operation of the court's electronic filing system.

/s/ Dean Boland
Dean Boland (0065693)