**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| JANE DOE *et al.,* ) | CASE NO. 1:07cv2787 |
| ) | |
| ) | |
| ) | |
| ) | JUDGE  DAN A. POLSTER |
| ) | |
| ) | |
| ) | |
| *Plaintiffs* ) | **Plaintiffs' Memorandum In** |
| ) | **Opposition to Defendant's Motion for** |
| ) | **Summary Judgment** |
| ) | |
| vs. ) | |
| ) | |
| DEAN BOLAND ) | |
| ) | |
| *Defendant* ) | |

Now come the plaintiffs, in opposition to defendant's Motion for Summary judgment,

and state that Defendant's Motion for Summary Judgment is not well taken for the following

reasons:

CLAIMS UNDER 18 USC § 2255 SHOULD NOT BE DISMISSED

Defendant first claims that only minors are permitted to seek recovery under 18 USC §2255 while citing an older version of the statue.[1] He argues that all claims by the adult plaintiffs under this section should be dismissed. A careful reading of the complaint will reveal that only the minor plaintiffs set forth claims pursuant to 18 USC §2255 and 2252A(f).

Defendant next erroneously argues that 18 USC §2255 only "permits a minor who suffers personal injury" to recover "the actual damages such minor sustains" and that plaintiffs have stipulated that they "have never suffered and personal injury or damages resulting from conduct alleged in the complaint."[2]

Plaintiffs have entered a stipulation.[3] The plaintiffs have also stipulated that "The minor plaintiffs do not know about the pictures that are the subject of this case and have suffered no present psychological harm."[4] At no time have the plaintiffs ever stipulated that the minor plaintiffs have "have never suffered and personal injury or damages resulting from conduct alleged in the complaint." Plaintiffs have stipulated only that the minor plaintiffs have been

---

[1] The applicable version of 18 USC § 2255 reads as follows:

Civil remedy for personal injuries

(a) In General. - Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

[2] Defendant's memorandum at 5

[3] Document 72 states "1. The minor plaintiffs have no knowledge at this point of being aggrieved in any way, including, but not limited to psychologically, physically, financially, or via damage to their reputation as a result of any conduct of defendant as alleged in the complaint. 2. This stipulation explicitly does not pertain to potential future harm the plaintiffs may suffer as a result of the conduct of the defendant as alleged in the complaint."

[4] Document 65

shielded from the knowledge of the defendant's misconduct. The minor plaintiffs have suffered personal injury and damages.

Pursuant to 18 USC § 2255, Plaintiffs Jane Doe and Jane Roe are entitled to civil relief as specifically set forth therein including actual damages deemed to not be less than $150,000.00, costs, and attorney's fees because they are minors who are victims of a violation of 18 USC § 2252A and who suffered personal injury as a matter of law.

On April 5, 2007, the Defendant in this case, Dean M. Boland, entered into a pre-trial diversion agreement with the United States of America.[5] The Defendant has admitted in his discovery responses that the factual statements contained in the pre-trial diversion agreement are in fact true.[6]

In the pre-trial diversion agreement, Boland has accepted responsibility for and stipulated to downloading the images of "four real, identifiable minors in innocent poses from the internet."[7] The Defendant has accepted responsibility for, stipulated to, and admitted that he "digitally manipulated such images and combined them with other images to create a series of visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors was engaged in sexually explicit conduct."[8]

The Defendant has admitted this conduct in his discovery responses as well.

In his response to Request for Admission No. 2, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "A") of Plaintiff Jane Doe that

---

[5] This agreement is attached hereto as Exhibit "1"
[6] Boland Response to Request for Admission No. 1; Boland discovery responses are attached as Exhibit "2"
[7] See Annex A to Exhibit "1" at paragraph no. 1
[8] See Annex A to Exhibit "1" at paragraph no. 2

[he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[9]

In his response to Request for Admission No. 3, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "B") of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[10]

In his response to Request for Admission No. 4, the Defendant admitted that he "created a visual depiction using a likeness of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be naked and between two males who are ejaculating on her torso."[11]

Since the Defendant has admitted to violating 18 USC § 2252(A) (a) (5)(B) in his pre-trial diversion agreement and admitted to committing actions which violate 18 USC § 2252A (a) and (b) in his discovery responses, then plaintiffs are entitled to summary judgment on the issue of liability on the Second and Sixth Causes of Action because there is no legitimate question of fact. Additionally, the damages are deemed to be at least $150,000.00, costs of the suit, and reasonable attorney's fees by this statute. Attorney's fess, costs and expenses total $23,631.86.[12]

Although it has been stipulated that neither minor plaintiff is aware that their likeness has been used by the Defendant to create a sexually explicit image, they are still entitled to the liquidated damages as a matter of law. The statute itself provides that the damages need not occur while the victims are minors thereby recognizing future injury which is addressable now. This is a result of the fact that it is well recognized and generally accepted that just the creation

---

[9] Exhibit "2" at Request for Admission No. 2
[10] Exhibit "2" at Request for Admission No. 3
[11] Exhibit "2" at Request for Admission No. 4
[12] Exhibit "5"

of such images is damaging to the child, is punishable, and will lead to future damages. Every time the image is/was displayed, regardless of the purpose of the showing, the child is/was victimized whether the child is aware of the display or not. It is not an element of the cause of action or the criminal prohibitions that the minor be aware of the image or its display. The conduct to be deterred and punished is purely that of the Defendant in creating and/or possessing the images. The Eighth Circuit has addressed these concerns when it opined:

> Section 2256(8)(C), the definition applied in Bach's prosecution for receiving the image with AC's face, covers any visual depiction that "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." **The definition in subsection (C) was intended by Congress to prevent harm to minors resulting from the use of "identifiable images ... in pornographic depictions, even where the identifiable minor is not directly involved in sexually explicit activities."** S. Rep. 104-358, at 8 (1996). In contrast to the definitions of child pornography in subsections (B) and (D), the definition in subsection (C) targets harm to an identifiable minor.
>
> In *New York v. Ferber*, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children. The distribution of child pornography is "intrinsically related" to the sexual abuse of children because it creates a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation," and the production of pornography requiring the sexual exploitation of children cannot be "effectively controlled" unless that network is closed. *Id.* at 759, 102 S.Ct. 3348. In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389.
>
>        \*     \*     \*
>
> Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of

AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation. In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.

Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*.

*United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005) *cert denied* 546 U.S. 901, 126 U.S. 243 (2005) [Emphasis added]. The Court in Ferber stated the "the harm to the child is exacerbated by [its] circulation." *Ferber,* at 759, 102 S.Ct. 3348. The harm is exacerbated by the circulation not created. The harm exists as a result of the creation of the image.

The Eighth Circuit upheld the criminal conviction of Bach because he "morphed" the innocent image of an identifiable child into "a lascivious pose" thereby creating "an identifiable child victim of sexual exploitation" just as the Defendant has done in this case. The "government's compelling interest in protecting a minor's physical and psychological well being" applies equally to all minor victims of sexual exploitation whether they are aware of the existence of the image or not. Indeed, Bach unsuccessfully relied upon the argument that the government never proved the sexually explicit image incorporating "AC's" face was that of a real and identifiable minor. The Eighth Circuit found that the crime occurred once the morphed

image was created using the face of a real and identifiable minor. There is no indication in the opinion that "AC" knew that his likeness had been used, yet the conviction was upheld as constitutionally firm. The "emotional well being" of the two minor plaintiffs in this case is threatened as a result of the creation of the images and the "interests of real children are implicated" justifying application of the civil remedy set forth in 18 USC § 2255 for criminal conduct.

It is illogical to conclude that "the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children" and that Congress only desired to protect/compensate those children who know they were sexually exploited. Indeed, the greatest protection/prevention would be to deter/punish the exploitation before the children were psychologically injured by knowledge of the exploitation. It would defeat the congressional intent behind the statute if the minor victims had to be informed of the defendant's transgressions and actually suffer psychological injury before they could be compensated. The defendant should not reap the benefits of efforts to minimize the psychological harm he has caused just because they have largely been successful to date.

If the criminal prohibitions of the United States Code apply in "morphing" situations, whether or not the victims are aware of the morphing, then so must the civil remedies applicable to the same misconduct. It is respectfully suggested to this Court that the "deemed" damages clause of 18 USC § 2255 is proof that Congress intended to punish offenders/compensate minor victims regardless of whether the victims were aware of being sexually exploited or if the personal injury occurred while they were minors. It is strict liability.

7

The legislative history supports the proposition that injury to reputation or property damage is included in the term "personal injury" as utilized by Congress in 18 USC § 2255. Section 4 Civil Remedies of the Congressional Record pertaining to The Pornography Victims Protection Act[13] states that "any victim of a violation of ss2251 or 2252 who suffers physical injury, emotional distress, or property damage as a result of such violation may sue to recover damages in any appropriate district court * * * and shall recover triple damages if a violation is found." Injury to property or reputation is therefore deemed to have occurred once the criminal statutes are violated and is valued at a minimum of $150,000.

A minor child whose likeness is morphed into child pornography has had his or her reputation injured and suffered damages. The damage is done once the sexually explicit image is created. The damage can only increase from that point on. One's facial likeness is one's property and once it is linked to pornography one's property and reputation is damaged whether one is aware of it or not and regardless of if any one knows who it is. Clearly, the adult plaintiffs, court personnel form all of the courts the defendant testified in, FBI agents and clerks, law enforcement officials involved in the cases the defendant used these images in, defense counsel in all cases the defendant used these images in, criminal defendants in all cases the defendant used these images in, representatives of Istockphoto.com, and employees of the United States Attorney's Office and various prosecutor's offices all know of or have seen the images and that the minor plaintiffs' likenesses now appear in child pornography. The list can only grow from there. Therefore, damage has occurred.

Despite defendants' claims to the contrary, it is "axiomatic" that the minor plaintiffs have suffered damage and it is deemed to be at least $150,000.00 in amount which is recoverable under 18 USC §2255.

---

[13] Attached as Exhibit "4" in its entirety

## CLAIMS UNDER 18 USC § 2252A(f)

Defendant attempts to avoid liability under 18 USC 2252A(f) by stating "Again, as a result of the stipulation and the adult plaintiffs testimony, the minor plaintiffs have suffered no injury, Therefore, the minor plaintiffs are not entitled to damages no matter the determination of defendant's conduct."[14]

Based upon the law and the reasons set forth above, the minor plaintiffs have been injured. Minor Plaintiffs Jane Doe and Jane Roe are entitled to civil relief, as set forth in 18 USC § 2252A (f) (2),[15] including injunctive relief, compensatory and punitive damages, costs, and reasonable expert and attorney's fees because they are a person aggrieved by reason of the conduct prohibited under 18 USC § 2252A (a) or (b). Since the Defendant has admitted to and accepted responsibility for violating 18 USC § 2252A (a) (5)(B) in his pre-trial diversion agreement and admitted committing actions which violate 18 USC § 2252A (a) and (b) in his discovery responses, then Plaintiffs are entitled to summary judgment on the issue of liability, for injunctive relief, punitive damages, costs, and reasonable expert and attorney's fees on the First

---

[14] Defendant's memorandum at 7

[15] 18 USC § 2252A (f) (2) states:

  "f) Civil Remedies. -   (1) In general. - Any person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for the relief set forth in paragraph (2).

   (2) Relief. - In any action commenced in accordance with paragraph (1), the court may award appropriate relief, including –

   (A) temporary, preliminary, or permanent injunctive relief;

   (B) compensatory and punitive damages; and

   (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses.

and Fifth Causes of Action. There are no legitimate question of fact and defendant can not offer "evidence on which the jury could reasonably find for" him.

### THE CLAIM THAT THE DEFERRED PROSECUTION AGREEMENT ONLY INVOLVES CONDUCT UNDER 18 USC 2252A(a) (5)(B) IS IRRELEVANT AND UNTRUE

In this section of his memorandum, the defendant argues that the deferred prosecution agreement that he entered into was drafted by the government and should be construed against the government. The relevance of this is unknown to the plaintiffs. The government is not a party to this action so that this Court could construe the agreement against it. Obviously, there is no evidence in the record that can be considered pursuant to F.R.C.P. 56(e) to support the factual allegation that the government drafted his deferred prosecution agreement.

Plaintiffs are not limited in maintaining their summary judgment burdens only to what the defendant has admitted to or "accepted responsibility for" in his deferred prosecution agreement. There is other discovery in this case and the search warrant affidavit is properly before this court for consideration. Although the deferred prosecution agreement only mentions the crime of possession (18 USC § 2252A(a)(5)(B)) the statement of fact and the wording of the agreement itself detail conduct that violates other federal child pornography statutes. So do the defendant's discovery responses.

On April 5, 2007, the Defendant in this case, Dean M. Boland, entered into a pre-trial diversion agreement with the United States of America.[16] The Defendant has admitted in his discovery responses that the factual statements contained in the pre-trial diversion agreement are in fact true.[17] Therefore, he can not be heard to deny them or limit them now. The matters are admitted. It does not matter who drafted the agreement. Defendant should not be heard to

---

[16] This agreement is attached hereto as Exhibit "1"
[17] Boland Response to Request for Admission No. 1; Boland discovery responses are attached as Exhibit "2"

attempt to minimize the effect of the truth because he finally owned up to it when faced with violation of his deferred prosecution agreement.

In the pre-trial diversion agreement Boland has accepted responsibility for and stipulated to downloading the images of "four real, identifiable minors in innocent poses from the internet."[18] The Defendant has accepted responsibility for, stipulated to, and admitted that he "digitally manipulated such images and combined them with other images to create a series of visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors was engaged in sexually explicit conduct."[19] Therefore he has admitted to more than possessing the sexually explicit images.

The Defendant has admitted this conduct in his discovery responses as well.

In his response to Request for Admission No. 2, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "A") of Plaintiff Jane Doe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[20]

In his response to Request for Admission No. 3, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "B") of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[21]

In his response to Request for Admission No. 4, the Defendant admitted that he "created a visual depiction using a likeness of Plaintiff Jane Roe that [he] downloaded from

---

[18] See Annex A to Exhibit "1" at paragraph no. 1
[19] See Annex A to Exhibit "1" at paragraph no. 2
[20] Exhibit "2" at Request for Admission No. 2
[21] Exhibit "2" at Request for Admission No. 3

Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be naked and between two males who are ejaculating on her torso."[22]

Between March of 2004 and January of 2005, the Defendant transported such visual depictions to and/or displayed such visual depictions in courts in Summit, Columbiana, Hamilton, and Warren Counties, in the State of Ohio, as well as in the U.S. District Court in Tulsa Oklahoma.[23] The Defendant has also admitted that he "gave CD(s) containing exhibits which were made by utilizing the image(s) or depiction(s) of Jane Doe and /or Jane Roe to defense counsel and/or court personnel."[24]

The Defendant's conduct was the subject of an investigation by the FBI. A summary of this investigation is set forth in the affidavit which supported the search warrant executed at the Defendant's home and place of business. This affidavit[25] is incorporated herein as if fully rewritten[26] and supports the allegations of the complaint rendering them undeniable.

The Defendant's admitted conduct violated the criminal prohibitions of 18 USC 2252(A)(a) and (b) and 18 USC 2252. Defendant is therefore liable for all of his admitted conduct not just the specific statutory violation acknowledged in his diversion agreement.

DEFENDANT'S CONDUCT DID VIOLATE THE LAW

Minor Plaintiffs are not limited to recovery only if they establish the defendant has engaged in conduct which violates 18 USC § 2252A. Minor Plaintiffs Jane Doe and Jane Roe are

---

[22] Exhibit "2" at Request for Admission No. 4
[23] See Annex A to Exhibit "1" at paragraph No. 3; Exhibit "2" at Response to Interrogatories Nos. 1 and 5
[24] Exhibit "2" at Request for Admission No. 5
[25] Original on file with the Clerk of Courts for the Northern District of Ohio
[26] Exhibit "3"

entitled to civil relief, as set forth in 18 USC § 2252A (f) (2)[27] and 18 USC § 2255,[28] including injunctive relief, liquidated damages, compensatory and punitive damages, costs, and reasonable expert and attorney's fees because they are persons aggrieved by reason of the conduct prohibited under 18 USC § 2252A (a) or (b) and 18 USC § 2252. Since the Defendant has specifically admitted to violating 18 USC § 2252(A) (a) (5)(B) and factually admitted to violating USC § 2252A (a) and (b) and 18 USC § 2252 in his pre-trial diversion agreement, and admitted committing actions which violate 18 USC § 2252A (a) and (b) and 18 USC §2252 in his discovery responses, then minor plaintiffs are entitled to summary judgment on the issue of liability and for injunctive relief, liquidated damages, punitive damages, costs, and reasonable expert and attorney's fees on the First and Fifth Causes of Action because there are no legitimate

---

[27] 18 USC § 2252A (f) (2) states:

 "f) Civil Remedies. -   (1) In general. - Any person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for the relief set forth in paragraph (2).

   (2) Relief. - In any action commenced in accordance with paragraph (1), the court may award appropriate relief, including –

   (A) temporary, preliminary, or permanent injunctive relief;

   (B) compensatory and punitive damages; and

   (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses.

[28] 18 USC § 2255. states:

Civil remedy for personal injuries

   (a) In General. - Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

questions of fact. Defendant can not offer "evidence on which the jury could reasonably find for" him.

Additionally pursuant to 18 USC § 2255, Plaintiffs Jane Doe and Jane Roe are entitled to civil relief as specifically set forth therein including actual damages deemed to not be less than $150,000.00, costs, and attorney's fees because they are minors who are victims of a violation of 18 USC § 2252A and 2252 and who suffered personal injury. Attorney's fess, costs and expenses total$23,631.86.[29]

To escape this certain liability, the defendant again argues that there is no harm to the minor plaintiffs if the minor plaintiffs don't know about the sexually explicit images that exist using their likenesses. For the reasons set for above this just is not true. Defendant appears to be extending this argument to now claim that had authorities not found him out and reported his conduct to the adult plaintiff guardians of the minor plaintiffs that no one would have suffered any harm.[30] Such an argument defies logic and common sense. All people have a right to enjoy their privacy and not have there likenesses morphed into pornography. Their privacy interests in their own likeness protect them from such misconduct even if the victims are unaware that their likeness has been misappropriated.

The First Amendment does not protect what the defendant did in this case. The defendant relies on *New York v. Ferber,* 458 U.S. 747, 102 S. Ct. 3348 (1982) and *Ashcroft v. Free Speech Coalition,* 535 U. S. 234, 122 S. Ct. 1389 (2002). Neither of these cases provides First Amendment protection to persons who alter innocent pictures of real minors so that the children appear to be engaged in sexual activity as it is alleged the defendant did in the complaint.

---

[29] Attested to Bill For Attorney's Fees, Costs, and Expenses attached as Exhibit "5"
[30] Defendant's Memorandum at 12

The United States Court of Appeals Eighth Circuit dealt with this issue on facts that are remarkably similar to, if not identical with, those alleged in the complaint of this case:

Section 2252A was enacted as part of the CPPA to target any person who "knowingly receives or distributes ... any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(A). In *Free Speech Coalition*, the Supreme Court declared that the CPPA definitions of child pornography in § 2256(8)(B) and (D) were unconstitutional. These definitions were held to be overly broad and to prohibit speech protected by the First Amendment. Bach contends that § 2256(8)(C), the definition of child pornography at issue in his conviction under § 2252A(a)(2), is similarly unconstitutional.

The definition sections found infirm in *Free Speech Coalition* were broad enough to include apparent or suggested sexual conduct of a minor. Section 2256(8)(B) applied to any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," and § 2256(8)(D) covered the depiction of sexually explicit conduct "advertised, promoted, presented, described, or distributed" in a manner to suggest that the material shows a minor engaging in such conduct. Before the CPPA was enacted with its new definitions, child pornography had been defined simply as any visual depiction produced by using a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252, and that definition was retained in § 2256(8)(A) of the new legislation.

Section 2256(8)(C), the definition applied in Bach's prosecution for receiving the image with AC's face, covers any visual depiction that "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." The definition in subsection (C) was intended by Congress to prevent harm to minors resulting from the use of "identifiable images ... in pornographic depictions, even where the identifiable minor is not directly involved in sexually explicit activities." S. Rep. 104-358, at 8 (1996). In contrast to the definitions of child pornography in subsections (B) and (D), the definition in subsection (C) targets harm to an identifiable minor.

In *New York v. Ferber*, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children. The distribution of child pornography is "intrinsically

15

related" to the sexual abuse of children because it creates a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation," and the production of pornography requiring the sexual exploitation of children cannot be "effectively controlled" unless that network is closed. *Id.* at 759, 102 S.Ct. 3348. In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389.

*Free Speech Coalition* noted that the definition of child pornography in § 2256(8)(B) "covers materials beyond the categories" "recognized in its earlier decisions in *Ferber* and *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)." 535 U.S. at 256, 122 S.Ct. 1389. As examples, it suggested that § 2256(8)(B) could potentially be applied to Hollywood movies filmed without any child actors, a Renaissance painting depicting a scene from classic mythology, and a computer generated image if the image "appears to be" a minor engaging in sexually explicit conduct. *Id.* at 241, 122 S.Ct. 1389. The Court stated that such images would not harm or involve any actual children in the production process. *Id.* Unlike the speech in *Ferber* which was itself "the record of sexual abuse," some speech covered by subsection (B) would record no crime and create no victims by its production since the virtual pornography covered under the section would not be " 'intrinsically related' to the sexual abuse of children." *Id.* at 250, 122 S.Ct. 1389. Subsection (B) went beyond the concerns in *Ferber* by prohibiting images that do not "depict an actual child," *id.* at 239, 122 S.Ct. 1389, and the definition could therefore not withstand facial attack under the First Amendment. *Id.* at 256, 122 S.Ct. 1389. The Court held that § 2256(8)(D) was also similarly overbroad because sexually explicit materials advertised as child pornography could be prohibited under it, even if no children were actually pictured. *Id.* at 257-58, 122 S.Ct. 1389.

Because the definitions in subsections (B) and (D) could be applied to situations where no actual child could be harmed by the production or distribution of the image, the Court struck them down in the declaratory judgment action in *Free Speech Coalition*. Not only did the Supreme Court not extend its analysis to the definition in § 2256(8)(C), it explicitly stated that it was not addressing the constitutionality of subsection (C). It differentiated the definition in (C), noting that it prohibits a more common and lower tech means of creating visual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of

16

virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber.

*Id.* at 242, 122 S.Ct. 1389.

Unlike the virtual pornography protected by the Supreme Court in *Free Speech Coalition*, the picture with AC's face implicates the interests of a real child and does record a crime. The picture depicts a young nude boy who is grinning and sitting in a tree in a lascivious pose with a full erection, his legs spread, and his pelvis tilted upward. The jury could find from looking at the picture that it is an image of an identifiable minor, and that the interests of a real child were implicated by being posed in such a way. This is not the typical morphing case in which an innocent picture of a child has been altered to appear that the child is engaging in sexually explicit conduct, for the lasciviously posed body is that of a child. See S.Rep. No. 108-002, at n. 2 (2003) ("[T]he morphing provision is explicitly aimed at the creation of a sexually explicit image using an innocent image of a child.").

Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation. In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.

Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*.

17

*United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005) *cert. denied* 546 U.S. 901, 126 U.S. 243 (2005).

Therefore, the defendant's conduct in altering innocent pictures of the juvenile plaintiffs so that they appear to be engaged in sexual activity enjoys no constitutional protection. As discussed above *Ashcroft v. Free Speech Coalition, supra,* has no application to Section 2256(8)(C).[31] The United States Court of Appeals Eighth Circuit specifically upheld a conviction for "morphing" innocent images of real children into sexually explicit images under 18 USC § 2252A and child pornography as defined by 18 USC § 2256(8)(C) as constitutional in *United States v. Bach*, 400 F.3d 622(2005). The United States Supreme Court denied certiorari thereby affirming the reasoning and holding in *Bach.*[32] Therefore, the defendant's claim that the definitional section of 18 USC § 2256(8)(C) is unconstitutional has been specifically addressed and decided adversely to him.

Even if 18 USC § 2256(8)(C) were unconstitutional, Plaintiffs still can civilly recover under 18 USC § 2252A(f) and 18 USC § 2255 for a violation of 18 USC § 2252A(a) which is neither premised upon nor uses the definition of child pornography contained in 18 USC §2256(8)(C).

It is irrelevant that *Bach* took the face of an actual minor and placed it on existing child pornography[33] while the defendant took the images of real and identifiable minors and placed them upon adult pornographic subjects that he altered to appear younger.

---

[31] See f.n. 27

[32] 546 U. S. 901, 126 S.Ct. 243 (2005)

[33] It defies logic that the defendant would even raise this argument in light of the fact that he has repeatedly claimed that no one can tell if an image depicting child pornography is genuine unless the person was there when the image was created. No one authenticated the existing image into which AC's (real minor victim) face was placed as real child pornography. The 8th District reasoned that a jury could find the body depicted in the morphed image was that of a real child but did not hold that it was.

It causes no less harm to the innocent minor that his or her face was placed in actual child pornography or an image altered to look like actual child pornography. The conclusions of all those viewing the images will be the same. The holding of *Bach, supra,* and the rationale behind these statutes and this suit is that the creation of sexually explicit images utilizing the likenesses of real and identifiable children is harmful in and of itself to that child. Defendant refuses to acknowledge this because it is fatal to his case.

DEFENDANT'S CONDUCT IS REGULABLE BY FEDERAL STATUTE

Ohio Conduct

Defendant's claim that "Ohio law legalizes the creation, display and reproduction of child pornography court exhibits under exceptions in all of Ohio's pornography states" is false.[34]Altering innocent pictures of the juvenile plaintiffs so that they appear to be engaged in sexual activity does not enjoy protection under Ohio Rev. Code § 2907.321(B)(1),[35] 2907.322(B)(1),[36] and/or 2907.323(B)(3)[37] which protect child pornography that is "sold,

---

[34] Defendant's Memorandum at 13

[35] (B)(1) This section does not apply to any material or performance that is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

[36] 2907.322(B)(1) This section does not apply to any material or performance that is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

[37] 2907.323(B)(3)states:  Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

   (a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental judicial, or other proper purpose by or to . . . a person having a proper interest in the material or performance." The statutes by their own terms only protect those who utilize **existing** child pornography for a proper purpose. It creates no safeguard for the creation of child pornography as the defendant has allegedly done. Nor can any reasonable interpretation of these statutes condone the misuse of a real and identifiable child's likeness to create images of that child engaging in sexual activity even if it is to create court exhibits or a "proper purpose." Clearly, the Ohio Legislature did not condone any such activity when it enacted these statutes.

None of the judges authoring the opinions and orders relied upon by the defendant condoned the defendant's using the likeness of real children and the creation of an image depicting that child engaging in sexual activity. The defendant was permitted to possess existing child pornography to examine and test it. He at best was authorized by various courts to create "virtual" images to use as exhibits in his testimony. However, the defendant's claim that he was authorized by any court or that it was a "proper purpose" to take the likenesses of two real juveniles and subject them to the harm recognized in *Ferber, supra,* and *Bach, supra*[38] exceeds any common sense reading of the grant of authority issued by the various courts.

---

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

[38] "The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*." *Bach, supra at* 632; "In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348." *Bach, supra at*

Defendant's claim that it is "the federal government's practice is not to prosecute persons whom (sic) regularly create, display and reproduce child pornography court exhibits" and "That practice includes its law enforcement agents and prosecutors" is unsupported by any authority properly before this Court pursuant to F. R. C.P. 56(e). Likewise, *U. S. v. Frabizio*, 2006 WL 2384836, 445 F. Supp2d152, (8-11-06 D Mass) does not even address this blatantly false claim and certainly can not stand for this proposition regarding the federal government's practice.[39] In any event, the existence of such a Federal policy would not prevent the plaintiffs from bringing suit. The defendant's deferred prosecution agreement also refutes his claim that the federal government does not take there matters seriously.

Defendant refuses to acknowledge that there is a difference in possessing existing child pornography for a legitimate purposes and creating it using the likenesses of real children. He continues to wrongfully and unrealistically compare his conduct to that of law enforcement officers policing such misdeeds. The fact that the members of the FBI or the United States Attorney's Office are not prosecuted for collecting evidence of child pornography is irrelevant to this suit.[40] They lack the requisite criminal intent. Nor is it indicative of any policy. Defendant would not have been prosecuted, or sued, had he not created these images using the likenesses of real and identifiable children despite the fact that his deferred prosecution agreement only specifically refers to the crime of possession.

---

631. "In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389." *Bach, supra at* 631.

[39] Nor do the other two reported cases of this defendant Frabizio. See *U. S. v. Frabizio* 341 F. Supp 2d 47 (D Mass 2006) and *U. S. v. Frabizio*, 463 F. Supp 2d 111.

[40] The Judge in the Oklahoma Case that defendant relies upon rejected such an argument: "Defendant offers no support for the proposition that because government bodies engage in such activities to prosecute crimes, attorneys for defendants are similarly entitled to engage in those activities and posses prohibited items, and the Court finds none. Accordingly, for the foregoing reasons, the Court denies defendant's due process challenge to the statute. *U.S. v. Shreck*, Case 4:03-cr-00043-CVE, (ND OK) Doc No. 240 at 14

## PREEMPTION IS IRRELEVANT TO THIS SUIT

Defendant is obviously now claiming that Federal Law does not preempt Ohio law concerning possession of child pornography and affirmative defenses there to. He is still claiming that his creation of these sexually explicit images was protected under Ohio law and therefore plaintiffs cannot sue him for his acts which occurred in Ohio.

Defendant also claims that "he has never conceded that preemption exists."[41] This is not true. The defendant has previously given sworn testimony in a successful effort to obtain the dismissal of criminal charges pending against an alleged child pornographer that the federal law has preempted the state law on these very issues.[42]

For the reasons stated above, the Federal and Ohio statutes do not conflict and preemption is not an issue in this case. Ohio law does not condone the defendant's admitted misconduct and neither does federal law.

Oklahoma Conduct

## USE OF COURT EXHIBITS IN FEDERAL COURTROOM

Defendant properly asserts that "plaintiffs allege the use of the court exhibits in one federal case in Oklahoma."[43] However his next claim that "No evidence has been produced [sic] the exhibits were displayed or reproduced in that case"[44] is untrue. Defendant admitted in his responses to interrogatories Nos. 1 and 2 that he testified in Oklahoma and that he "used the images of the minor plaintiffs in each of those cases in some way."[45] Additionally, the affidavit

---

[41] Defendant's Memorandum at 15
[42] " He [Boland] believes now that the federal law preempts the Ohio exception under § 2907.323(A)(2) and he places himself in jeopardy of indictment in continuing his duties as an expert in this matter by possession the CD's or preparing trial exhibits." *State v. Brady*, Ashtabula County Common Pleas Case No. 2004-CR-349 at 7 a copy of this opinion is filed as Exhibit "3" to the Motion to Dismiss.
[43] Defendant's Memorandum at 15
[44] Defendant's Memorandum at 15
[45] Exhibit "2"

to the search warrant which was executed at the defendant's home and place of business details the use of the images of the minor plaintiffs in the Oklahoma case.[46]

Defendant next claims that "even if such evidence is produced, the use of those exhibits was in compliance with a direct order of that court."[47] A reading of the transcript pages that the defendant cites does not support this claim. On page 141 of the transcript it is discussed that the defendant did not know the images were of a minor. The judge certainly would have viewed that matter differently had he known the defendant "knew or should have known"[48] that the minors in the images were real" and that the defendant created these images using the likenesses of real children as the defendant admitted in his deferred prosecution agreement and the discovery in this case..

Eventually and after learning of the Government's concerns in that case regarding the creation of sexually explicit images involving minors, the Oklahoma Court specifically refused to grant the defense and Defendant Boland the ability to create images, virtual or real, depicting minors in sexually explicit situations when it ruled:

> The magistrate judge also determined that defendant requires the ability to retain images, the creation and possession of which are violations of the CPPA. Having reviewed the transcript of the proceedings at the January 27, 2006 ex parte hearing before the magistrate judge, the Court is, again, unpersuaded that defense counsel require the ability to create additional images, virtual or real, depicting minors involved in sexually explicit activity. The approval of such activities is not necessary in the interest of equity, as the United States has made clear that it has no intention to craft prohibited images to prosecute defendant. Transcript of Motion Hearing, October 13, 2005, at 68; United State's Objections to the Magistrate's Report and Recommendation (Dkt. # 221), at 31 ("Under no uncertain terms does any Government agent for any reason ever create any kind of images that might be illegal. . . . Government agents do not literally recreate the crime in an attempt to obtain evidence to convict a defendant,

---

[46] Exhibit "3" at 6-16
[47] Defendant's Memorandum at 15.
[48] Exhibit "1" Annex A paragraph No. 1

> in contrast to what the defense seeks to do here in alleged pursuit of
> exculpatory information."). Further, defense counsel can sufficiently make
> their arguments and points relating to the ease of creating digital images
> that are indistinguishable from actual images, and the difficulty in
> knowing the difference, without creating images that depict minors in
> sexually explicit situations.

*U.S. v. Shreck*, Case 4:03-cr-00043-CVE, (ND OK) Doc. No. 240 at 17. Defendant's claim that

creation of the images in question was pursuant to and/or sanctioned by an order of the United

States District Court for the Northern District of Oklahoma is contradicted by the record in that

case. Therefore, defendant's arguments regarding the impropriety of "finding civil liability for a

citizen's compliance with that district's court judge's order" are unfounded.

EVEN THOUGH FEDERAL PREEMPTION IS NOT AN ISSUE

PLAINTIFFS HAVE ESTABLISHED INJURY

For the detailed reasons set forth above, plaintiffs have shown that they were aggrieved

by defendant's conduct solely by the creation and use of these images and therefore may recover.

It is doubtful that any of the plaintiffs will take solace in the fact that the defendant used the

images of the two minor plaintiffs "solely in his role as an expert witness in several Ohio

criminal cases and one federal criminal case."[49] The sexually explicit images depicting the two

minor plaintiffs were never used "in his role as an expert witness" as that role was defined by

any court. Indeed, it appears from at least two courts that he was not permitted to do so.[50] One of

the local courts that defendant claims has reached the conclusion supporting his position opined

that:

> "Morphing is the practice of altering innocent pictures of real children
> to make the children appear to be engaged in sexual conduct. The
> affidavit described certain images that were allegedly in Boland's
> possession. The state contends these images violate R. C. 2907.323
> (A). A specific "morphed" image may or may not violate R. C.

---

[49] Defendant's Memorandum at 16.
[50] *U.S. v. Shreck*, Case 4:03-cr-00043-CVE, (ND OK) Doc. No. 240 at 17

2907.323(A), depending on a legal and factual conclusion of whether
the particular image shows a minor "in the state of nudity."[51]

The acknowledgment by the Ohio Eleventh District Court of Appeals that the defendant's
conduct may constitute a crime cannot be construed as condoning his conduct and refutes the
defendant's position that Ohio law protects his "morphing" of innocent images into children
appearing to be engaged in sexual conduct.

### THE DEFERRED PROSECUTION AGREEMENT DOES ADMIT A VIOLATION OF FEDERAL LAW FOR THE CONDUCT  ALLEGED IN THE COMPLAINT

To claim that the defendant's deferred prosecution agreement[52] is not an admission of
wrongdoing defies common sense especially in light of the factual statements the defendant
agreed to therein. On April 5, 2007, the defendant entered into a pre-trial diversion agreement
with the United States of America.[53] The Defendant has admitted in his discovery responses that
the factual statements contained in the pre-trial diversion agreement are in fact true.[54] In light of
this admission, the deferred prosecution agreement most certainly does admit a violation of
federal law for the conduct alleged in the complaint.

In the pre-trial diversion agreement Boland has accepted responsibility for and stipulated
to downloading the images of "four real, identifiable minors in innocent poses from the
internet."[55] The Defendant has accepted responsibility for, stipulated to, and admitted that he
"digitally manipulated such images and combined them with other images to create a series of

---

[51]*State v. Brady,* Case No. 2005-A-0085 (11th Dist, Ohio), Exhibit "5" to the Motion to Dismiss at 8 Doc. No. 5
[52] Exhibit "1"
[53] This agreement is attached hereto as Exhibit "1"
[54] Boland Response to Request for Admission No. 1; Boland discovery responses are attached as Exhibit "2"
[55] See Annex A to Exhibit "1" at paragraph no. 1

visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors was engaged in sexually explicit conduct."[56]

Additionally, defendant has admitted this conduct in his discovery responses as well.

In his response to Request for Admission No. 2, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "A") of Plaintiff Jane Doe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[57]

In his response to Request for Admission No. 3, the Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "B") of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[58]

In his response to Request for Admission No. 4, the Defendant admitted that he "created a visual depiction using a likeness of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be naked and between two males who are ejaculating on her torso."[59]

Between March of 2004 and January of 2005, the Defendant transported such visual depictions to and/or displayed such visual depictions in courts in Summit, Columbiana, Hamilton, and Warren Counties, in the State of Ohio, as well as in the U.S. District Court in Tulsa Oklahoma.[60] The Defendant has also admitted that he "gave CD(s) containing exhibits

---

[56] See Annex A to Exhibit "1" at paragraph no. 2
[57] Exhibit "2" at Request for Admission No. 2
[58] Exhibit "2" at Request for Admission No. 3
[59] Exhibit "2" at Request for Admission No. 4
[60] See Annex A to Exhibit "1" at paragraph No. 3; Exhibit "2" at Response to Interrogatories Nos. 1 and 5

which were made by you utilizing the image(s) or depiction(s) of Jane Doe and /or Jane Roe to defense counsel and/or court personnel."[61]

The Defendant's conduct was the subject of an investigation by the FBI. A summary of this investigation is set forth in the affidavit which supported the search warrant executed at the Defendant's home and place of business. This affidavit[62] is incorporated herein as if fully rewritten[63] and supports the allegations of the complaint rendering them undeniable.

In light of these circumstances, it is undeniable that the defendant committed the acts underlying the allegations of the complaint for possession and creation of the exhibits. Obviously, part of the harm caused by the defendant's conduct stems from displaying and distributing said images. This cannot be done without possession of them. In other words, possession of the images is presumed if one creates and displayed them. The deferred prosecution agreement contains far more than "a statement of facts merely reciting the creation of court exhibits." [64]

Although the gist of plaintiffs' complaint is premised upon the creation of these exhibits, Plaintiffs are alleging that Defendant's possession and display of the court exhibits also caused them harm. While the deferred prosecution agreement only acknowledges an admitted criminal violation for possession of the images, the facts elucidated therein, support the conclusion that other crimes have occurred pertaining to the creation of the images. Defendant's broad admission concerning the truth of the facts contained in the agreement render his conduct undeniable and admitted for the purposes of this suit.

---

[61] Exhibit "2" at Request for Admission No. 5
[62] Original on file with the Clerk of Courts for the Northern District of Ohio
[63] Exhibit "3"
[64] Defendant's memorandum at 17

Congress did not create defenses to the Child Pornography Protection Act like the State of Ohio did.[65] It is presumed that this is not an oversight. It is more than unlikely that Congress would never sacrifice the psychological well being of a child by permitting the creation of sexually explicit court exhibits using their likenesses. Again and again, defendant willfully interposes the legitimate use of existing child pornography in recognized exceptions to state law with the criminal act of creating sexually explicit images of real and identifiable minors. Plaintiffs are suing over more that just possessing and displaying the images. They are suing over their creation as well.

It would be of little consolation to the minor plaintiffs if they learned that their privacy interests were legally and permissibly sacrificed by the defendant because he chose to use their likenesses for court proceedings only. Therefore, there is no constitutionally protected context in which the defendant or anyone else may create sexually explicit images of real and identifiable minors. No one has the right to tarnish someone's childhood/life in such a manner even if it were done to create court exhibits.

Defendants claim that "a courtroom is a context the federal statue considered when declining to regulate the display, reproduction, etc. of such conduct within a courtroom"[66] is betrayed by the wording of the relevant statutes which proscribe all such conduct. There is no legislative history/authority which supports the claim that Congress declined to regulate the display of sexually explicit images of real and identifiable minors in courtrooms. If Congress intended to so decline, it would have do so specifically. Instead, Congress enacted criminal prohibitions prohibiting such conduct without defense.

---

[65] Plaintiffs in no way concede that these defenses apply to defendant's conduct.
[66] Defendant's Memorandum at 18

THE MINOR PLAINTIFFS WERE AGGRIEVED

Again the defendant wrongfully postulates that the minor plaintiffs were not aggrieved. Such a comment shows that the defendant has little or no regard for the consequences of his actions and has not truly accepted responsibility therefore. Such comments are invalid for the reasons repeatedly set forth above.

EVIDENCE EXISTS THAT THE ADULT PLAINTIFFS ARE AGGRIEVED

It is not surprising that if the defendant feels that no harm comes to children when their likenesses are incorporated into sexually explicit images, then the children's parents or guardians would be not be traumatized by the same misconduct. Defendant's position on this issue equally and callously defies the realities of life and parenthood, and deserves no more comment.

Plaintiffs' counsel wonders what the defendant's reaction or the reaction of the defendant's wife would be to the usurpation of the likenesses of his children for a similar "constitutional context."

The defendant again seeks to benefit from the fact that the adult plaintiffs chose to not view the sexually explicit images and place such an abomination into their memories forever thereby minimizing their emotional trauma. The fact that they chose to not view such sexually explicit images does not mean that they were not traumatized by their creation and knowing that the innocent act of placing the images on line somehow lead to this debacle.

Had they looked at the images, the defendant would continue his argument that it is not his fault the FBI chose to show the adult plaintiffs the images. Defendant's claim that had the FBI not shown the pictures or investigated this matter, then there would be no injury should not be even considered by this Court. It is akin to saying a robbery victim deserved to be shot

because he chose to resist. No one will ever know what harm would have come from the creation of these images had the defendant not been discovered when he was.  This is pure speculation.

PLAINTIFF LORA'S INJURY

The fact that that the adult plaintiffs shielded themselves from increased emotional trauma does not mean they did not suffer. Plaintiff Lora testified that he did suffer psychological damage.[67] The amount that will compensate him for that damage is a question of fact for a jury. The events set into motion by the defendant have altered his existence, how he views photography in general, and how he views Plaintiff Jane Doe.

PLAINTIFF BLOOM'S INJURY

Victoria Bloom testified that she suffered psychological injury and sought counseling therefore.[68] The amount that will compensate her for that damage is a question of fact for a jury.

SUMMARY JUDGMENT RULE

Defendant concurs that the plaintiffs have set forth the relevant law regarding summary judgment. Defendant then again goes on to recite only apportion of the evidence[69] offered in support of plaintiffs' Motion for Summary Judgment and in opposition to defendant's Motion for Summary Judgment. Based upon the totality of the evidence before the Court which can be considered pursuant to F. R. C.P. 56, there can be no legitimate question of fact concerning the allegations of the complaint and that Plaintiffs are entitled to judgment as a matter of law including upon the "Ohio Statutory Claims."

Defendant's argument that plaintiffs' Ohio statutory claims "fail in comparison to the exceptions to Ohio's Child pornography statues" actually serves to illustrate the weakness of

---

[67] Lora Depo Trans at 13-15.
[68] Bloom Depo Trans at 13-22
[69] Defendant's Memorandum at 23

his position. The Ohio Legislature, like Congress, is presumed to know what it is doing when it enacts new legislation in light of existing legislation and common law. The Ohio Legislature would not have enacted the protections concerning one's likeness and privacy in what has been described as the "Ohio Statutory Claims" in light of the child pornography exceptions if the legislature did not mean for them to apply to conduct like that of the defendant.

The complete (no exceptions) criminal prohibition of the creation of sexually explicit images involving minors is consistent with application of "Ohio's Statutory Claims" and there is no conflict between the statutes or common law. Only if one improperly expands the pornography exceptions to apply to morphing/creating child pornography does an apparent conflict arise with Rev. Code § 2741.07 and the common law tort of Invasion of Privacy. Therefore, the Ohio exceptions to child pornography do not apply to the creation of sexually explicit images involving real and identifiable minors. Otherwise, a conflict between the Ohio Statutes would exist.

## CONCLUSION

In light of the fact that the defendant has admitted the underlying factual allegations of the complaint in his deferred prosecution agreement and his discovery response, there are no legitimate questions of fact. Defendant's Motion for Summary Judgment is not well taken and should be denied for the reasons set forth above. Due to the defendant's admissions and the evidence against him, there is no way that any jury could find in his favor. Defendant has failed to meet his burden of proof establishing that he is entitled to summary judgment as a matter of law.

Respectfully submitted,

/s/ *Jonathan E. Rosenbaum*
Jonathan E. Rosenbaum (Ohio Bar Reg. No. 0021698)
Attorney for Plaintiffs
230 Third Street, Suite 104
Elyria, Ohio 44035
(440) 322-7972
Fax (440) 322-7972
Email: jerosenbaum@winstream.net


**Proof of Service**

A true and accurate copy of the foregoing and the attached memorandum have been

electronically served this 4th day of May, 2009 by the Court's electronic filing system


/s/ Jonathan E. Rosenbaum_____
JONATHAN E. ROSENBAUM
Supreme Court Reg. No. 0021698
Attorney for Plaintiffs