# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03-CR-43-H |
| ) | |
| ) | |
| QUINTON PHILLIP SHRECK, ) | **FILED** |
| ) | |
| Defendant. ) | APR 1 2 2004 |
| | |
| | Phil Lombardi, Clerk |
| | U.S. DISTRICT COURT |

## ORDER

This matter comes on pursuant to Defendant's Supplemental Motion for Evidentiary Hearing and Memorandum of Law in Support (Docket No. 60), filed April 2, 2004. The matter is currently set for hearing on April 15, 2004, at 9:30 a.m. The Court hereby grants Defendant's motion. At the April 15 hearing the Court will receive evidence concerning the current state of computer technology as it relates to the charges pending against Defendant Quinton Shreck. In addition, the parties should be prepared to address each of the issues identified by this Order.

I

In seeking to dismiss the Superseding Indictment in this case, Defendant presents at least two questions: first, does the technology available today render it impossible for a citizen to determine whether a digital image being viewed contains an "actual" (as opposed to a "virtual") minor.[1] Second, if the technology has advanced to this state, what evidence will the United

---

[1] In Ashcroft v. Free Speech, the Supreme Court used the terms "real" child and "actual" child interchangeably to mean live human beings. The Court referred to computer-generated images that "appear[] to be of a minor engaging in sexually explicit conduct." The Court went on to say that this is sometimes referred to as "virtual child pornography." Id. at 239-40.

States adduce at trial to prove, beyond a reasonable doubt, the "knowing" element required by 18 U.S.C. § 2252.[2]

The language of Section 2252 does not specifically identify what a defendant must "know." However, the Supreme Court has interpreted the word "knowingly" to "extend[] both to the sexually explicit nature of the material and to the age of the performers." United States v. X-Citement Video, Inc., et al, 513 U.S. 64, 78 (1994).[3] Following X-Citement Video, defendants charged under the statute have advanced arguments that center around how and whether the United States can prove that an actual minor participated in the production of the material in question. See United States v. Kimler, 335 F.3d 1132 (10th Cir. 2003) (finding that juries can distinguish between real and "virtual" children and therefore experts are not needed in every case to determine this issue); United States v. Hilton, ___ F.3d ___, 2004 WL 691247

---

[2] (a) Any person who —
   (4) either —
      (B) <u>knowingly</u> possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which has produced using materials which have been mailed or so shipped or transported, by any means including by computer, if —
         (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
         (ii) such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(4)(B) (emphasis added).

[3] It should be noted that the word "knowingly" was before the Court for consideration under 18 U.S.C. § 2252(a)(1) and (2), rather than 18 U.S.C. § 2252(a)(4), which is the relevant statute in this case. However, the construction of the various subparts of Section 2252 are similar in nature and grammatical structure, and the Court finds that the analysis from X-Citement Video would be applied similarly to the statute at issue here.

2

(1st Cir. April 2, 2004) (stating "[p]ossession of non-obscene images can only be punished when real children were part of the production process, and that is for the government to prove."); United States v. Reardon, 349 F.3d 608 (9th Cir. 2003) (finding the expert testimony sufficient proof so that a factfinder could "conclude that the government had carried its burden of proving that the images depicted actual children"); United States v. Vig, 167 F.3d 443 (8th Cir. 1999) (stating that "the government presented sufficient evidence from which a jury could reasonably infer that the subjects of the visual depictions were actual minors engaging in sexually explicit conduct"); United States v. Hall, 312 F.3d 1250 (11th Cir. 2002) (finding that the pictures showed to the jury contained real children and that no reasonable jury could have found that the images were virtual children). Each of these cases involved appeals directly challenging the government's proof that the subject children were actual minors as required by Section 2252, i.e. "the use of a minor engaging in sexually explicit conduct" rather than whether a citizen can "know" whether the images being viewed are real children rather than virtual children.

The Supreme Court specifically addressed the subject of virtual child pornography in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002) holding that certain portions of the Child Pornography Prevention Act (CPPA)[4] were unconstitutional. In the instant case, Defendant is charged under a statute contained in the CPPA. In Free Speech, the Court struck down 18 U.S.C. § 2256(8)(B), a specific provision of the definition section of the CPPA, which defined child pornography to include images that "[are], or appear[] to be, of a minor engaging in sexually explicit conduct." This specific provision, as previously written, included "any visual

---

[4] 18 U.S.C. § 2251 et seq.

3

depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture." In overturning this part of the statute, the Court stated:

> The Government next argues that its objective of eliminating the market for pornography produced using real children necessitates a prohibition on virtual images as well. Virtual images, the Government contends, are indistinguishable from real ones; they are part of the same market and are often exchanged. In this way, it is said, virtual images promote the trafficking in works produced through the exploitation of real children. The hypothesis is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice.

Free Speech, 535 U.S. at 254. This opinion was issued in April, 2002. Just last year in July, 2003, the Tenth Circuit expressed a similar opinion in Kimler, stating: "[j]uries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge." Kimler, 335 F.3d at 1142.

However, technology advances at a rapid rate. The day may well come when the conclusions reached in both Free Speech and Kimler will no longer be true. Clearly, Defendant believes that day is here.

II

In a previous case involving Section 2252(a)(4)(B) of the CPPA,[5] the Court, without objection by the Government, gave the following jury instructions in connection with the essential elements of the offense and specifically the "knowing" element:

---

[5] United States v. Wollett, 99-CR-158-H, Northern District of Oklahoma.

4

## ESSENTIAL ELEMENTS OF THE OFFENSE CHARGED

In order to sustain its burden of proof for the crime of possessing child pornography as charged in the Indictment, the Government must prove the following four elements beyond a reasonable doubt:

(1) That the Defendant "knowingly" (as that term is defined later in these instructions) possessed one or more matters containing visual depictions that:
    (A) had been shipped or transported in interstate or foreign commerce by any means including by computer; or
    ii. were produced using materials transported in interstate commerce; and

(2) The production of such visual depictions involved the use of a minor engaging in sexually explicit conduct;

(3) That such visual depictions were of minors engaged in sexually explicit conduct; and

(4) That the Defendant "knew" (as that term is defined later in these instructions) that at least one of the performers in such visual depiction was a minor engaged in sexually explicit conduct.

## "KNOWINGLY" AND "KNEW"-- DEFINED

An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

"Knowingly" and "knew," as used in connection with this case, mean with an awareness of the sexually explicit nature of the material, and the knowledge that the visual depictions were in fact of minors engaged in sexually explicit conduct. The United States must show that the Defendant had knowledge of the nature and contents of the material.

Although the Defendant need not have specific knowledge as to the actual age of the child depicted, the Defendant must have had knowledge or reason to know, or an awareness or notice, or a belief or ground for belief warranting further inspection or inquiry, that the material contained a visual depiction of a minor engaging in sexually explicit conduct. Such knowledge may be shown by direct or circumstantial evidence, or both. Eyewitness testimony of the Defendant's perusal of the material is not necessary to prove his awareness of its contents; the circumstances may warrant the inference that he was aware of what the material depicts.

5

## PROOF OF KNOWLEDGE

The knowledge that a person possesses at any given time may not ordinarily be proved directly, because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge. It is entirely up to you, the jury, to decide what facts to find from all the evidence presented.

The question now presented is whether, if the same or substantially similar instructions were to be given in the instant case, what result obtains if Defendant is able to establish at the evidentiary hearing that current technology renders it impossible to make a determination that the images used are actual, rather than virtual, children.

At the March 12, 2004 hearing, Assistant United States Attorney Susan Morgan appeared to concede that, if the technology actually exists as argued by Defendant, the statute would be unenforceable.

> THE COURT: It means something, I agree. But I mean let's – well, let me ask Ms. Morgan, what does that mean? If – and you're by citing Kimler you're saying, well, the Tenth Circuit still thinks it's possible, but let's suppose hypothetically that in the context of a pretrial hearing there was a determination that it is not possible to distinguish between a computer image and a real child. What impact does that have?
>
> MS. MORGAN: Your Honor, I think that from what you're saying, if the Court takes the position that no one can ever tell the difference between a real child and a virtual child.
>
> THE COURT: That's what his argument is.
>
> MS. MORGAN: Then you're basically gutting that statute. You're saying no one can ever be charged with possession, trading or transmitting child pornography.

6

THE COURT: Because they have to do it knowingly and, therefore, the knowing element is unprovable as a matter of law. I guess that's what — I'm trying to attach it, even assuming, and that's purely an assumption because obviously we are going to be going through much more involved fact finding, but assuming the very best for Mr. Smallwood, I'm trying to attach it to some legal doctrine that would be — that would make it affect outcomes here.

MS. MORGAN: I think what —

THE COURT: And I don't know of any authorities that deal with the element of knowingly where it has been held that no one could know and, therefore, knowingly is unknowable. Right?

MS. MORGAN: I get that impression from what he is saying, and I believe that if the Court takes that position then we may as well throw out the statute because basically he's saying it's not just unconstitutional, it's impossible, so you can't charge anybody with this crime and, therefore, it's not a crime.

THE COURT: Right.

MS. MORGAN: So you can look at anything you want and if you say I have no idea whether that's real or virtual and I can never tell, nobody can ever tell, so I'm not committing a crime, which is, I think, the point he wants you to get to.

THE COURT: Well, but I think the point is less case specific. It's basically to say that the statute has proscribed conduct which is not identifiable. That is, it puts no citizen on notice adequately of when they are breaking the law or not, right?

MS. MORGAN: That's what I am getting from him. I just don't think that that actually is what's happening.

THE COURT: Well, if it is unknowable, is it nevertheless enforceable?

MS. MORGAN: That's what I was saying. If it's unknowable and someone wants to make a finding that there's no way anyone in the world could ever tell that this is a real child then, of course, its not enforceable because you can't ever prove that. But I simply do not agree that the technology for the run-of-the-mill person who's putting pictures of children on the Internet, is such that no one can look at pictures and not tell that it's a real child as opposed to a virtual child. I think that the Tenth Circuit and many, many more circuits who have fallen in line with that opinion say people can tell. The average-person technology is not evolved to the point where no one can ever tell if it's a real child or not. They're not willing to concede that and I'm certainly not. I've seen movies of virtual

7

people. You can tell they are not real people and these are movies made, not home movies but Hollywood.

(March 12, 2004 Hearing Tr. at p. 22, l. 1 - p. 24, l. 14.)

Based on this exchange, the United States appears to believe that the statute would be unenforceable if citizens were unable to distinguish between images of actual children and virtual children. By contrast, however, Defendant, in his supplemental filing, maintains that the statute would not be completely gutted if this were true. Instead, Defendant argues that a producer of images would always be in a position of knowing whether the images are real or computer-generated. If prosecution was possible for such a producer, the statute would not be entirely unenforceable, and therefore would not be unconstitutional on its face. The parties should be prepared to address how Defendant's claims that the statute is vague and overbroad should be analyzed and considered by the Court, with specific reference to whether the constitutional challenge is "as applied to this Defendant" or "void on its face."

III

As quoted above in Section I, the Supreme Court in <u>Free Speech</u> considered the technology available, as well as the cost involved in utilizing that technology, to create child pornography. The Court opined that if the technology was financially feasible, then pornographers would not risk using real children. Likewise, the <u>Kimler</u> court cited this argument with approval in its decision.

In 2003, the following finding was included in House Conference Report No. 108-66:

> Leading experts agree that, to the extent that the technology exists to computer generate realistic images of child pornography, the cost in terms of time, money, and expertise is-and for the foreseeable future will remain-prohibitively expensive. As a result, for the foreseeable future, it will be more cost-effective to produce child pornography using real children. I will not, however, be difficult or

8

expensive to use readily available technology to disguise those depictions of real children to make them unidentifiable or to make them appear computer-generated.

(House Conference Report No. 108-66, Tit. V, § 501, ¶ 11 (April 9, 2003).)

Obviously, as early as last year, Congress believed that, while the technology may exist, the costs and requisite skill level made "virtual" child pornography unrealistic for the near future. Defendant's expert should be prepared to address this topic with information regarding financial costs of producing virtual images, the amount of time needed to produce an image, as well as the skill level required in order to achieve results which can pass for "real" images.

In addition, Defendant's expert and the parties should be prepared to discuss the issues addressed in United States v. Marchand, ___ F. Supp. 2d ___, 2004 WL 487326 (D.N.J. March 5, 2004).

IV

In the event Defendant succeeds in establishing that the technology exists to make it impossible for a citizen to know whether he or she is viewing a "real" or "virtual" image, then the question becomes how will the United States prove this element of the offense, beyond a reasonable doubt, under the instructions set forth in Section II above. The parties should be prepared to discuss what evidence would be adduced at trial to prove this element. Additionally, if the United States anticipates relying on the testimony of an expert witness, then be prepared to address whether this is the type of testimony that should be subject to a pre-trial Daubert hearing to determine whether such testimony, in light of the current state of technology, is reliable.

9

IT IS SO ORDERED.

This 12TH day of April, 2004.

_____
Sven Erik Holmes, Chief Judge
United States District Court