RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0016p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

JANE DOE, c/o her guardian and next friend;
PETER LORA; JANE ROE, c/o her guardian and
next friend; VICTORIA BLOOM,

        *Plaintiffs-Appellants,*

v.

DEAN BOLAND,

        *Defendant-Appellee.*

No. 09-4281

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-02787—Dan A. Polster, District Judge.

Argued: December 8, 2010

Decided and Filed: January 19, 2011

Before: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jonathan E. Rosenbaum, Elyria, Ohio, for Appellants. Dean Boland, Lakewood, Ohio, for Appellee. Mark R. Freeman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Jonathan E. Rosenbaum, Elyria, Ohio, for Appellants. Dean Boland, Lakewood, Ohio, for Appellee. Mark R. Freeman, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

## OPINION

SUTTON, Circuit Judge. In the course of preparing expert testimony and exhibits for a criminal trial, Dean Boland downloaded images of children from a stock photo website, digitally "morphed" them into pornography, then used the images to help his clients resist child pornography charges in federal and state courts. Boland's actions, as it turned out, created potential problems of their own. On the criminal side, the government alleged that Boland's conduct violated federal criminal child pornography laws, leading to a deferred prosecution agreement with him. On the civil side, the one at issue here, the parents of the depicted children found out about the exhibits, prompting them to sue Boland under the civil remedy provisions of the federal child pornography statute. The district court rejected the civil claims as a matter of law, holding that Congress did not intend the law to apply to expert witnesses. The law contains no such exception, however, and no common law exemptions apply in this setting. We reverse the district court's judgment, remand the case to the district court and allow it to consider other lingering legal defenses in the first instance.

I.

Licensed to practice law in Ohio, Dean Boland specializes in technology-related legal issues. In February 2004, Boland downloaded innocent-looking images of the minor plaintiffs, Jane Doe and Jane Roe, from a stock photo website, where photographers may upload images and viewers may download them for a fee. Boland digitally manipulated the pictures to make it look like the children were engaging in sexually explicit acts. Two examples: he took a picture of 5-year-old Jane Roe eating a doughnut and replaced the doughnut with a male penis, and he placed a picture of 6-year-old Jane Doe's face on the image of the body of a nude woman performing sexual acts with two adult males. In March and April 2004, Boland used these images in the course of testifying as an expert witness in two Ohio state court criminal proceedings dealing with child pornography.

In April 2004, Boland served as an expert witness in *United States v. Shreck*, a federal criminal child pornography prosecution in Oklahoma. *See* No. 03-CR-0043-CVE, slip op. at 2 (N.D. Okla. May 23, 2006). The defendant moved to dismiss the charges against him on the theory that 18 U.S.C. § 2252(a)(4)(B), which prohibits "knowingly" accessing child pornography, violated the First Amendment on vagueness and overbreadth grounds because a defendant "cannot determine whether what he is viewing is an actual or virtual image of a child," given the sophistication of modern computer-imaging technology. *Shreck*, slip op. at 2. The district judge allowed the defendant to present expert testimony on the point at an evidentiary hearing.

During Boland's testimony, he displayed a series of "before-and-after" images that he had digitally altered. The aim was to show it would be "impossible for a person who did not participate in the creation of the image to know [the child depicted is] an actual minor." R.77-2 at 119. Boland showed an image of a nude adult woman, then showed how he could edit the image to make it look like a nude child. He also showed innocent images of Jane Doe and Jane Roe followed by sexually explicit "morphed" versions of them.

Toward the end of the hearing, the prosecutors raised the possibility that Boland may have violated federal law by creating and possessing some of these images. The district judge responded that Boland's photos were "prepared expressly at court order," R.77-2 at 141, but admonished him to purge the images from his hard drive. Boland did not remove the images from his hard drive, and later used the doctored images of the minor plaintiffs in two more state court proceedings while acting as an expert witness or counsel.

In May 2004, the FBI's Cleveland office started an investigation of Boland. FBI agents searched Boland's home and seized several electronic files. In April 2007, Boland entered into a pre-trial diversion agreement with the U.S. Attorney's Office for the Northern District of Ohio, in which he admitted violating § 2252A(a)(5)(B)'s prohibition against knowing possession of child pornography, as defined to include a "visual depiction [that] has been created, adapted, or modified to appear that an

identifiable minor is engaging in sexually explicit conduct," 18 U.S.C. § 2256(8)(C). In return for the government's agreement to defer prosecution for 18 months, Boland agreed to various conditions. One of them required him to make a public apology in the Cleveland Bar Journal, where he stated, "I do recognize that such images violate federal law." R.73-1 at 12.

In September 2007, the children and their guardians filed this lawsuit against Boland under 18 U.S.C. § 2252A(f) and § 2255, which respectively provide civil remedies to "any person aggrieved" and to minor victims who have suffered "personal injury" from a violation of 18 U.S.C. § 2252A(a). The plaintiffs also filed various state law claims.

The district court awarded summary judgment to Boland on the federal claims and opted not to resolve the state law claims. Finding it a "difficult and troubling case," the court held "it would not be fair" to impose "crushing damages" on Boland for his testimony in Oklahoma federal court. R.85 at 7, 11. Reading the federal statute to permit liability, the court explained, (1) could implicate a criminal defendant's Sixth Amendment right to counsel, (2) was hard to reconcile with the fact that Boland "was responding to a federal court directive" when he created and possessed the images and (3) would implicate "[s]erious comity issues" because Ohio law provides immunity from state child pornography prosecutions for expert witnesses. *Id.* at 8, 11–12. The plaintiffs appealed.

II.

The question presented—do the federal child pornography laws exempt those who violate the law in the course of providing expert testimony?—implicates three statutory provisions.

The first provision establishes the standard of care. It says:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, any . . . computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B).

As this case comes to us, Boland has no basis for denying that he (1) knowingly possessed (2) a computer disk containing child pornography, (3) which was produced using materials that affected interstate commerce. In his deferred prosecution agreement, he suggested as much, stipulating that he "downloaded at least four . . . images, from the Internet, depicting four . . . real, identifiable minors in innocent poses," and then "digitally manipulated such images . . . to appear that each of the . . . minors was engaged in sexually explicit conduct." R.73-1 at 10. In his apology, he added, "I do recognize that such images violate federal law." *Id.* at 12.

That leaves the civil remedy provisions. One says:

> In general.—Any person aggrieved by reason of the conduct prohibited under subsection [§ 2252A](a) . . . may commence a civil action for the relief set forth in paragraph (2).

18 U.S.C. § 2252A(f)(1). The other says:

> Any person who, while a minor, was a victim of a violation of section . . . 2252A . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a).

The statute provides no exemption for this conduct, and Boland offers only the will, not a way, for declining to enforce these terms. The provisions encompass *all* violations of § 2252A(a), not some of them. As with the terms of the underlying substantive provision, so with the terms of the civil remedy provisions: They cover Boland's conduct, and they supply a cause of action for individuals aggrieved or injured by his actions.

A separate statute shows the extent to which Congress means business when it comes to enforcing the child pornography laws. The Adam Walsh Child Protection and Safety Act of 2006 says that, in any criminal proceeding, child pornography "shall remain in the care, custody, and control of either the Government or the court." Pub. L. No. 109-248, § 504 (codified at 18 U.S.C. § 3509(m)). Even though Criminal Rule 16(a)(1)(E) usually allows defendants to copy material documents in the government's possession, the Act requires federal courts to deny these requests when the materials contain child pornography, instead permitting the defendant only to have an "ample opportunity for inspection, viewing, and examination at a Government facility." 18 U.S.C. § 3509(m)(2)(B). If Congress did not want defense counsel to view, let alone possess, existing child pornography without governmental oversight, it is hardly surprising that Congress opted not to permit expert witnesses to create and possess *new* child pornography.

Without an exemption for this kind of expert testimony, Boland argues, a defendant's right to put on an effective defense under the Sixth Amendment would be hindered, requiring a narrowing of the civil-remedy provisions under the constitutional-avoidance doctrine. Neither premise of the doctrine applies. "[T]he canon of constitutional avoidance has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494 (2001). And no constitutional principle at any rate allows a criminal defendant to defend *one* criminal charge by urging his lawyer or witness to commit *another*. Otherwise, an individual on trial for a murder-by-stabbing charge could try to prove that the knife was not long

enough to kill someone by using it to stab someone else in the middle of the trial. Or individuals on trial for counterfeiting or manufacturing drugs might be able to make more of the contraband as part of a defense. *See State v. Brady*, 894 N.E.2d 671, 679 (Ohio 2008). If the Constitution is not a "suicide pact," *Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting), it is not an instrument of crime either.

Even when federal law allows participants in the criminal justice system to possess contraband, it does not allow the creation and possession of *new* contraband. *Cf.* 21 U.S.C. § 885 (immunizing federal, state and local officials from civil or criminal liability when they are "lawfully engaged in the enforcement" of federal drug laws). Individuals cannot defend criminal charges by having their lawyers or witnesses initiate new offenses. *Cf.* ABA Model Code Canon 7, DR 7-102 ("In his representation of a client, a lawyer shall not . . . [k]nowingly engage in . . . illegal conduct.").

Nor do reasonable limits on defense counsel's access to the child pornography at issue in a criminal case, whether old or new, raise constitutional concerns. In *United States v. Paull*, the defendant argued that the absence of an exception in § 2252A for his counsel to possess child pornography violated his right to a fair trial. 551 F.3d 516, 524 (6th Cir. 2009). Noting that the defendant had made "no allegations that the government used the law to disrupt his defense," we disagreed. *Id.* at 525. The defendant "could have worked with the district court and the government to ensure that he could put on the defense he wanted. But he chose not to." *Id.*; *see also United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (restrictions on a defense expert's ability to possess child pornography do not violate the fair trial rights of defendant); *United States v. Shrake*, 515 F.3d 743, 745–46 (7th Cir. 2008) (the Walsh Act does not violate a defendant's Fifth and Sixth Amendment rights).

Boland separately argues that the civil-remedy provisions do not apply because the Oklahoma district court in *Shreck* permitted him to create and possess these images. But that is not what happened. The *Shreck* judge did not authorize Boland to violate the pornography laws, and Boland did not seek permission to do so. Boland offered, and obtained permission, to present expert testimony and images illustrating the difficulty

of establishing Shreck's "knowledge" that he possessed child pornography because digital-imaging technology makes it difficult to know if an image represents an actual, as opposed to a virtual, child. R.84-1 at 8.

None of this authorized or required the creation or possession of new child pornography. Boland could have illustrated the difficulty of discerning real from virtual images by combining two innocent pictures into another innocent picture. Or, if Boland wished to use pornography to make the point, he could have morphed an image of an *adult* into that of a minor engaging in sexual activity. Boland indeed did the latter as part of his preparations, and had he stopped there we would not be here. These images are not prohibited by federal law, *see* 18 U.S.C. § 2252A(c), and are protected by the First Amendment to the extent they are not obscene, *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250–51 (2002).

Boland did something else. He morphed images of *minors* into pornography, images that "implicate the interests of real children." *Id.* at 242. The law expressly covers such images, 18 U.S.C. § 2256(8)(C), and the reality that Boland himself did not "use" real children to produce the images makes no difference, *see id.* § 2252A(c). *Free Speech Coalition* did not address the constitutionality of § 2256(8)(C), and any potential First Amendment challenge to it is not now before us. Once Boland modified the images of the minors, he crossed the line between possessing lawful images and violating the statute.

After Boland had finished testifying in the *Shreck* case and after the prosecutors had raised concerns about the legality of Boland's testimony, it is true, the district court judge said that the images were "prepared expressly at court order." R.77-2 at 141. But that statement cannot change what happened. Boland had already violated § 2252A(a) before he stepped into the courtroom, and at no point before the hearing had the judge given him permission to create and possess new child pornography. All the judge said before the hearing was: "Defendant's expert should be prepared to address [the topic of virtual pornography] with information regarding financial costs of producing virtual images, the amount of time needed to produce an image, as well as the skill level

required in order to achieve results which can pass for 'real' images." R.84-1 at 9. Perhaps appreciating the point, the same court later said (through a different judge; the first one retired) that Boland had no right to possess the images. The court held that Boland, as Shreck's counsel, "can sufficiently make [his] arguments and points relating to the ease of creating digital images that are indistinguishable from actual images, . . . without creating images that depict minors in sexually explicit situations." *Shreck*, slip op. at 17. In the last analysis, this simply is not the case Boland claims it is: that of one federal court authorizing him to do something and of another federal court punishing him for it.

Nor is this a case in which state law authorized Boland's conduct while federal law punished it. Ohio law provides immunity from state child pornography statutes if the images are used for "bona fide judicial purposes." *See* Ohio Rev. Code. Ann. §§ 2907.321(B)(1), .322(B)(1), .322(B)(3). But this immunity does not help Boland. It applies if there was a "bona fide" need to create and possess these images, and Boland has not shown how that was so, given the other means at his disposal to illustrate the difficulty of discerning real from virtual images. And it cannot be invoked in the Ohio courts in this setting. In *State v. Brady*, the defendant argued that the absence of an exemption for possessing these kinds of images in the federal child pornography laws precluded him from receiving a fair trial in state court on state law child pornography charges and required dismissal of the case. 894 N.E.2d at 677. The Ohio Supreme Court disagreed, holding that it was "axiomatic that an expert's conduct must conform to the law." *Id.* at 679.

Neither does the size of the damages award for one of the civil remedies establish that it does not apply in this setting. Section 2255(a) creates a cause of action for anyone "who suffers personal injury as a result of such violation," permits the recovery of "actual damages," then says that actual damages per violation "shall be deemed to [be] . . . no less than $150,000 in value." Perhaps, one might say, Congress could not have meant to treat images of children that were innocent as photographed (and later morphed into pornographic images) the same as images of children that were pornographic from

the outset, particularly if at least $150,000 must be awarded in damages for each violation. That is one way of looking at the all-inclusive nature of the prohibition—that Congress did not expect conduct like Boland's to violate the statute.

But it is not the only way. Congress instead might have been focused on the victims and wanted to avoid painful damages hearings without regard to how the defendants created the images. Once both kinds of images are created and run the risk of becoming accessible to the public, Congress rationally could conclude that all affected children are seriously injured and deserve a high threshold amount of damages. Either way, the words Congress chose offer no basis for drawing this kind of line, and it is not our place to second guess the judgment Congress put into law when we "interpret, rather than author, the federal criminal code." *Oakland Cannabis*, 532 U.S. at 495 n.7.

If we follow the words of the statute where they take us, Boland warns, then all manner of participants in the criminal justice system will become subject to similar civil actions, as they too often "possess" these types of pornography. The argument has more bark than bite. A series of common law immunities prevents such actions, and nothing in the child pornography laws purports to overrule these immunities.

Section 1983 offers a good place to start. Even though § 1983 provides broadly for civil remedies for the violation of constitutional and statutory rights, "[c]ertain immunities were so well established . . . when § 1983 was enacted" that the Court "presume[s] that Congress would have specifically so provided had it wished to abolish them." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Because the "legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities," *Pierson v. Ray*, 386 U.S. 547, 554 (1967), the Court has held that § 1983 "is to be read in harmony with general principles of tort immunities and defenses," *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). These immunities include absolute immunity for judges, grand jurors and prosecutors in carrying out their official duties, *see id.* at 422–24 & n.20, and for defense counsel when they make defamatory statements in court, *id.* at 439 (White, J., concurring in the judgment).

Case: 1:07-cv-02787-DAP Doc #: 90-1 Filed: 01/19/11 1 of 2. PageID #: 1488

There is no reason to think that this "cluster of immunities," *Butz v. Economou*, 438 U.S. 478, 512 (1978), applicable to § 1983 (and *Bivens*) actions, does not apply equally to actions under the child pornography laws. Nothing in the text of that statute suggests Congress intended to "impinge on a tradition so well grounded in history and reason." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). We reached a similar conclusion in *Cullinan v. Abramson*, which held that the civil RICO statute did not abolish common law absolute immunity for judges and prosecutors. "It would be anomalous," we reasoned, "if officials who are immune from suit for alleged violations of the Constitution itself should be denied immunity from suit for alleged violations of a statute that does not incorporate the Constitution—particularly a statute as amorphous as RICO." 128 F.3d 301, 307–08 (6th Cir. 1997).

Absolute immunity, it is true, also extends to witnesses, but it does not apply to the kind of conduct at issue here. The "immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law," and accordingly § 1983 "does not allow recovery of damages against a private party for testimony in a judicial proceeding" even if the testimony constituted perjury (and even assuming the witness was acting under color of state law). *Briscoe v. LaHue*, 460 U.S. 325, 329–30 (1983). But this defense originated as an immunity "only against suits for defamation," *Burns v. Reed*, 500 U.S. 478, 501 (1991) (Scalia, J., concurring in the judgment in part and dissenting in part), and is limited to in-court statements. That some "acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999). Otherwise, if immunity "relate[d] backwards," a witness could shield his illegal conduct from suit simply by presenting the fruits of his conduct at trial. *Gregory v. City of Louisville*, 444 F.3d 725, 738–39 (6th Cir. 2006). Because Boland created and possessed the images prior to testifying in court, he has no claim to any such immunity.

In view of these conclusions, we need not reach other defenses Boland has raised and that the district court has not yet considered. Boland, for example, argues that the

children did not suffer "personal injury," as required under § 2255, because the parties have stipulated that each child does not know about the images. The fact that Congress has set such a sizeable damages threshold ($150,000) may suggest that the personal injury requirement is a serious one. He also argues that none of the plaintiffs can show they are "aggrieved" under § 2252A(f). And it is possible that constitutional defenses remain. We entrust the initial resolution of these issues to the capable hands of the district court judge.

III.

For these reasons, we reverse the district court's judgment and remand the case for further proceedings.