IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PETER LORA, et al | 1:07 CV 2787 |
| V. | JUDGE DAN AARON POLSTER |
| DEAN BOLAND | BRIEF |

Dean Boland respectfully submits the attached memorandum in response tot

his court's order to address the specific legal questions herein.

/s/ Dean Boland

Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-529-9371 ph
866-455-1267 fax
dean@deanboland.com

<u>MEMORANDUM</u>

INITIAL FACTS

The minor plaintiffs have not been harmed by the conduct alleged in the complaint.  The minor plaintiffs are unaware of the existence of the court exhibits.  They are unaware of the existence of this litigation.  The record demonstrates that none of the exhibits were ever displayed or distributed outside of a courtroom.  None of the alleged exhibits are available publicly in any forum.  None of the exhibits are in the possession of anyone except the FBI and perhaps now the plaintiffs' counsel, Mr. Rosenbaum.  If prosecution or court copies of the exhibits are retained by a clerk of courts in any relevant Ohio or federal case, they are sealed.

Both adult plaintiffs have never seen the court exhibits.  The adult plaintiffs' only contact with the court exhibits at issue is having them described to them by an FBI agent in October of 2004 .  Coincidentally, the adult plaintiffs claim no harm by any act alleged in the complaint before the date the FBI described the court exhibits to them.  However, neither adult plaintiff can recall the FBI description of the court exhibits.  Neither adult plaintiff knows whether the FBI description of the court exhibits was accurate or not.

To put a fine point on it, the adult plaintiffs' entire claim for harm is their psychological reaction to the *description* of the court exhibits by an FBI agent which description may or may not have been accurate.  For their claimed harm from hearing this description of unknown accuracy, they seek a $300,000 damage award.

They do not seek these damages from the person that described the exhibits thereby creating the harm.

It is undisputed that defendant's *creation* of the court exhibits pre-dates the first date the adult plaintiffs are alleging harm and/or liability for acts in the complaint.

It is undisputed that defendant's alleged *possession* of copies of the court exhibits ended on June 24, 2005 upon involvement of the FBI in this matter raiding defendant's home and seizing his work laptop computer.

It is undisputed that Defendant did not ever possess images of actual minors actually being harmed or exploited.  At best, he possessed and displayed court exhibits in which it "appeared" that a minor was being harmed.  It should be noted, however, all of these displays of these court exhibits was accompanied by sworn testimony stating that the images were *not* the product of the abuse of any actual minor.  Everyone involved in any court proceeding witnessing such a display heard the Defendant's testimony explaining that the images being displayed did not depict minors being harmed.

## DOES THE STATUTE VIOLATE THE SIXTH AMENDMENT AS APPLIED TO A DEFENSE TRIAL WITNESS WHO DID WHAT DEFENDANT DID?

Defense attorneys cannot commit crimes even under a necessity claim in the defense of their clients.  Therefore, if the court finds that Defendant's;

1. creation of the court exhibits; or

2. possession of the court exhibits; or

3. display of the court exhibits

violates the federal child pornography statutes, the answer to the above issue is no.

There is a district court opinion, currently on appeal to the Sixth Circuit, which answered this question in the following way:

"Therefore, if [An Ohio criminal defense attorney] were to violate 18 U.S.C. § 2252 and/or 18 U.S.C. § 2252A, while participating in a judicial proceeding, he would not be immune from federal prosecution by virtue of Ohio's exception for activities conducted by lawyers." *Boland v. Holder*, 1:09 CV 1614, R. 18 at p.10 attached as Exhibit 1.  In *Boland v. Holder*, the court ruled that any immunity in Ohio's statutes for the creation, possession and display of the same type of court exhibits at issue here, did not extend to defense attorneys in judicial proceedings. In essence, the court ruled that the federal statute applied to defense attorneys during *Ohio* judicial proceedings and preempted any contrary provisions interpreted by any Ohio judge to immunize defense attorneys.  Meanwhile, the Sixth Circuit has held, in this case upon appeal, that no exceptions exist in the *federal* statutes that permit Defendant in this case to create, possess or display the type of exhibits at issue.  *Lora, Bloom and Does v. Boland*, Appellate No. 09-4281.  The Sixth

Circuit also held in *Lora, Bloom, et. al.* that "Individuals cannot defend criminal charges by having their lawyers or witnesses initiate new offenses." Id. at 7.

From the authority mentioned above it is without question that a defense attorney engaging in any conduct that violates the federal child pornography statute, even conduct deemed by that attorney to be indispensable to the defense of his client, is violating federal law. Therefore, if a task is being argued as necessary to the defense, but prohibited by federal law, it would seem the refusal of a court to permit the task to be performed does not violate a defendant's fair trial rights. But, the analysis does not end there.

## WHY THE CREATION AND DISPLAY OF THE COURT EXHIBITS IS INDISPENSABLE TO THE DEFENSE OF CHILD PORNOGRAPHY CASES

The court exhibits at issue were made for one purpose, to be displayed in court as a necessary adjunct to an expert witness' testimony. Specifically, the court exhibits were created to demonstrate that actual images of minors being harmed and images of what "appear to be" minors being harmed are indistinguishable by the human eye. Arguing against the notion that the human eye, specifically a juror's eyes, are capable of reliably making this distinction is necessary to the defense in such cases. Why? Because a body of case law has arisen, entirely without any support from experts in digital imaging, that has declared out of nothing, that "jurors can still decide" if a given image is or is not child pornography. i.e. jurors can still determine, with their eyes, if a given image is an actual minor actually engaged in the conduct depicted or not. The ability of jurors to reliably

perform this function with their eyes is a farce.  It is not true now and has never been true.  The proof of that fact is the lack of a single digital imaging expert witness, even for the government, testifying that the human eye is capable of such distinctions.  In fact, government experts have conceded that the human eye, including jurors' eyes, cannot reliably determine whether a given image captured actual activity or merely appears to capture that activity.  *U.S. v. Frabizio* (August 11, 2006) 2006 WL 2384836 (D.Mass.).

Images that merely "appear to be" child pornography, but are not, are constitutionally protected speech.  *Ashcroft v. Free Speech Coalition* 122 S.Ct. 1389, 535 U.S. 234.  Images that are closer to the real thing are entitled to even more First Amendment protection.  Id.  In prosecutions, the government must prove a given image or video is the real thing, i.e. not merely something that "appears to be" child pornography.  Ideally for the government, a witness who could say, from personal knowledge, that a given image or video is the real thing is best.  In the absence of that evidence, which happens in nearly every case, the prosecution relies on the "jurors can decide" line of cases.  In addition, establishing that the defendant himself may have been unable to know that the images he had were the real thing also requires a demonstration that his eyes were insufficient to make the distinction.  The only way to demonstrate this technological fact is to display for the court, images of constitutionally protected "appears to be" child pornography, mixed in with those that the government claims are the real thing enabling the judge to see the impossibility of making such a distinction with the human eye.  Therefore,

the court exhibits at issue in this case were used for that purpose.  And, they were effective.

The Sixth Circuit opined that other equally effective methods were available to Defendant other than the means chosen to make the court exhibits.  "[I]f Boland wished to use pornography to make the point, he could have morphed an image of an adult into that of a minor engaging in sexual activity." *Lora, Bloom, et al* at 8. The Sixth Circuit is mistaken.

There are three definitions of child pornography in 18 U.S.C. 2252(A)(c). (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

If Defendant accepts the Sixth Circuit's invitation to "morph an image of an adult" and make it indistinguishable from the real thing, it is a violation of the statute, meeting the definition in 18 U.S.C. 2252(A)(b).  The making of an exhibit that is not "indistinguishable" from the real thing is pointless.  In fact, creating such an exhibit helps the prosecution argue that indistinguishable images *cannot be created* when the opposite is true.  The necessity of making such an exhibit could not be more consequential to the defense of such charges.  Use of such exhibits

demonstrates that a defendant could not have known that the images he possessed were not constitutionally protected.  The government knows this and seeks to suppress any such demonstration to maintain prosecutions.  "These images [of morphed adults made to appear they are minors engaged in sexual conduct] are not prohibited by federal law, see 18 U.S.C. § 2252A(c), and are protected by the First Amendment to the extent they are not obscene."  Id.  The Sixth Circuit is only correct in this statement if it is saying that the creation of such court exhibits does not violate 18 U.S.C. 2252(A)(b).  Morphing the image of an adult to make that adult appear to be a minor engaged in sexual activity such that the resulting exhibit is indistinguishable from the real thing does violate the statute as written.  And, how does the Sixth Circuit propose an expert confirm that an image of an apparent adult found online is, in fact, an adult and not a minor of 17 years 364 days of age?  Again, the human eye is incapable of determining whether an image of an apparent adult is an actual adult.  Where does that leave defense counsel and his expert?  There is no demonstration of this fact that can ever be made because all classes of suitable court exhibits are prohibited by the statute.  Morphing adult images is prohibited.  Morphing images of what appear to be minors is prohibited.  There is nothing left, but to abandon the demonstration and, hence, the argument in its entirety.  What ought to disturb this court and the Sixth Circuit is that reality is the opposite of the arguments the government continues to make in these cases.  i.e. that jurors are capable of making these distinctions.  A very short demonstration using the types of court exhibit images that are now outlawed is all that is needed

to convince any viewer of the fallacy of the government's argument.  And, imagine for a moment that a demonstration is made in which the court observes all of the government's relevant witnesses unable to reliably distinguish the real thing from apparent child pornography images in a displayed array.  Nothing is more important to a defendant's case than that demonstration and the realization that the government does not know if their evidence is real and there is no way a jury can perform the now failed exercise any better.  To say that such a demonstration and revelation to a court is not consequential is impossible.  Therefore, it is for this court to say whether a defendant can still get a fair trial knowing that the one demonstration that would reliably lead to a dismissal or perhaps a directed verdict is out of bounds.

Finally, where does that leave the Free Speech Coalition case?  It stood for the First Amendment protection of images or videos of what "appear to be" child pornography.  Given the definitions referenced above, there is no "appears to be" image that can ever be created, possessed or displayed that does not violate the statute.  Free Speech Coalition has effectively been overruled by Congress in its two definitions in 18 U.S.C. 2256(8)(B) and (C).  Neither the plaintiff here nor the government should it weigh in will be able to describe or define a class of images that both "appear to be" child pornography and yet, do not violate the two definitions in 2256(8)(B) and (C).

## THE COURTROOM IS A CONTEXT ENTITLED TO FIRST AMENDMENT PROTECTION FROM THE ENFORCEMENT OF THE FEDERAL CHILD PORNOGRAPHY STATUTES

The U.S. Supreme Court has held the First Amendment protects the creation, possession and display of material deemed contraband under the federal child pornography statute in certain contexts:

**[T]he exhibition of [child pornography images or videos] before a legislative committee studying a proposed amendment to a state law, or before a group of research scientists studying human behavior, could not, in my opinion, be made a crime.  Moreover, it is at least conceivable that a serious work of art, a documentary on behavioral problems, or a medical or psychiatric teaching device, might include a scene from one of these films and, when viewed as a whole in a proper setting, be entitled to constitutional protection.  The question whether a specific act of communication is protected by the First Amendment always requires some consideration of both its content and its context.**  New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), Stevens, J., concurrence).

The consideration of First Amendment protection requires consideration of context.  Id.  Presentation to the legislative branch (Id). and the executive branch (e.g. for law enforcement training and investigation) is protected First Amendment conduct.  A courtroom and judicial proceeding is a context entitled to the same First Amendment protection.

A courtroom is a context the federal statute considered when declining to regulate the display, reproduction, etc. of such conduct within a courtroom.  To find Defendant's conduct was not entitled to First Amendment protection, this court must find that a courtroom is a context that is outside of the First Amendment in this area of the law under these facts while presentation of child pornography images to a legislative body or as part of the training of psychologists, etc. has First Amendment protection.

## ARE THE MINOR PLAINTIFFS PERSONS AGGRIEVED UNDER 18 U.S.C. 2252 (A)(f)

18 U.S.C. 2252(A)(f), in pertinent part, entitles a party "**aggrieved** by conduct that is a **violation of the statute**" to recover damages.  Emphasis added.  The word "aggrieved" is not defined in the statute.  The court can take judicial notice of the dictionary/thesaurus fact that the word aggrieved is synonymous with harm or injury.

"troubled or distressed in spirit

suffering from an infringement or denial of legal rights"  http://www.merriam-webster.com/dictionary/aggrieved.

The minor plaintiffs have stipulated that as of the time of the filing of the complaint in this matter and at the current time, they were not aggrieved and have suffered no damages.  R. 72.  Both of the adult plaintiffs, guardians of the minor plaintiffs, admit the minor plaintiffs have suffered no damages.  Bloom Depo at 18, Lora Depo at 32-32.

Neither of the minor plaintiffs has seen the court exhibits at issue.  Lora Depo at 27, Bloom Depo at 6-8.  Neither have been provided a description of the court exhibits at issue.  Id.  Neither is aware this litigation is ongoing.  Id.  Neither is aware the court exhibits at issue even exist.   Id.  If the guardians have any say in the matter, neither of the minor plaintiffs will ever learn of the existence of the court exhibits or this litigation.  Bloom Depo at 7, Lora Depo at 30-31.

The minor plaintiffs are not persons aggrieved by their own admission.

## DID THE MINORS SUFFER PERSONAL INJURY AS REQUIRED UNDER SECTION 2255 GIVEN THAT THE PARTIES HAVE STIPULATED THAT EACH CHILD DID NOT KNOW ABOUT THE IMAGES

The Sixth Circuit has held that "the fact that Congress has set such a sizeable damages threshold ($150,000) may suggest that the personal injury requirement is a serious one."  Defendant agrees with the Sixth Circuit here.  The appeals court emphasized during oral argument in questioning Plaintiff's counsel that this high level of damages seems directed at a person behind the camera photographing the harm to an actual child or harming that child in front of the camera.  As a result of the stipulations already discussed, there is no evidence in this case that the minors have suffered personal injury.  The statute at issue sets the $150,000 damage award as a floor, not a defined damage award in all cases.  For this court to fix damages at the $150,000 level or any higher level, it must be able to articulate the nature of the damages being compensated.  The plaintiffs' persistent argument that this figure is "liquidated damages" misses the point.  Liquidated damages are those that are set when *there are damages* i.e. *there is harm suffered* but the precise amount of the harm is difficult to calculate.  The plaintiffs' skip over the fact that to interpret this statutory amount as even liquidated damages still requires the court to find that there is some harm for which the calculation of damages is now set by the statute.  The stipulations in the case make the finding of harm impossible.  Further, the only potential personal injury they could suffer from this date forward would be caused by the adult plaintiffs telling the minor plaintiffs about the existence of the court exhibits and/or this litigation.  At that time, a

serious issue of mitigation of damages would arise as well as potential liability for whomever informs the minor plaintiffs of the existence of the court exhibits thereby inviting damages.

Finally, there is no evidence in this case that the minor plaintiffs even know of the existence of the underlying images that the adult plaintiffs offered for sale online.

## THE DEFINITION OF CHILD PORNOGRAPHY PLAINTIFFS RELY ON IS UNCONSTITUTIONAL

This statute involves depictions which are child pornography. To recover under the civil remedies section, the plaintiffs must establish that Defendant engaged in conduct which was a violation of 18 U.S.C. 2252(A). In short, that means that Defendant knowingly mailed, shipped, reproduced, advertised, promoted, presented, distributed, etc. **child pornography**. The Plaintiffs claim that the court exhibits at issue constitute child pornography.

18 U.S.C. 2252(A) has no definitions section. However, 18 U.S.C. 2252(8)(f) contains three definitions of child pornography. Two definitions do not apply to this case. The only definition of contraband covering the court exhibits is 2256(8)(c).

"(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. 2256 (8)(c).

18 U.S.C. 2256(8)(c) defines a category of contraband images as those that are innocent images of an identifiable minor altered to make the minor in that image

"appear to be" engaged in prohibited conduct.  Possession, creation, distribution, etc. of images that "appear to be" child pornography is constitutionally protected and cannot be criminalized.  *Ashcroft v. Free Speech Coalition* 122 S.Ct. 1389, 535 U.S. 234.

The 2256(8)(c) definition was expressly not considered by the court in *Free Speech Coalition*.  Id. at 1397.  18 U.S.C. 2256(8)(c) is unconstitutional for the same reasons that the "appears to be" language formerly in the statute was found unconstitutional.  *Free Speech*.

While the U.S. Supreme Court tersely noted in Free Speech that this definition "comes closer to the interests of actual children," it considered it no further.  Id.  What interest of an actual child could the definition possibly come close to?  We do not need the Supreme Court to answer that question.

This definition criminalizes the creation, possession, copying and distribution of an image that does not record any harm to a minor.  It criminalizes an image that, at most, has the potential to emotionally harm, embarrass or humiliate a minor *if* the minor becomes aware of the image's existence and if that knowledge upsets the minor assuming the person is still a minor at the time of coming into that knowledge.

The statute, however, criminalizes such images at every stage of their existence.  For example, a person in the privacy of their own home creating such an image on their home computer and doing nothing more, has violated the statute. Likewise, the continued retention by a person of such an image, and doing nothing

more, constitutes a prohibited possession of the image.  Obviously, the mere creation of such an image cannot even psychologically harm anyone.  The possession of such an image also cannot harm any person.

This is quite unlike real child pornography which arguably harms a minor *at the moment of its creation*.  (The qualifier "arguably" is used because the statute identifies a minor as anyone under the age of eighteen.  In many states, however, persons under eighteen, age sixteen commonly, are permitted to marry each other or marry persons older than eighteen.  18 U.S.C. 2256(8)(a) criminalizes the production of images or videos of that 16-year-old engaged in consensual sexual activity with his or her spouse.  It is unlikely that any credible expert can explain the harm caused to such a minor under those circumstances.  Even the U.S. Supreme Court has acknowledged that not all depictions of teenagers involved in sex, for example, would qualify as obscene.  See *Free Speech Coalition*.

The statutory definition at issue in this case leaves unregulated a wide range of other manipulated images that have the potential to emotionally harm, embarrass or humiliate a minor.  The statute chooses to proscribe images involving sex claiming to protect the psychological well being of minors.

The statute does not prohibit the creation, possession, copying and distribution of any of these types of images resulting from the modification of an otherwise innocuous image of a minor into...

1.   A minor injecting drugs into their arm.

2.   A minor mutilating an animal, perhaps their own pet.

3.    A minor, who is Catholic displaying an obscene gesture to the Pope

4.    A minor who is an Orthodox Jew holding hands with an obviously Muslim minor.

5.    A minor eating something disgusting.

6.    A minor brutally assaulting their friend, classmate or teacher.

7.    A minor with a swastika tattoo on their face, arm, leg, etc.

8.    A minor with an apparent facial or bodily deformity.

9.    A minor laughing at the site of another person nearby who is injured or dead.

10.   A minor committing an act of vandalism on a school, religious building, neighbor's home, etc.

Only a person's repulsive imagination limits the variety of such images.  Any one of the above described images displayed in the minor's neighborhood or online could create the precise type of emotional harm, embarrassment or humiliation that this statute seeks to prevent.

The statute makes clear that it is not concerned in the first instance about the overall psychological well being of minors.  It is concerned about people expressing ideas about sex and minors using the supposed embarrassment or psychological harm rationale as a justification.  The failure of the existing statute to even meet this "protection of the psychological well being of minors" rationale is borne out by its age limitations.  Despite many states, most in fact, setting the legal age for consensual sexual activity below 18, this statute would criminalize the

manipulation of a sexually active 16-year-old's innocent image to depict them involved in sexual activity.  It would criminalize the creation and possession of such an image even if it were created by the minor him or herself, which argues against the psychological harm rationale acutely.  It would criminalize the creation of such an image even if it were created with the minor's consent again nullifying the psychological harm rationale.  The protection of a minor's psychological health rationale completely falls apart in this circumstances unless the federal government is asserting it knows better than a married, sexually active, consenting 16-year-old whether such an image is harmful to them.  The statute criminalizes the creation of such an image by a 16 or 17-year-old's spouse, as the age for marriage in many states is under 18 and in some as low as 14 with a parent's consent.  The absurd result this statute also includes is the ability to prosecute a sexually active 16-year-old for the possession or creation or distribution of *fake, but realistic looking* images of that person engaged in sexual activity with their legal spouse - an activity that as a married couple they are undoubtedly engaged in and legally so.  If the term narrowly drawn statute means anything, it cannot encompass this definitions section.

This definition outlines the government's desire to punish people expressing a thought the government does not like, i.e. minors and sexual activity.  The U.S. Supreme Court has highlighted other works with the same blanket disagreement that they are child pornography, yet, they meet the definition at issue here.

Only one court has found 18 U.S.C. 2256(8)(c) constitutional as applied to facts distinct from this case.

In *United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005). *Bach* possessed an actual child pornography image.  He then superimposed the face of another minor over the face of the minor in the actual child pornography image.  There is no allegation that Defendant ever superimposed any image of any minor over that of any actual child pornography image.  There is no allegation that Defendant ever possessed any actual child pornography.  There is no allegation that Defendant ever superimposed any image of any minor over that of any other minor in any image.  Bach possessed the images at issue for personal use.  Bach was not acting in the capacity of a court qualified expert witness.  The *Bach* court was worried that 2256(8)(c) trespassed on the First Amendment issues but found *on the facts of that particular case* that the First Amendment did not protect Bach's conduct.  See, *Bach* generally.

2256(8)(c) is unconstitutional on its face and as applied to Defendant's conduct here.  The government's stated goal, protecting the psychological well being of minors, is laudable.  2256(8)(c) does not meet that goal.  Instead, it chooses one type of content that is potentially psychologically harmful to minors, manipulated images depicting fake *sexual activity*, and bans them.   The definition leaves unregulated, a virtually endless range of manipulated images with the same potential for psychological harm.

If 2256(8)(c) is unconstitutional, the civil remedy section of 18 U.S.C. 2252(A) is not triggered by the conduct alleged in the complaint and the complaint fails to comply with Fed.Civ.R. 12(b)(6).

The First Amendment generally prevents government from proscribing speech, *Cantwell v. Connecticut*, 310 U.S. 296, 309-311 (1940)), or even expressive conduct *Texas v. Johnson*, 491 U.S. 397, 406 (1989), because of disapproval of the ideas expressed.  Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people.  *Ashcroft v. ACLU, et al* 542 U.S. 656,  124 S.Ct. 2783.

To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid, *R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538 (1992), and that the Government bear the burden of showing their constitutionality.  *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).  This is true even when Congress has previously attempted to find a constitutional means to restrict, and punish, the speech in question.  *ACLU, et al* at 660.

The ban on child pornography images was upheld in Ferbier because of the harm to a child necessary to **create** them.  *Ferber*.  *Ferber* suggested that virtual images would be an acceptable First Amendment protected replacement for those requiring harm to a child to create.  "*Ferber* did not hold that child pornography is by definition without value.  It recognized some works in this category might have significant value…but relied on virtual images--the very images prohibited by the

CPPA--as an alternative and permissible means of expression….Because *Ferber* relied on the distinction between actual and virtual child pornography as supporting its holding, it provides no support for a statute that eliminates the distinction and makes the alternative mode criminal as well. Pp. 1401-1402." *Free Speech Coalition* at 1394.  Likewise, here, this alternative form of apparent child pornographic image, especially when limited to its use as a court exhibit, is an alternative mode that 2256(8)(c) criminalizes, yet the First Amendment protects.

The government's attempt to ban images that do not harm any minor in their creation was struck down. Id.  "In contrast to the speech in <u>Ferber</u>, speech that itself is the record of sexual abuse," the conduct alleged in the complaint records no crime and creates no victims by its production.  The plaintiffs have no argument that the *creation* of the court exhibits harmed anyone.  Their depositions underline this point as they are not claiming any harm before the date when they were informed of the existence of some exhibit involving some part of the image of their ward.  This is especially the case since the minors in this matter are wholly unaware of the existence of the court exhibits.  In addition, the plaintiffs have produced no evidence the court exhibits are publicly available.

The creation of exhibits defined in 18 U.S.C. 2256(8)(c) are "not 'intrinsically related' to the sexual abuse of children, as were the materials in *Ferber*."  Id at 1402.  The plaintiffs make no argument that the court exhibits at issue *are* intrinsically related to the sexual abuse of children.

The First Amendment protects images that "appear to depict" prohibited conduct involving a minor. *Free Speech Coalition*. 2256(8)(c) category images such as the court exhibits at issue here "appear to depict" prohibited conduct involving a minor. The court exhibits are not a record of an event that occurred. The creation itself of the court exhibits has caused no injury to any plaintiff as they were created before October 2004 and both adult plaintiffs testified there was no injury to either of them before October 2004. Lora Depo at 31, Bloom Depo at 18. The possession of the court exhibits harmed no one. The plaintiffs do not allege that defendant's possession of the court exhibits somehow harmed them.

/s/ Dean Boland
Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-529-9371 ph
866-455-1267 fax
dean@deanboland.com

<u>Proof of Service</u>

A copy of the foregoing will be served on all parties this 30th of June 2011 by operation of the court's electronic filing system.

/s/Dean Boland
Dean Boland