**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE *et al.,* | ) | CASE NO. 1:07cv2787 |
| | ) | |
| | ) | |
| | ) | |
| | ) | JUDGE  DAN A. POLSTER |
| | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | **Plaintiffs' Memorandum Concerning** |
| | ) | **Outstanding Issues as Ordered by the** |
| | ) | **Court** |
| | ) | |
| vs. | ) | |
| | ) | |
| DEAN BOLAND | ) | |
| | ) | |
| *Defendant* | ) | |

Now come the plaintiffs, as directed by the court and for the reasons set forth below, and state that they should be awarded partial summary judgment as requested in their Motion for Partial Summary Judgment (Document 73). This includes, at a minimum, damages in the amount of $300,000.00, injunctive relief, attorney's fees, and costs. The citations to exhibits in this memorandum refer to the exhibits[1] appended to Plaintiff's Motion for Partial Summary Judgment (Document 73 and Exhibits). Said motion and the exhibits appended thereto are incorporated herein by reference even though not reproduced a second time and renewed hereby.

---

[1] Exhibit 5 has been updated and has been refilled with this memorandum

Respectfully submitted,

/s/ *Jonathan E. Rosenbaum*
Jonathan E. Rosenbaum (Ohio Bar Reg. No. (021698)
Attorney for Plaintiffs
230 Third Street, Suite 104
Elyria, Ohio 44035
(440) 322-7972
Fax (440) 322-7972
Email: jerosenbaum@windtream.net

**Proof of Service**

A true and accurate copy of the foregoing and the attached memorandum has been electronically served this 14th day of July, 2011 by the Court's electronic filing system.

/s/ Jonathan E. Rosenbaum_____
JONATHAN E. ROSENBAUM
Supreme Court Reg. No. 0021698
Attorney for Plaintiffs

**Memorandum**

A. Statement of the Case

On September 14, 2007, Plaintiffs filed this case seeking compensation pursuant to 18 USC § 2252 A (f), 18 USC § 2255, and various state law claims. On September 1, 2009, this court granted Defendant's Motion for Summary Judgment and denied Plaintiffs' Motion for Partial Summary Judgment. This court also dismissed Plaintiffs' state law claims at the same time. Plaintiffs timely appealed this ruling. On January 19, 2011, the Sixth District Court of Appeals reversed the decision granting Defendant's Motion for Summary Judgment and reinstated Plaintiffs' case.

On May 2, 2011 a pretrial conference was held wherein the court indicated that the minor plaintiffs were entitled to summary judgment in the amount of $300,000.00 unless Defendant could persuade the court that he could prevail upon four remaining issues. The court directed the Defendant to file a memorandum, with Plaintiff's counsel to respond, addressing these four issues:

"(1) Does the statute violate the Sixth Amendment as applied to a defense trial witness who did what Defendant Boland did;

(2) Are the plaintiff minors "persons aggrieved" under section 2252A(f);

(3) Did the minors suffer "personal injury" as required under section 2255 given that the parties have stipulated that each child did not know about the images; and

(4) Does the definition of child pornography, section 2256(8)(C), violate the First Amendment?"[2]

B. Statement of Fact

On April 5, 2007, the defendant in this case, Dean M. Boland, entered into a pre-trial diversion agreement with the United States of America.[3] Defendant has admitted in his discovery responses that the factual statements contained in the pre-trial diversion agreement are in fact true.[4]

In the pre-trial diversion agreement, Boland accepted responsibility for and stipulated to downloading the images of "four real, identifiable minors in innocent poses from the internet."[5] Defendant accepted responsibility for, stipulated to, and admitted that he "digitally manipulated

---

[2] Docket Text 5/2/11
[3] This agreement is attached as Exhibit "1" to Document 73
[4] Boland Response to Request for Admission No. 1; Boland discovery responses are attached as Exhibit "2" to Document 73
[5] See Annex A to Exhibit "1" at paragraph no. 1

such images and combined them with other images to create a series of visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors was engaged in sexually explicit conduct."[6]

Defendant has admitted this conduct in his discovery responses as well.

In his response to Request for Admission No. 2, Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "A") of Plaintiff Jane Doe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[7]

In his response to Request for Admission No. 3, Defendant admitted that he "created a visual depiction using a likeness (depicted in attached Exhibit "B") of Plaintiff Jane Doe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be engaging in fellatio."[8]

In his response to Request for Admission No. 4, Defendant admitted that he "created a visual depiction using a likeness of Plaintiff Jane Roe that [he] downloaded from Istockphoto.com on February 13, 2004 at 3:12 PM showing her to be naked and between two males who are ejaculating on her torso."[9]

Between March of 2004 and January of 2005, Defendant transported the visual depictions to and/or displayed the visual depictions in courts in Summit, Columbiana, Hamilton, and Warren Counties, in the State of Ohio, as well as in the U.S. District Court in Tulsa Oklahoma.[10] Defendant has also admitted that he "gave CD(s) containing exhibits which were made by [him] utilizing the image(s) or depiction(s) of Jane Doe and/or Jane Roe to defense counsel and/or

---

[6] See Annex A to Exhibit "1" at paragraph no. 2
[7] Exhibit "2" at Request for Admission No. 2
[8] Exhibit "2" at Request for Admission No. 3
[9] Exhibit "2" at Request for Admission No. 4
[10] See Annex A to Exhibit "1" at paragraph No. 3; Exhibit "2" at Response to Interrogatories Nos. 1 and 5

4

court personnel."[11] Therefore, it can not be disputed truthfully that these images were shown/distributed/published outside of a courtroom.

Defendant's conduct was the subject of an investigation by the FBI. A summary of this investigation is set forth in the affidavit which supported the search warrant executed at Defendant's home and place of business. This affidavit[12] was incorporated as if fully rewritten in the Plaintiff's Motion for Summary Judgment[13] and supports the allegations of the complaint rendering them undeniable.

Defendant's conduct violated the criminal prohibitions of 18 USC 2252(A) (a) and (b) and 18 USC 2256. Defendant has admitted violating 18 USC 2252(A) (a) (5)(B).[14]

By committing the acts set forth above, Defendant used an aspect of Jane Doe's and Jane Roe's "persona," as defined by Ohio Rev. Code § 2741.01 (A), for a commercial purpose, as defined by Ohio Rev. Code § 2741.01 (B) in violation of Ohio Rev. Code § 2741.02 (A).

The parties have stipulated[15] that "The minor plaintiffs do not know about the pictures that are the subject of this case and have suffered no present psychological harm."[16] At no time have the plaintiffs ever stipulated that the minor plaintiffs "have never suffered any personal injury or damages resulting from conduct alleged in the complaint." Plaintiffs have stipulated only that the minor plaintiffs have been shielded from the knowledge of the defendant's misconduct. The minor plaintiffs have suffered personal injury and damages. This harm arose from the date the images depicting them were created. The images themselves cause, caused, and

---

[11] Exhibit "2" at Request for Admission No. 5

[12] Original on file with the Clerk of Courts for the Northern District of Ohio

[13] Exhibit "3"

[14] See Annex A to Exhibit "1" at paragraph No. 1

[15] Document 72 states "1. The minor plaintiffs have no knowledge at this point of being aggrieved in any way, including, but not limited to psychologically, physically, financially, or via damage to their reputation as a result of any conduct of defendant as alleged in the complaint. 2. This stipulation explicitly does not pertain to potential future harm the plaintiffs may suffer as a result of the conduct of the defendant as alleged in the complaint."

[16] Document 65

will cause harm. Defendant's refusal to acknowledge the harm the images caused to the minor plaintiffs is a subterfuge and a failed exercise in semantics designed to extricate himself from liability for his misconduct.

To date Plaintiffs have incurred $41,700.00 in attorney's fees and $1,514.11 in expenses[17] in the prosecution of this case.

C. Argument and Law

(1) Does the statute violate the Sixth Amendment as applied to a defense trial witness who did what Defendant Boland did?

In an effort to address this issue as ordered, Plaintiffs have assumed that the "statute" the court is referring to are the statutes that impose civil liability upon the Defendant for the creation of the exhibits depicting the minor plaintiffs in the defense of another accused of a crime.

Firstly, Defendant has no standing to assert the Sixth Amendment constitutional guarantees of another individual charged with a crime. Assuming arguendo that the "statute" did in fact inhibit a criminal defendant's ability to mount a defense, Defendant, as an expert or defense counsel, has no standing to assert such a claim on behalf of a criminal defendant. The criminal defendant must do so in the case in which he/she is charged.

In any event, this issue has been decided adversely to Defendant. Defendant has conceded this in his brief. The Sixth Circuit has already held that the application of child pornography laws does not violate the Constitution even if applied to a defense trial witness:

> A separate statute shows the extent to which Congress means business when it comes to enforcing the child pornography laws. The Adam Walsh Child Protection and Safety Act of 2006 says that, in any criminal proceeding, child pornography "shall remain in the care, custody, and control of either the Government or the court." Pub. L. No. 109-248, § 504 (codified at 18 U.S.C. § 3509(m)). Even though Criminal Rule 16(a)(1)(E) usually allows defendants to copy material documents in the government's possession, the Act requires federal

---

[17] Updated Exhibit "5" filed herewith

courts to deny these requests when the materials contain child pornography, instead permitting the defendant only to have an "ample opportunity for inspection, viewing, and examination at a Government facility." 18 U.S.C. § 3509(m)(2)(B). If Congress did not want defense counsel to view, let alone possess, existing child pornography without governmental oversight, it is hardly surprising that Congress opted not to permit expert witnesses to create and possess *new* child pornography.

Without an exemption for this kind of expert testimony, Boland argues, a defendant's right to put on an effective defense under the Sixth Amendment would be hindered, requiring a narrowing of the civil-remedy provisions under the constitutional avoidance doctrine. Neither premise of the doctrine applies. "[T]he canon of constitutional avoidance has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494 (2001). And no constitutional principle at any rate allows a criminal defendant to defend *one* criminal charge by urging his lawyer or witness to commit *another*. Otherwise, an individual on trial for a murder-by-stabbing charge could try to prove that the knife was not long enough to kill someone by using it to stab someone else in the middle of the trial. Or individuals on trial for counterfeiting or manufacturing drugs might be able to make more of the contraband as part of a defense. *See State v. Brady*, 894 N.E.2d 671, 679 (Ohio 2008). If the Constitution is not a "suicide pact," *Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting), it is not an instrument of crime either.

Even when federal law allows participants in the criminal justice system to possess contraband, it does not allow the creation and possession of *new* contraband. *Cf.* 21 U.S.C. § 885 (immunizing federal, state and local officials from civil or criminal liability when they are "lawfully engaged in the enforcement" of federal drug laws). Individuals cannot defend criminal charges by having their lawyers or witnesses initiate new offenses. *Cf.* ABA Model Code Canon 7, DR 7-102 ("In his representation of a client, a lawyer shall not . . . [k]nowingly engage in . . . illegal conduct.").

Nor do reasonable limits on defense counsel's access to the child pornography at issue in a criminal case, whether old or new, raise constitutional concerns. In *United States v. Paull*, the defendant argued that the absence of an exception in § 2252A for his counsel to possess child pornography violated his right to a fair trial. 551 F.3d 516, 524 (6th Cir. 2009). Noting that the defendant had made "no allegations that the government used the law to disrupt his defense," we disagreed. *Id.* at 525. The defendant "could have worked with the district court and the government to ensure that he could put on the defense he wanted. But he chose not to." *Id.*; *see also United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (restrictions on a defense expert's ability to possess child pornography do not violate the fair trial rights of defendant); *United States v. Shrake*, 515 F.3d 743, 745–46 (7th Cir. 2008) (the Walsh Act does not violate a defendant's Fifth and Sixth Amendment rights).

*Doe v. Boland,* 630 F.3 491, at 495-6 (6th Cir. 2011. Plaintiffs respectfully state that this court is bound by the Sixth Circuit's ruling on this issue. Defendant also lost this very same argument in *Boland v. Holder,* USDCNDO Case No.: 1:09 CV 1614 at 14-17[18] and the doctrine of *res judicata* prohibits reconsideration of it in this case.

(2) Are the plaintiff minors "persons aggrieved" under section 2252A(f)?

    Minor Plaintiffs Jane Doe and Jane Roe are entitled to civil relief, as set forth in 18 USC § 2252A (f) (2),[19] including injunctive relief, compensatory and punitive damages, costs, and reasonable expert and attorney's fees because they are persons "aggrieved" by reason of the conduct prohibited under 18 USC § 2252A (a) or (b). Since the Defendant has admitted to violating 18 USC § 2252A (a) (5)(B) using the likenesses of the minor plaintiffs in his pre-trial diversion agreement and admitted using the likenesses of the minor plaintiffs to commit actions which violate 18 USC § 2252A (a) and (b) in his discovery responses, then minor plaintiffs are entitled to summary judgment on the issue of liability and for injunctive relief, punitive damages, costs, and reasonable expert and attorney's fees on the First and Fifth Causes of Action because

---

[18]This opinion  is in the record of this case as Attachment 1 to Defendant's Brief  (Docket No. 98)

[19] 18 USC § 2252A (f) (2) states:

  "f) Civil Remedies. -    (1) In general. - Any person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for the relief set forth in paragraph (2).

    (2) Relief. - In any action commenced in accordance with paragraph (1), the court may award appropriate relief, including –

    (A) temporary, preliminary, or permanent injunctive relief;

    (B) compensatory and punitive damages; and

    (C) the costs of the civil action and reasonable fees for attorneys and expert witnesses.

there are no legitimate questions of fact and Defendant can not offer "evidence on which the jury could reasonably find for the defendant."

Congress uses the term "aggrieved" when it intends to cast the widest net possible to ensnare any and all possible misconduct. *Federal Election Comm'n v. Akins, 118 S.Ct. 1777, 524 U.S. 11 at 12 (1998)* ( "History associates the word "aggrieved" with a congressional intent to cast the standing net broadly—beyond the common-law interests and substantive statutory rights upon which "prudential" standing traditionally rested"). To claim that a minor is not aggrieved by the unauthorized use of the minor's likeness to create sexually explicit images because the minors are not aware of the depiction is both callous and farfetched. A minor whose trust funds are stolen by her guardian is clearly aggrieved by the conduct even if the minor is incompetent and does not realize what has happened. So it is with this case.

As discussed below the harm sought to be prevented by Congress which is caused by morphing an identifiable likeness of a real child is different than the traditional mental and physical anguish suffered by a victim who has been molested and/or participated in the making of the image. Even though less severe, it is harm none the less. The very act of stipulating that the minor plaintiffs "have no knowledge at this point of being aggrieved"[20] acknowledges and proves that the minor plaintiffs were in fact aggrieved.

Congress has prohibited the act of morphing the likenesses of real and identifiable minors into sexually explicit images and provided a civil remedy for this misconduct. As such, Defendant's admitted conduct has violated this prohibition and the minor plaintiffs, as victims of this criminal conduct, must be aggrieved.

---

[20] Document 72 states "1. The minor plaintiffs have no knowledge at this point of being aggrieved in any way, including, but not limited to psychologically, physically, financially, or via damage to their reputation as a result of any conduct of defendant as alleged in the complaint. 2. This stipulation explicitly does not pertain to potential future harm the plaintiffs may suffer as a result of the conduct of the defendant as alleged in the complaint."

(3) <u>Did the minors suffer "personal injury" as required under section 2255 given that the parties</u> <u>have stipulated that each child did not know about the images?</u>

Pursuant to 18 USC § 2255,[21] Plaintiffs Jane Doe and Jane Roe are entitled to civil relief as specifically set forth therein including actual damages deemed to not be less than $150,000.00 each, costs, and attorney's fees because they are minors who are victims of a violation of 18 USC § 2252A who suffered personal injury.

Since the Defendant has admitted to violating 18 USC § 2252(A) (a) (5)(B) in his pretrial diversion agreement and admitted to committing actions which violate violating 18 USC § 2252A (a) and (b) in his discovery responses, then minor plaintiffs are entitled to summary judgment on the issue of liability on the Second and Sixth Causes of Action because there is no legitimate question of fact. Additionally the damages are deemed to be at least $150,000.00 for each person injured, costs of the suit, and reasonable attorney's fees by this statute. Attorney's fees, costs and expenses now total $41,700.00 in time and $1,514.11 in expenses.[22]

Although it has been stipulated that neither minor Plaintiff is aware that their likeness has been used by the Defendant to create a sexually explicit image, they are still entitled to the liquidated damages as a matter of law. The statute itself provides that the damages need not occur while the victims are minors, thereby recognizing future injury which is redressable now. This is a result of the fact that it is well recognized and generally accepted that just the creation

---

[21] 18 USC § 2255. states:

Civil remedy for personal injuries

(a) In General. - Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

[22] Updated Attested to Bill For Attorney's Fees, Costs, and Expenses attached as Exhibit "5"

of such an image is damaging to the child, is punishable criminally, and will lead to future injury. Every time the image is displayed, regardless of the purpose of the showing, the child is victimized whether the child is aware of the display or not. It is not an element of this cause of action or the underlying criminal prohibitions that the minor be aware of the image or its display. The conduct to be deterred and punished is purely that of Defendant. The Eighth Circuit has addressed these concerns when it opined:

> In *New York v. Ferber*, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children. The distribution of child pornography is "intrinsically related" to the sexual abuse of children because it creates a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation," and the production of pornography requiring the sexual exploitation of children cannot be "effectively controlled" unless that network is closed. *Id*. at 759, 102 S.Ct. 3348. In *Free Speech Coalition* the Court again focused on these harms, stating that "[l]ike a defamatory statement, each new publication ... would cause new injury to the child's **reputation** and emotional well-being." 535 U.S. at 249, 122 S.Ct. 1389.

>          *       *       *

> Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. **He is thus victimized every time the picture is displayed.** Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation. In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.

> Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of

> real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber.*

*United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005) *cert denied* 546 U.S. 901, 126 U.S. 243 (2005) [Emphasis added].

The Eighth Circuit upheld the criminal conviction of Bach because he "morphed" the innocent image of an identifiable child into "a lascivious pose" thereby creating "an identifiable child victim of sexual exploitation" just as Defendant has done in this case. The "government's compelling interest in protecting a minor's physical and psychological well being" applies equally to all minor victims of sexual exploitation whether they are aware of the existence of the image or not. This includes injury to the child's "reputation." Bach unsuccessfully relied upon the argument that the government never proved the sexually explicit image incorporating "AC's" face was that of a real and identifiable minor. The Eighth Circuit found that the crime occurred once the morphed image was created using the face of a real and identifiable minor. There is no indication in the opinion that "AC" knew that his likeness had been used, yet the conviction was upheld as constitutionally firm. The "emotional well being" and "reputation" of the two minor plaintiffs in this case is threatened as a result of the creation of the images and the "interests of real children are implicated" justifying application of the civil remedy set forth in 18 USC § 2255.

If the criminal prohibitions of the United States Code apply in "morphing" situations wherein the victim is unaware of the image, then so must the civil remedies applicable to the same misconduct. It is respectfully suggested to this court that the deemed damages clause of 18 USC § 2255 is proof that Congress intended to punish offenders/compensate minor victims

regardless of whether the victims were aware of being sexually exploited or if the personal injury occurred while they were still minors.

The legislative history supports the proposition that "personal injury" includes reputational/property damage in addition to physical injury and emotional distress. "Property damage" is included in the term "personal injury" as utilized by Congress in 18 USC § 2255. *See:* Section 4 Civil Remedies of the Congressional Record for The Pornography Victims Protection Act[23] which states that "any victim of a violation of ss2251 or 2252 who suffers physical injury, emotional distress, or property damage as a result of such violation may sue to recover damages in any appropriate district court * * * and shall recover triple damages if a violation is found." The inclusion of the term "property damage" in conjunction with terms "physical injury" and "emotional distress" demonstrates that Congress meant to provide a remedy for more than physical injury or emotional distress when it utilized the term "personal injury." Property damage traditionally includes reputational damage because one's reputation is part of one's property. When property damage occurs it is deemed to have a minimum value of $150,000.00.

The Second Circuit has also recognized that the harm sought to be prevented by Congress and caused by the morphing of images of identifiable children to depict sexually explicit conduct includes damage to the child's reputation. The Second Circuit held:

> Defendant-Appellant, John Hotaling, appeals from a judgment of the United States District Court for the Northern District of New York (Mordue, J.) of conviction for violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(C) and imposition of a sentence based on a specific offense characteristic sentencing enhancement pursuant to U.S.S.G. § 2G2.2(b)(4). The district court concluded that the statute prohibiting possession of child pornography was not unconstitutionally overbroad as applied to defendant, nor unconstitutionally vague, and also applied a sentence enhancement on

---

[23] Attached as Exhibit "4" in its entirety to Document 73

the basis of a photograph depicting sadistic or masochistic imagery. *United States v. Hotaling*, 599 F.Supp.2d 306, 322 (N.D.N.Y. 2008). We conclude that the district court was correct in holding that child pornography created by digitally altering sexually explicit photographs of adults to display the face of a child is not protected expressive speech under the First Amendment. We also conclude that the application of the sentence enhancement based on a photograph that has been modified to portray a partially nude minor, restrained by handcuffs, a dog collar and leash, tied to a dresser was proper. Accordingly, we affirm.

On December 20, 2007, Hotaling was charged in a one-count indictment with possession of child pornography under 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A) and (C). Hotaling admitted to creating and possessing sexually explicit images of six minor females (Jane Does # 1–6) that had been digitally altered by a process known as "morphing." *Hotaling*, 599 F.Supp.2d at 310. In this case, the heads of the minor females had been "cut" from their original, non-pornographic photographs and superimposed over the heads of images of nude and partially nude adult females engaged in "sexually explicit conduct" as defined by 18 U.S.C. § 2256(2). One of the photographs had Hotaling's face "pasted" onto that of a man engaged in sexual intercourse with a nude female who bore the face and neck of Jane Doe # 6. At least one additional photograph had been altered to make it appear that one of the minor females was partially nude, handcuffed, shackled, wearing a collar and leash, and tied to a dresser. Hotaling obtained the images of Jane Doe # 1 from a computer he was repairing for her family and the images of Jane Does # 2–6 from photographs taken by his daughters and their friends. **While there is no evidence that defendant distributed or published the morphed photographs via the internet, some of the photographs had been placed in indexed folders that could be used to create a website.** They were encoded in Hypertext Markup Language ("HTML"), bore annotations that they were "[g]enerated with Arles Image Web Page Creator, " and labeled with the internet uniform resource locator ("URL"), "www.upstateteens.com." All of the HTML images were titled "[Jane Doe] Upstate NY's Hottest Teen" and bore the actual first name of the minor depicted.

The Supreme Court has long recognized that the government has a compelling interest in protecting minors from becoming victims of child pornography because of the physiological, **reputational** and emotional harm that distribution of such material imposes on them. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002). This distribution is "intrinsically related" to the sexual abuse of children, *New York v. Ferber*, 458 U.S. 747, 758–59 & n.10 (1982), and it is settled law that child pornography is not protected expressive speech under the First Amendment. *Id.* at 758–60; *see Free Speech Coal.*, 535 U.S. at 246

(listing categories of speech that are not protected under the First Amendment). In *Ferber*, **the Supreme Court recognized that minors are harmed not only during the creation of child pornography, but are also haunted for years by the knowledge of its continued circulation.** 458 U.S. at 759 n.10. These emotional and **reputational** harms are severe enough to render laws criminalizing the possession of child pornography constitutional in the interest of "stamp[ing] out this vice at all levels in the distribution chain." *Osborne v. Ohio*, 495 U.S. 103, 109–11 (1990) (noting that most of the child pornography industry is underground). The underlying inquiry is whether an image of child pornography implicates the interests of an actual minor. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 289 (2008) ("the child-protection rationale for speech restriction does not apply to materials produced without children"); *Free Speech Coal.*, 535 U.S. at 258 (holding that "virtual" child pornography, which did not use images of actual minors, was protected expressive speech under the First Amendment because it did not harm any real children through its production and continued existence). The Supreme Court has stated, albeit in dicta, that "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*." *Id.* at 242. Additionally, "[i]n the case of the material covered by *Ferber*, the creation of the speech is itself the crime of child abuse." *Id.* at 254.

*       *       *

We agree with the Eighth Circuit that the interests of actual minors are implicated when their faces are used in creating morphed images that make it appear that they are performing sexually explicit acts. In this case, even though the bodies in the images belonged to adult females, they had been digitally altered such that the only recognizable persons were the minors. Furthermore, the actual names of the minors were added to many of the photographs, making it easier to identify them and bolstering the connection between the actual minor and the sexually explicit conduct. **Unlike the computer generated images in *Free Speech Coalition*, where no actual person's image and reputation were implicated, here we have six identifiable minor females who were at risk of reputational harm and suffered the psychological harm of knowing that their images were exploited and prepared for distribution by a trusted adult.**

*United States v. Hotaling,* 634 F. 3d 725 at 728-30 (2nd Cir. 2011) [emphasis added].

Both the Second and Eighth Circuit Courts focused upon and recognized the Supreme Court's concern that harm is caused by both the creation and the distribution of the explicit

image. Additionally, both circuit courts and the Supreme Court have opined that reputational harm is caused by the distribution of the explicit images. It was sufficient in *Hotaling* that the children's reputations were placed at risk with no known distribution/publication. All three courts recognized that reputational injury is separate and distinct from emotional injury. The harm caused by the creation and potential distribution to the reputational component of the injury is not dependant upon the victims being aware of the existence of the image as is the emotional aspect of the injury caused.

The minor plaintiffs were clearly injured as a result of the damage to their reputations. The risk of future emotional and reputational injury exists as a result of the creation and distribution of these images which have the potential to surface and spread over the internet at any time. Defendant clearly distributed/published the morphed likenesses of the minor plaintiffs to a greater extent than was done in *Hotaling.*

It would be of little or no consolation to the minor plaintiffs to know that those who viewed their likenesses in sexually explicit images to date were believed to be only personnel who were connected to a court case and not child pornographers. The Defendant has admitted that he sent these images to defense lawyers, prosecutors, and court personnel. There can be no guarantee that all of the individuals receiving and viewing these images dealt with them responsibly.

Congress has recognized and dealt with this vast potential for future and uncontrollable damages by enacting the deemed damages provision of the law. Congress undoubtedly recognized the difficult nature in ascertaining who actually has viewed the images over the internet when it assessed a $150,000.00 threshold for damages. There is nothing unjust or unfair about imposing the deemed minimum damages under the circumstances in this case. The act of

creating the images and exposing these children to this type of harm was more than reckless and certainly deserves the imposition of punitive damages. Congress has intentionally streamlined the process for victims of this type of activity.

As the Sixth Circuit recognized, the deemed damages clause may have been enacted by Congress to help the minor victims avoid the stigma and embarrassment of trial. Indeed, it can be reasoned that Congress felt that $150,000.00 should be the starting point for fair compensation for such egregious conduct akin to the rationale behind punitive damages for intentional torts.

Congress chose to subject the offender who morphs the likenesses of real and identifiable children into sexually explicit images to the same civil and criminal penalties as those who actually use children in creating sexually explicit images. Congress is presumed to know what it is doing and no court has the power to second guess its clear legislative mandate on this issue.

It was never proven that Hotaling shared a morphed image of a real minor with anyone unlike the Defendant. Yet no one would ever question that his "creations" injured the minor victims and that he should be severely punished. So it is with the Defendant who brazenly attempts to elevate his conduct above that of the pedophile. At best, Defendant exposed the minor plaintiffs to the same risk of emotional injury and to the same reputational injury in an effort to defend a pedophile as pedophiles, like Hotaling, do in creating the same type of images. The distinction is slight and is meaningless if you happen to be the minor he chooses to include in his images. No one, whether expert, judge, educator, mental health professional, clergy, attorney, or other, has the right to demean another human being by placing their likeness in a sexually explicit image without their consent to do so. It is an abomination to do so to a child.

Hence, imposition of the minimum deemed damages in the amount of $150,000.00 can not properly be viewed as draconian or crushing.

The minor plaintiffs need not be aware of the injury to their reputation for it to have occurred. Defendant should not be permitted to profit from the fact that to date the adult plaintiffs have been able to shield the minor plaintiffs from the emotional injury that will inevitably result upon learning what has been done to them. If the criminal prohibitions of the United States Code apply in "morphing" situations, without offending the Constitution, then so must the civil remedies applicable to the same misconduct. It is respectfully suggested to this court that the deemed damages clause of 18 USC § 2255 is proof that Congress intended to punish offenders/compensate minor victims who suffer personal injury regardless of whether the victims are aware of being sexually exploited .

(4) Does the definition of child pornography, section 2256(8)(C), violate the First Amendment?

18 USC § 2256 (8)(C) defines child pornography as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where … (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." Some of the definitional sections of 18 USC § 2256 have been found to be unconstitutional because they implicated free speech by prohibiting images that "appear to depict" minors when no minors were involved or implicated in the creation of the image. These concerns do not exist under the facts in this case.

The Eighth and Second Circuits, following the dicta of the Supreme Court, have both found 18 USC § 2256 (8)(C) to be constitutional upon facts that are not legally distinguishable

from this case. Both circuit courts opined that the First Amendment does not protect the morphing of the likenesses of real and identifiable minors into images depicting sexually explicit conduct as free speech.

> The Supreme Court has long recognized that the government has a compelling interest in protecting minors from becoming victims of child pornography because of the physiological, reputational and emotional harm that distribution of such material imposes on them. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002). This distribution is "intrinsically related" to the sexual abuse of children, *New York v. Ferber*, 458 U.S. 747, 758–59 & n.10 (1982), and it is settled law that child pornography is not protected expressive speech under the First Amendment. *Id.* at 758–60; *see Free Speech Coal.*, 535 U.S. at 246 (listing categories of speech that are not protected under the First Amendment). In *Ferber*, the Supreme Court recognized that minors are harmed not only during the creation of child pornography, but are also haunted for years by the knowledge of its continued circulation. 458 U.S. at 759 n.10. These emotional and reputational harms are severe enough to render laws criminalizing the possession of child pornography constitutional in the interest of "stamp[ing] out this vice at all levels in the distribution chain." *Osborne v. Ohio*, 495 U.S. 103, 109–11 (1990) (noting that most of the child pornography industry is underground). The underlying inquiry is whether an image of child pornography implicates the interests of an actual minor. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 289 (2008) ("the child-protection rationale for speech restriction does not apply to materials produced without children"); *Free Speech Coal.*, 535 U.S. at 258 (holding that "virtual" child pornography, which did not use images of actual minors, was protected expressive speech under the First Amendment because it did not harm any real children through its production and continued existence). **The Supreme Court has stated, albeit in dicta, that "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*."** *Id.* at 242. Additionally, "[i]n the case of the material covered by *Ferber*, the creation of the speech is itself the crime of child abuse." *Id.* at 254.

> Hotaling asserts that the morphed child pornography he created using the faces of actual minors and the bodies of adult females is protected speech under the First Amendment and therefore his conviction under 18 U.S.C. § 2256(8)(C) is unconstitutional as applied to him. He contends that the interests of actual children were not implicated because they were not engaged in sexual activity during the creation of the photographs. Hotaling wishes us to differentiate the child pornography he created from the

pornography addressed in *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), an Eighth Circuit case, which held that morphed images utilizing the bodies and faces of actual minors were not protected expressive speech.[3] In *Bach*, the defendant morphed the face of a known minor onto a lasciviously posed body of another minor. *Bach*, 400 F.3d at 632. Hotaling's proposed differentiation, however, is misplaced because in *Bach* the court based its decision on the presence of a minor's recognizable face, finding that, "[a]lthough there is no contention that the nude body actually is that of [the minor] or that he was involved in the production of the image, a lasting record has been created of [him], an identifiable minor child, seemingly engaged in sexually explicit activity." *Id.* The court went on to hold that "[t]he interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of [a minor] in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*." *Id.*

**We agree with the Eighth Circuit that the interests of actual minors are implicated when their faces are used in creating morphed images that make it appear that they are performing sexually explicit acts**. In this case, even though the bodies in the images belonged to adult females, they had been digitally altered such that the only recognizable persons were the minors. Furthermore, the actual names of the minors were added to many of the photographs, making it easier to identify them and bolstering the connection between the actual minor and the sexually explicit conduct. **Unlike the computer generated images in *Free Speech Coalition*, where no actual person's image and reputation were implicated, here we have six identifiable minor females who were at risk of reputational harm and suffered the psychological harm of knowing that their images were exploited and prepared for distribution by a trusted adult.**

*United States .v Hotaling,* 634 F. 3d 725 at 728-30 (2nd Cir. 2011) [Emphasis added].

The same rational was expressed by the Eighth Circuit:

Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed. **Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as**

> **discussed in *Free Speech Coalition*, this image created an identifiable child victim of sexual exploitation.** In *Free Speech Coalition* the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, 122 S.Ct. 1389, building on its decision in *Ferber*, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.
>
> **Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under *Free Speech Coalition* and *Ferber*.**

*United States v. Bach*, 400 F.3d 622 at 630-32 (8th Cir. 2005) *cert denied* 546 U.S. 901, 126 U.S. 243 (2005) [Emphasis added].

The Eighth Circuit upheld the criminal conviction of Bach because he "morphed" the innocent image of an identifiable child into "a lascivious pose" thereby creating "an identifiable child victim of sexual exploitation" just as Defendant has done in this case. The "government's compelling interest in protecting a minor's physical and psychological well being" applies equally to all minor victims of sexual exploitation whether the images are for use in court or otherwise. The Eighth Circuit found that the crime occurred once the morphed image was created using the face of a real and identifiable minor. The Second Circuit agreed with this logic. The "emotional well being" of the two minor plaintiffs in this case is threatened as a result of the creation of the images and the "interests of real children are implicated" justifying application of the criminal prohibitions and civil penalties based upon conduct defined by 18 USC § 2256(8)(C) without offending the First Amendment.

In an exercise of twisted and failed logic, Defendant seeks to evade the consequences of his actions by placing the injury he caused upon the shoulders of those who brought him and

those he defends to justice, upon the shoulders of those who shielded the minor plaintiffs from his harm, or by comparison to those who may create other distasteful images not prohibited by the child pornography laws. These "arguments" should be soundly rejected by a court of law as baseless. His actions are his responsibility, not that those who discovered his misconduct or prevented the minor plaintiffs from learning of it. The fact that the child pornography laws do not attempt to prevent emotional or reputational harm for every conceivable situation that may adversely affect a child's life does not render Congress's efforts to protect them from the very real harm cased by child pornography constitutionally infirm or unjustified.

Likewise the fact that the adult plaintiffs were not aware of existence of the images until October of 200 4, and not did not suffer emotional harm prior to that date, is irrelevant to the fact that harm was caused before that date to the minor children.

Plaintiffs not only claim that the images "are intrinsically related to the sexual abuse of children;" Plaintiffs claim the images are a type of child sexual abuse.

For the reasons stated above, the minor plaintiffs do claim that the creation and possession of the exhibits injured them. The Supreme Court and two circuit courts of appeal have recognized that the creation and possession of morphed images of real identifiable children injures them and therefore does not enjoy First Amendment protection. Any claim to the contrary cannot be seriously advanced or taken.

Defendant's attempt to categorize these images as virtual pornography is misplaced. Virtual pornography  has no real children being involved or implicated to any degree. Virtual images "appear to depict" minors in sexually explicit conduct. The images created by Defendant do not "appear to depict" minors in sexually explicit conduct. They depict minors in sexually explicit conduct. Their creation is prohibited conduct involving a minor and therefore do not

invoke First Amendment protection. These images depict real children who were identified by the FBI in sexually explicit conduct. The faces of the children are real and unaltered. There is nothing "virtual" about these images. The images create "an identifiable child victim of sexual exploitation."[24] The reputational harm to the children is the same as if the acts depicted actually took place. Therefore, they are not protected speech.

D. Conclusion

Based upon the law and reasoning set forth above and in Plaintiffs' Motion for Partial Summary Judgment, judgment should be granted in favor of the minor plaintiffs. A judgment should issue finding that Defendant is liable for the injuries he caused. Minor plaintiffs are entitled to summary judgment on the issue of liability on the Second and Sixth Causes of Action because there is no legitimate question of fact. Additionally, the damages are deemed to be at least $300,000.00, costs of the suit, and reasonable attorney's fees by this statute. Attorney's fess, costs and expenses now total $43,004.86.

Minor plaintiffs are entitled to summary judgment on the issue of liability and for injunctive relief on the First and Fifth Causes of Action because there are no legitimate questions of fact and Defendant can not offer "evidence on which the jury could reasonably find for the" defendant. The matter should be set for a trial to determine the amount of damages, punitive damages, costs, and attorney's fees.

Minor plaintiffs are entitled to partial summary judgment on the issue of liability on their Third and Seventh Causes of action because Defendant has admitted appropriating the minor plaintiffs' likenesses to his own advantage. Furthermore, because of the callous and unforgivable use to which Defendant put the likenesses of the minor Plaintiffs, malice should be found as

---

[24] *Bach, supra*, at 632

matter of law. Punitive damages and attorney's fees should be determined and awarded by the Court.

Minor plaintiffs are entitled to summary judgment on the issue of liability on the Fourth and Eighth Causes of Action, including profits derived from and attributable to the unauthorized use of Jane Roe's and Doe's "persona" for a commercial purpose or at Jane Roe's and Doe's election in lieu of actual damages, statutory damages as set forth in Ohio Rev. Code § 2741.07 (A) (1) (b), punitive or exemplary damages pursuant to Ohio Rev. Code § 2315.21, attorney's fees, court costs, and reasonable expenses associated with this action pursuant to Ohio Rev. Code § 2741.07 (D) (1).

Defendant has admitted to using the minor plaintiffs' "persona"[25] for a commercial purpose and not within the agreed parameters of his agreement or consent with Istockphoto. No

---

[25] 2741.01 states:

As used in this chapter:

(A) "Persona" means an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value.

(B) "Commercial purpose" means the use of or reference to an aspect of an individual's persona in any of the following manners:

(1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(3) For the purpose of promoting travel to a place;

(4) For the purpose of fundraising.

(C) "Name" means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual.

(D) "Right of publicity" means the property right in an individual's persona to use the individual's persona for a commercial purpose.

legitimate questions of fact exist concerning these issues and Plaintiffs are entitled to judgment on liability, liquidated damages in the amount of $10,000.00, and injunctive relief. The matter should be set for a trial to determine, punitive damages, and costs.

Respectfully submitted,

/s/ *Jonathan E. Rosenbaum*
Jonathan E. Rosenbaum (Ohio Bar Reg. No. (021698)
Attorney for Plaintiffs
230 Third Street, Suite 104
Elyria, Ohio 44035
(440) 322-7972
fax (440) 322-7972
Email: jerosenbaum@winstream.net

---

(E) "Trier of fact" means the jury or, in a nonjury action, the court.

(F) "Written consent" includes written, electronic, digital, or any other verifiable means of authorization.

(G) "Institution of higher education" means a state institution of higher education as defined in section 3345.011 of the Revised Code, a private nonprofit college or university located in this state that possesses a certificate of authorization issued by the Ohio board of regents pursuant to Chapter 1713. of the Revised Code, or a school located in this state that possesses a certificate of registration and one or more program authorizations issued by the state board of career colleges and schools under Chapter 3332. of the Revised Code