IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| PETER LORA, VICTORIA BLOOM et al | 1:07 CV 2787 |
|---|---|
| | JUDGE DAN AARON POLSTER |
| V. | |
| DEAN BOLAND | REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF ON THE FOUR ISSUES AS ORDERED BY THE COURT |

Dean Boland respectfully submits the attached memorandum as his reply to Plaintiffs' response to Defendant's brief on the four issues as ordered by the court.

/s/ Dean Boland

Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-236-8080 ph
866-455-1267 fax
dean@deanboland.com

MEMORANDUM

The record of this case reflects the following undisputed facts:

1. The minor plaintiffs have stipulated that they are unaware of any harm they have suffered as a result of any conduct claimed in the complaint.

2. Both guardians testified neither minor plaintiff has suffered any financial injury, psychological injury, physical injury or damage to their reputation. Bloom Depo at 18, Lora Depo at 20, 27. No plaintiff has produced any evidence of any injury or damages suffered by either of the *minor* plaintiffs. No plaintiff has produced any evidence of any injury or damages suffered by either of the *adult* plaintiffs. All claims by all plaintiffs for damages should be dismissed. It is axiomatic that no damages can be paid to a person whom has not been injured.

As the Sixth Circuit noted in its opinion in this case, "The fact that Congress has set such a sizeable damages threshold ($150,000) may suggest that the personal injury requirement is a serious one." *Lora, Bloom, et al v. Boland*, Case No. 09-4281 at 12.

Any *argument* of counsel in its response, R. 100, is irrelevant. The facts of this case do not support any argument by counsel that any of the plaintiffs have been harmed, i.e. aggrieved, in any way. Without harm, there are no damages.

Mr. Rosenbaum attempts to analogize the theft of trust funds as a harm that occurs even when an "incompetent" minor is unaware of the harm. The analogy is inapt. In that example, harm can be precisely calculated as the amount of funds misspent by the trustee. That harm can easily be proven by a complaining party by

pointing to expenditures made by the trustee for improper purposes. In contrast, in this case, no evidence of any harm has been offered, and with good reason, none exists.

THE RECURRING MISSTATEMENT OF THE TYPE OF STATUTORY DAMAGES

Plaintiffs' counsel misstates the type of damages the statute calls for as "liquidated damages." R. 100 at 10. Further, he misstates what the term "liquidated damages" even means. Id. at 10-11. Defendant's initial brief fully explained this issue and is incorporated by reference here.

"The minor plaintiffs were clearly injured as a result of the damage to their reputation." Id. at 16. This statement is false. Counsel knows it to be false. His clients have stated, both the minor plaintiffs and the adult plaintiffs, that it is false. The minor plaintiffs have no *knowledge* of any such damage. The adult plaintiffs acknowledged in their depositions that no reputation damages exist.

PLAINTIFFS' COUNSEL'S CONFUSION

"At best, Defendant exposed the minor plaintiffs to…[the] risk of emotional injury and...reputational injury." Id. at 17. Here plaintiffs' counsel appears to back away from the claim that Defendant caused actual injury, a claim his client's dispute and ultimately defeat. Instead, this claim is that some unnamed conduct alleged in the complaint "exposed the minor plaintiffs" to a "risk" of injury. Of course, the statute in this case, as it is in all other cases, does not impose liability for exposing someone to a risk of injury. There has to be an actual injury. There is not one here.

## THE CONSTITUTIONALITY OF 18 U.S.C. 2256(8)(C)

The two opinions referenced in Plaintiffs' response are factually indistinguishable from this case.

In both cases, a person used the images of minors to make it appear they were engaged in prohibited conduct.  Further, the defendant also associated the minors' names with the images and in one case, distributed the images.  Both cases, however, ignore the sweeping First Amendment implications of the definition.

While it is without doubt a noble interest of Congress to protect the well being of children, it is not an interest that can be unbounded.  Both decisions reference by Plaintiffs' counsel ignore the reality that the statute leaves unregulated a wide range of manipulated images that would also harm the reputation of minors if published.  Neither case has any explanation why Congress is permitted to cherry pick just one type of such an emotionally disturbing image to regulate while leaving a range of other equally disturbing images untouched.  And, the one image type that Congress focuses on in this definitional section has sex as its topic.

What both of these opinions do not address is whether Congress can choose one type of speech, that referencing sex, to ban while leaving all other types of speech, potentially equally harmful to children, unregulated.  Essentially, can Congress disfavor free speech related to sex while favoring free speech not related to sex although also with equal risk of harm to minors if distributed to the public.  The First Amendment does not permit the government to use its power to selectively

stifle types of speech, even with a child protection rationale. Moreover, this child protection rationale could easily expand to justify banning entire classes of speech. This would leave the only speech lawful to express as that which would be fit for a child or be guaranteed not to offend or upset a child. This is not the world the First Amendment was designed to create by its inclusion in the U.S. Constitution and Ohio Constitution.

RECENT U.S. SUPREME COURT DECISION ON POINT

In Snyder v. Phelps, Case No. 09-751, Decided March 2, 2011, a church was found liable for $5 Million dollars in damages. Their conduct was protesting at the funerals of soldiers killed in war in Iraq or Afghanistan. Their protest centered on their belief that acceptance of gays and the gay lifestyle by America was inviting God's punishment. That punishment, the church members reasoned, was coming as soldiers dying in war. They celebrated the deaths of these soldiers as proof of god's wrath.

The court upheld the dismissal of the $5 Million dollar judgment. It held the following:

**Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate. Id. at 15.**

What the court did not detail, but this court can take judicial notice of is that it is undoubtedly the case that minors attended these funerals. Minors who were

children of the deceased soldier, siblings, cousins, friends and neighbors.  While those children proceeded to those funerals they were greeted with protest signs containing large handwritten slogans such as, "'God Hates theUSA/Thank God for 9/11,'…'Fag Troops,' 'Semper Fi Fags,' 'God Hates Fags,' 'Priests Rape Boys,' 'You're Going to Hell,' and 'God Hates You.'"  Id. at  8.

The court acknowledged First Amendment protection for such speech "even if a few of the signs…were viewed as containing messages related to" the particular soldier who was the subject of the funeral.  That fact "would not change" that the "overall thrust and dominant theme" of the speech, "spoke to broader public issues."  Id.

The particular soldiers family that were plaintiffs in the case, "[argued] that the church members in fact mounted a personal attack" on the soldier and his family.  The court disagreed noting that the speech complained of had been offered at prior funerals.  And, there was no evidence of a relationship between the church members' speech and this soldier in particular.  Id. at 13.

Likewise, in this case, the claimed Free Speech, occurring in a courtroom in the context of a criminal case proceeding, persisted long before any plaintiff was involved in any particular court exhibit.  There is no evidence of any prior relationship or animosity between the parties as motivating any of the conduct alleged in the complaint.

EQUALITY OF LAWYERS IN CRIMINAL CASES

There is no case law holding that prosecutors have superior rights to arguments or exhibits or any feature of a criminal proceeding.  In Snyder, the court noted that the church members' who were sued were only sued because of the content of their message.  "A group of parishioners standing at the very spot where Westboro stood, holding signs" without offensive messages would not face liability.  Likewise, in the cases in which Plaintiffs' allege the court exhibits were used, prosecutors were routinely using identical images as part of their prosecution.  Those prosecutors were not seeking permission or authorization of any claimed, depicted minors in those images or videos.  They were duplicating, distributing, displaying and using those images and videos as evidence in their case.  As in *Snyder* it was not the "what" of the Defendant's exhibits, it was the "who" was using them.

In this very case, according to Mr. Rosenbaum's legal fees exhibit submitted as part of his post-appeal filing, R. 100, he solicited, received and possessed the very same exhibits at issue in this case.  Therefore, he violated the federal statute for possession of such material.  However, no court would accept a lawsuit on behalf of any of his clients, against him, for his clear violation of the federal child pornography statute and argued liability for damages flowing from that conduct.  *He* was allowed to intentionally violate the federal child pornography statute possessing the same court exhibits that he now argues should be the source of liability imposed on Defendant.

Finally, the court in *Snyder* acknowledged that "Westboro addressed matters of public import on public property, in a peaceful manner, in full compliance with the guidance of local officials." Id. at 15. Likewise, Defendant here created court exhibits to address matters of public import, on public property (an Ohio or Federal Courtroom), in a peaceful manner and in full compliance with the guidance of Ohio statutes, Ohio state court judges and at least one federal district court judge in Oklahoma.

Nowhere in *Snyder* did the court except the conduct of the church members if it resulted in some emotional harm to children.

/s/ Dean Boland

Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-236-8080 ph
866-455-1267 fax
dean@deanboland.com

Proof of Service

A copy of the foregoing will be served on all parties this 15th of August 2011 by operation of the court's electronic filing system.

/s/Dean Boland
Dean Boland