**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PETER LORA, et al.,** | ) | Case No. 1:07 CV 2787 |
| | ) | |
| Plaintiffs, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **DEAN BOLAND,** | ) | |
| | ) | |
| Defendant. | ) | |

## I. BACKGROUND

In the course of preparing expert testimony and exhibits for state and federal criminal trials in early 2004, Attorney Dean Boland downloaded innocent images of children from a stock photo website, then digitally modified (or "morphed") them into images of identifiable children engaged in sexually explicit conduct. Boland displayed the morphed images in courtrooms in Ohio and Oklahoma to help defend his clients against state and federal child pornography charges. Boland created the images to show how difficult it is for a person in possession or receipt of child pornography to discern whether the images are those of real children engaged in sexual activity or "virtual" children. The end result, when skillfully done, may be indistinguishable to the untrained eye from authentic images of minors engaged in sexual conduct. Congress has expressly criminalized such images by defining child pornography to include "any visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(c). There is

no evidence that Boland used these images for anything other than providing a defense in criminal child pornography cases.

In May 2004, the FBI's Cleveland office initiated an investigation of Boland. In June 2005, FBI agents searched his home and car and seized certain electronic files. In April 2007, Boland entered into a pre-trial diversion agreement with the U.S. Attorney's Office for the Northern District of Ohio. Therein, Boland admitted violating 18 U.S.C. § 2252A(a)(5)(B)'s prohibition against knowing possession of child pornography, as defined in § 2256(8)(c). A condition of the pretrial diversion agreement required Boland to make a public apology in the Cleveland Bar Journal, where he stated, "I do recognize that such images violate federal law."

In September 2007, two of the minors whose images he used and their guardians filed this civil case against Boland under 18 U.S.C. § 2252A(f) which provides civil damages to "any person aggrieved" by reason of conduct criminalized under § 2252A(a), and under § 2255 which provides monetary damages of no less than $150,000 to minor victims who have suffered personal injury as a result of the same criminal conduct. In September 2009, this Court granted summary judgment to Boland on the federal claims and chose not to resolve the state law claims. (Doc #: 85.) Regarding the federal claims, the Court reasoned that to read the federal statutes as permitting liability under the instant facts could implicate a criminal defendant's Sixth Amendment right to counsel; was unfair given that Boland was responding to a federal court directive when he created and possessed the morphed images in Oklahoma; and would create serious comity issues since Ohio provided statutory immunity from state child pornography prosecutions for expert witnesses.

On appeal, the Sixth Circuit disagreed, finding that Congress had created no express or implied exceptions for expert witnesses in these circumstances, and that no common-law exemptions apply in this setting. *Doe v. Boland*, 630 F.3d 491 (6th Cir. 2011). Accordingly, the Sixth Circuit reversed this Court's decision and remanded the case, stating:

> In view of these conclusions, we need not reach other defenses Boland has raised and that the district court has not yet considered. Boland, for example, argues that the children did not suffer "personal injury," as required under §2255, because the parties have stipulated that each child does not know about the images. The fact that Congress has set such a sizeable damages threshold ($150,000) may suggest that the personal injury requirement is a serious one. He also argues that none of the plaintiffs can show they are "aggrieved" under § 2252A(f). And it is possible that constitutional defenses remain. We entrust the initial resolution of these issues to the capable hands of the district court judge.

*Id*. at 499.[1]

Upon remand, the Court held a teleconference with counsel to determine how best to proceed with this case. The parties agreed to brief the following issues: whether any of the Plaintiffs are "persons aggrieved" entitling them to monetary damages under § 2252A(f); whether the minor Plaintiffs suffered "personal injury" under § 2255 as a result of the criminal violations; whether the definition of child pornography in § 2256(8)(c) violates the First Amendment; and whether the application of the federal child pornography statutes to an expert witness in Boland's circumstances violates the Sixth Amendment right to effective counsel. Pursuant to Fed. R. Civ. P. 5.1(a)(1)(A)(2), Boland apprised the United States of America of the aforementioned constitutional challenges, thus affording the Government an opportunity to intervene and file a brief opposing those challenges. (Doc #: 95.) The Government timely filed

---

[1] Although the Sixth Circuit expressly characterized the argument on appeal as: "Do the federal child pornography laws exempt those who violate the law in the course of providing expert testimony," the panel in dicta suggested that Boland's constitutional challenges lacked merit. *See Boland*, 630 F.3d at 494.

a notice of intervention and a brief in defense of the constitutionality of 18 U.S.C. §§ 2255, 2252A(a)(5)(B), 2256(8)(c) and 2252A(f). (Respectively, Doc ##: 111, 112.) The Court granted Boland's request to file a response brief, and he timely filed that brief. (Respectively, Doc ##: 113, 114.) The Court has reviewed the parties' briefs (Doc ##: 98, 100, 106), the Government's brief and Boland's response (Doc ##: 112, 114), and the entire record and is prepared to issue its ruling.

## II. LAW AND ANALYSIS

Pursuant to the constitutional-avoidance doctrine, the Government asks the Court not to address the constitutional questions if it can dispose of this matter on other-than-constitutional grounds. (Doc #: 112 at 7-8.) While the Court believes it can resolve this case on non-constitutional grounds, it will address the constitutional issues as well so that the Sixth Circuit can review the Court's rulings on all issues raised by Boland.

### A.

Because none of the Plaintiffs have seen the pictures and the minors know nothing about them or this case, the Court must determine (1) whether the minor Plaintiffs have suffered "personal injury" under § 2255 as a result of Boland's conduct,[2] and (2) whether Plaintiffs are "persons aggrieved" entitling them to monetary damages under § 2252A(f)[3]

---

[2] 18 U.S.C. § 2255 provides that "[a]ny person who, while a minor, was a victim of [the various criminal child pornography statutes] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any persons described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value."
18 U.S.C. § 2255(a).

[3] 18 U.S.C. § 2252A(f) provides that "[a]ny person aggrieved by reason of the conduct prohibited under subsection (a) or (b) may commence a civil action" for compensatory and punitive damages, injunctive relief, and reasonable attorney fees and costs.

According to Boland, none of the Plaintiffs are "persons aggrieved" based on an online dictionary definition of "aggrieved" and because Plaintiffs stipulated that they have suffered no damages, the minors have not seen the court exhibits, and the minors are unaware of this litigation. With regard to "personal injury," Boland argues that the $150,000 presumed damages is merely a threshold, and that such a steep threshold suggests that the personal injury requirement is a serious one. He contends that "[t]he stipulations in the case make the finding of harm <u>impossible</u>." (Doc #: 98, at 12 (emphasis added).)

Plaintiffs argue that Congress uses the terms "aggrieved" when it intends to cast the widest net possible to ensnare unlawful conduct, citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 12 (1998). Further, if the criminal prohibitions of the U.S. Code apply in "morphing" situations where the victim is unaware of the image, as in *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), then it follows that the civil remedies apply.

The Court agrees that the minor Plaintiffs are "aggrieved" and that they have suffered "personal injury." First, there is nothing in either statute that says a victim needs to have seen the offending images, or to have been present when the images were made or shown, in order to be aggrieved or suffer personal injury. It can be of little consolation to the minors or their parents that these pictures were displayed only to judges, juries and various court-related personnel. And it is hard to comprehend how Congress could not have intended that the minors depicted in the images would not be "aggrieved." If the minors depicted engaging in sex acts are not "aggrieved," then who is?

With regard to § 2255, there is nothing in the statute to suggest that the minors need to know about the images in order to suffer a personal injury. The harm has already occurred.

Five-year-old Jane Roe has been depicted eating a male penis, and six-year-old Jane Doe has been depicted performing sexual acts with two adult males. These images have been displayed in courtrooms in Ohio and Oklahoma. Once images have been shown in public, it is impossible to know that they will never surface again. If one accepts Boland's argument, he escapes civil liability because the girls' parents have had the good judgment not to tell their daughters about the images, which would have risked compounding the damages by causing psychiatric trauma. And if the parents had told their daughters about the images, Boland would almost certainly be arguing that the parents had unnecessarily caused injury for which he should not be liable. It is probable that Congress provided for the large statutory damages of $150,000 just so that it would not be necessary to have a trial requiring the images to be shown and the victims to testify about the psychological trauma they have suffered. Also, the large statutory damages may have a deterrent effect.

In *United States v. Bach*, the Eighth Circuit affirmed the conviction of a defendant for, among other things, receipt of a photo showing a young nude boy sitting in a tree grinning, with his pelvis tilted upward, his legs opened wide, and a full erection. Below the image was the name of a well-known child entertainer, and evidence at trial showed that a photograph of the entertainer's head had been skillfully inserted onto the photograph of the nude boy so that it appeared to be the entertainer posing in the tree. There, the Court found that Congress's intent on banning such morphed images was "to prevent harm to minors resulting from the use of 'identifiable images . . . in pornographic depictions, even where the identifiable minor is not directly involved in sexually explicit activities.'" *Bach*, 400 F.3d at 631 (citing S. Rep. 104-358, at 8 (1996)). The court noted that, although there was no contention that the nude body was

actually that of the entertainer or that he was involved in the production of the image, a lasting record has been created of . . . an identifiable minor child, seemingly engaged in sexually explicit activity.  He is thus victimized every time the picture is displayed." *Id*. at 632 (emphasis added).  Furthermore, in contrast to the statutory provisions defining child pornography to include pornography using youthful looking adults (i.e., §¶ 2256(8)(B) and (D)) – which provisions were struck down by the U.S. Supreme Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) – the morphed image created an identifiable child victim of sexual exploitation.  *Id*. (emphasis added).

Similarly, in *United States v. Hotaling*, 634 F.3d 725 (2nd Cir. 2011), the Second Circuit affirmed the conviction of a defendant who claimed to only possess for his personal gratification the images of identifiable minors that he had morphed onto the bodies of adults engaged in sexually explicit conduct.[4]  Hotaling argued that § 2256(8)(C) was unconstitutional as applied to him, distinguishing the six morphed images he possessed from the one in *Bach* – where the face of a famous child entertainer was morphed onto the image of an actual minor.  The Second Circuit rejected that argument, noting its agreement with the *Bach* court that the interests of actual minors are implicated when their faces are used in creating morphed images that make it appear that they are performing sexually explicit acts.  *Hotaling*, 634 F.3d at 729-30 (emphasis added).  And, in response to Hotaling's contention that no one was harmed by his possession of the morphed images, the court held that "the harm begins when the images are created."  *Id*. at 730 (citing *Free Speech Coalition*, 535 U.S. at 254).

---

[4]Although there was no evidence that Hotaling distributed the images, the court speculated that he appeared to be preparing the images for internet distribution.  *See Hotaling,* 634 F.3d at 729.

In any event, the first rule of statutory construction is that if the words of Congress have a plain and clear meaning, that is how they should be read. *See, e.g., United States v. Loehr,* 966 F.2d 201 (6th Cir. 1992). The words "personal injury" and "aggrieved" have plain and clear meaning, and the Court finds that they apply to the two minor plaintiffs in this case.

It is not unfair that Boland should have to pay $300,000 for his conduct. He knew what he was doing, and he did not have to create child pornography to make his point in court as an expert witness. As the Sixth Circuit acknowledged,

> Boland could have illustrated the difficulty of discerning real from virtual images by combining two innocent pictures into another innocent picture. Or, if Boland wished to use pornography to make the point, he could have morphed an image of an adult into that of a minor engaging in sexual activity. Boland indeed did the latter as part of his preparations, and had he stopped there we would not be here. These images are not prohibited by federal law, . . . and are protected by the First Amendment to the extent they are not obscene, *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250-52 (2002).

*Doe v. Boland*, 630 F.3d at 496-97.

Consequently, the Court rejects Boland's arguments that the minor Plaintiffs are neither aggrieved nor suffered personal injury.

**B.**

Next, we turn to the constitutional issues. Although Boland admits that he violated the letter of the law, he argues that criminalizing the morphed images he created and displayed violates the First Amendment prohibition against protected speech, and the Sixth Amendment right to an effective defense and a fair trial. Further, because the criminal statutes run afoul of the First and Sixth Amendments, the civil remedies do as well.

While the parties' summary judgment motions were pending in this case, Boland filed a related complaint for declaratory judgment and injunctive relief against U.S. Attorney General

Eric Holder in this district court. *See Boland v. Holder*, Case No. 1:09CV1614 (N.D. Ohio Sep. 30, 2010). In the Civil Cover Sheet, Boland neglected to indicate that the case was related to my case, and the case was assigned to my colleague, Chief Judge Solomon Oliver. There, Boland asserted claims on behalf of Ohio citizens, criminal defense attorneys and expert witnesses who are involved in state or federal child pornography cases. Boland complained that Ohio defense attorneys and expert witnesses face federal criminal and civil liability for doing the same thing Boland did in violation of their First Amendment rights, and that the fear of federal prosecution and civil liability deprives Ohio citizens charged with state child pornography charges of their Sixth Amendment right to a fair trial. Thus, he asked the district court to declare that the federal child pornography statutes do not preempt the state statutes.

After briefing, Judge Oliver granted the Government's motion to dismiss. *See Boland v. Holder*, No. 1:09CV1614 Doc #: 18, 2010 WL 3860996 (N.D. Ohio Sep. 30, 2010), appeal docketed, No. 10-4381 (6th Cir. Oct. 13, 2010). Judge Oliver interpreted Boland's complaint as raising three issues: whether the Ohio child pornography statutes were preempted by the federal child pornography statutes; whether the application of the federal child pornography statutes to conduct authorized under state law violates the First Amendment (or threatens to chill the exercise of constitutional rights by counsel and/or defendants); and whether the federal child pornography statutes prevent criminal defendants from receiving a fair trial in violation of the Sixth Amendment. Judge Oliver found that, to the extent the state statutes conflict with the federal statutes, "it is well-established that the state laws are 'without effect." *Holder*, 2010 WL 3860996, at *5 (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Judge Oliver next determined that Boland's images were not protected speech under the First Amendment because

-9-

his conduct involved creating a permanent record of real and identifiable minors in sexually explicit positions. *Id*. at *6-8. Finally, Judge Oliver held that requiring court personnel and defense experts in Ohio state criminal proceedings to comply with federal law does not deprive those defendants of a fair trial under the Sixth Amendment. *Id*. at *8-9.

The Government now asks the Court, should it become necessary to address the constitutional questions, to stay its ruling until the Sixth Circuit decides *Holder*. While the Court might otherwise stay this case due to similar issues pending before the Sixth Circuit, it is the Sixth Circuit that prompted this Court to address the constitutional and other issues Boland previously raised and the Court did not address. In proceeding to address the constitutional challenges, the Court notes that it agrees with the rationale employed and conclusions made by Judge Oliver in *Holder*, the Government in its brief, the Second Circuit in *Hotaling*, and the Eighth Circuit in *Bach* – all of which rejected the same First and Sixth Amendment challenges to the definition of child pornography in § 2256(8)(C).

The Supreme Court has long held that the First Amendment right to freedom of speech is not absolute, and that certain categories of speech may be prohibited by statute (e.g., obscenity, defamation, incitement, fighting words). *Simon & Schuster, Inc. v. Members of N.Y. Crime Victims Bd.*, 502 U.S. 105, 127 (1991). *See also Brown v. Entm't Merchants Ass'n*, ___ U.S. ___, 131 S.Ct. 2729, 2733 (2011) (collecting cases). Child pornography is another form of unprotected speech. *See New York v. Ferber*, 458 U.S. 747, 757 (1982) (sustaining legislation aimed at protecting the physical and emotional well-being of youth, even though content-based). The *Ferber* Court upheld a state law prohibiting persons from knowingly distributing material which depicted children under the age of 16 engaging in sexual activity.

The power to prohibit child pornography is not absolute either, as where pornographic materials are made using no real minors or only youthful-looking adults (i.e. "virtual" child pornography). *See Free Speech Coalition*, 535 U.S. at 242 (striking down §§ 2256(8)(B) and 2256(8)(D)).[5] But the Supreme Court has never held that visual depictions created, adapted, or modified to appear that real, identifiable minors are engaging in sexually explicit conduct is protected speech. In fact, the Supreme Court specifically distinguished the virtual child pornography at issue in *Free Speech Coalition* from the "morphed" child pornography prohibited by § 2256(8)(C) – the provision at issue in this case:

> Section 2256(8)(C) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent picture of real children so that [they] appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*.

*Free Speech Coalition*, 535 U.S. at 242 (emphasis added). Most federal courts addressing the question of whether § 2256(8)(C) violates the First Amendment have concluded that morphed child pornography is not protected speech, and affirmed convictions of persons who were in possession or receipt of such pornography. *See Hotaling*, 634 F.3d at 730; *Bach*, 400 F.3d at 632; *United States v. Hoey*, 508 F.3d 687, 693 (1st Cir. 2007); *but see State v. Zidel*, 156 N.H. 684 (2008) (state court case reversing the conviction of a defendant who possessed "morphed child pornography" where no part of the images were the product of actual child abuse, and there was no demonstrable harm to the child whose face was depicted in the images). Unlike the

---

[5]Section 2256(8)(B) defined child pornography as any visual depictions that "appear to be" minors engaging in sexually explicit conduct, while § 2256(8)(D) defined child pornography as visual depictions advertised "in such a manner that conveys the impression that" children are engaging in sexually explicit conduct.

categories of pornography protected in *Free Speech Coalition*, the images created, possessed and displayed by Boland in numerous courtrooms portrayed real, identifiable minors engaging in sexually explicit conduct.

Because Boland has failed to demonstrate that "morphed" child pornography is protected speech and that § 2256(8)(c) violates the First Amendment, he cannot show that the federal statutes providing civil remedies for the creation, possession, or display of morphed child pornography violate the First Amendment either.

**C.**

Next, Boland argues that without immunity for this kind of expert testimony (i.e., morphing pictures of innocent, identifiable children into pictures of those children engaged in sexual activity), a defendant's right to put on an effective defense is severely compromised. Put another way, a criminal defendant's Sixth Amendment right to a fair trial gives defense experts the right to violate federal law. According to Boland, morphing the images of anything less than identifiable children into pornographic images is less effective than otherwise, and points to his success in defending persons charged with child pornography.

To begin, the Sixth Circuit has already ruled that there is no federal statutory or common law immunity covering his conduct, and Boland did not appeal that ruling to the Supreme Court. Second, the Sixth Amendment is not implicated by the application of a significant statutory monetary penalty ($150,000 per victim) to Boland's conduct. As the Sixth Circuit found, Boland could have accomplished the purpose of his testimony without creating child pornography using images of real minors. He could have either used fictitious (e.g., computer-generated) images of children, or pictures of real adults, in an attempt to demonstrate the

-12-

proposition that only the creator of the images can know for certain if the pornographic images depict real persons. However,

> Boland did something else. He morphed images of *minors* into pornography, images that "implicate the interests of real children." [*Free Speech Coalition*, 535 U.S.] at 242. . . . The law expressly covers such images, 18 U.S.C. 1 2256(8)(C), and the reality that Boland himself did not "use" real children to product the images makes no difference, see id. § 2252A(c). . . .Once Boland modified the images of the minors, he crossed the line between possessing lawful images and violating the statute.

*Doe v. Boland*, 630 F.3d at 497.

In short, the Court concludes that a constitutionally effective defense to a child pornography charge does not include the right to victimize additional minors by creating new child pornography in the course of preparing and presenting a defense. Therefore, Boland's Sixth Amendment challenge to the federal child pornography statutes fails.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** summary judgment in favor of Plaintiffs and against Boland on the federal claims and awards the minor Plaintiffs $300,000 in damages (i.e., $150,000 to Plaintiff Jane Doe and $150,000 to Jane Roe). Because the Court has resolved the federal claims, it declines to exercise supplemental jurisdiction over the state-law claims which are hereby **DISMISSED WITHOUT PREJUDICE**.

Finally, Plaintiffs" Motion to Strike (**Doc #: 108**) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

    */s/ Dan A. Polster    October 20, 2011*
    **Dan Aaron Polster**
    **United States District Judge**