RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0382p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

| | |
|---|---|
| JANE DOE and JANE ROE, c/o their guardians and next friends,<br>    *Plaintiffs-Appellees*,<br><br>UNITED STATES OF AMERICA,<br>    *Interested Party-Intervenor*,<br><br>    *v.*<br><br>DEAN BOLAND,<br>    *Defendant-Appellant*. | No. 11-4237<br><br><br>1:07cv2787 |

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:07-cv-2787—Dan A. Polster, District Judge.

Argued: October 10, 2012

Decided and Filed: November 9, 2012

Before: SUTTON and GRIFFIN, Circuit Judges; BERTELSMAN, District Judge[*]

_____

**COUNSEL**

**ARGUED:** Dean Boland, BOLAND LEGAL, LLC, Lakewood, Ohio, for Appellant. Jonathan E. Rosenbaum, Elyria, Ohio, for Appellees. Anne Murphy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Dean Boland, BOLAND LEGAL, LLC, Lakewood, Ohio, for Appellant. Jonathan E. Rosenbaum, Elyria, Ohio, for Appellees. Anne Murphy, Thomas M. Bondy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

---

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

**OPINION**

SUTTON, Circuit Judge.  To help defendants resist child-pornography charges, technology expert and lawyer Dean Boland downloaded images of children from a stock photography website and digitally imposed the children's faces onto the bodies of adults performing sex acts.  Boland's aim was to show that the defendants may not have known they were viewing child pornography.  When the parents of the children involved found out about the images, they sued Boland under the civil-remedy provisions of two federal child-pornography statutes.  The district court granted summary judgment to the parents and awarded them $300,000 in damages.  We affirm.

I.

In February 2004, Dean Boland downloaded images of two identifiable children, given the unidentifiable names Jane Doe and Jane Roe for purposes of this litigation, from a stock photography website.  *See Doe v. Boland*, 630 F.3d 491, 493 (6th Cir. 2011).  Boland digitally manipulated ("morphed") the photographs to make it look like the children were engaged in sex acts.  In one picture, five-year-old Jane Roe was eating a doughnut; Boland replaced the doughnut with a penis.  In another, he placed six-year-old Jane Doe's face onto the body of a nude woman performing sexual acts with two men.  In March and April 2004, Boland used the images as part of his expert testimony in two Ohio state-court proceedings and a federal criminal trial in Oklahoma involving child pornography.  He displayed "before-and-after" versions of the images, testifying that it would be "impossible for a person who did not participate in the creation of the image to know [the child is] an actual minor."  R. 77-2 at 119.

Boland's testimony caught the attention of the FBI's Cleveland office.  Federal agents searched his home and seized several files from his computer.  *Boland*, 630 F.3d at 494.  In April 2007, Boland entered a pre-trial diversion agreement with the U.S. Attorney's Office for the Northern District of Ohio, in which he admitted violating

18 U.S.C. § 2252A(a)(5)(B) by knowingly possessing a "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." R. 73-1; 18 U.S.C. § 2256(8)(C). Boland also published an apology in the Cleveland Bar Journal, stating, "I do recognize that such images violate federal law." R. 73-1 at 12.

In September 2007, Jane Doe, Jane Roe and their guardians filed this lawsuit against Boland under 18 U.S.C. §§ 2252A(f) and 2255. Section 2252A(f) provides a civil remedy to "[a]ny person aggrieved" by child pornography, while § 2255 provides a civil remedy of at least $150,000 in damages to minor victims who suffer a "personal injury" from various sex crimes.

The district court granted summary judgment to Boland on the ground that these two civil remedy statutes exempt expert witnesses from liability. We reversed, holding that the laws contain no such exemptions or any other exemption that would cover Boland. *Boland*, 630 F.3d at 493. On remand, the district court ruled for the plaintiffs and awarded $150,000 to Doe and $150,000 to Roe.

## II.

To resolve Boland's appeal, we must answer three questions: (1) did the plaintiffs meet the requirements for obtaining relief under § 2255; (2) does the definition of morphed images as "child pornography" in § 2256(8)(C) violate the First Amendment as applied to Boland's conduct; and (3) does the district court's award violate the Sixth Amendment's right to counsel?

### A.

Section 2255 allows "[a]ny person who, while a minor, was a victim" of a variety of sex crimes "and who suffers personal injury as a result . . . regardless of whether the injury occurred while such person was a minor" to sue and "recover the actual damages such person sustains." Any person who meets that description "shall be deemed to have sustained damages of no less than $150,000 in value." *Id.* One of the statutes listed in § 2255 is 18 U.S.C. § 2252A, and Boland admits he violated it by morphing the

No. 11-4237   *Doe et al. v. Boland*   Page 4

plaintiffs' images into pornography. That act, Boland also concedes, makes Doe and Roe "minor" "victim[s]" under § 2255.

That leaves the question whether the plaintiffs suffered a resulting "personal injury." They did. "Like a defamatory statement," pornography injures a child's "reputation and emotional well-being," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002), and violates "the individual interest in avoiding disclosure of personal matters," *New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) (internal quotations omitted). Morphed images are of a piece, offering a difference in degree of injury but not in kind. Boland created lasting images of Doe and Roe, two identifiable children, purporting to engage in sexually explicit activity. If the point of Boland's exercise was to demonstrate that the naked eye cannot distinguish morphed images of child pornography from real child pornography, as he claims it was, that goes a long way toward confirming that morphed images may create many of the same reputational, emotional and privacy injuries as actual pornography. And like defamation, those harms are "personal injuries." *See, e.g.*, *United States v. Burke*, 504 U.S. 229, 235–36 & n.6 (1992) (explaining that "personal injuries," when used in the tax code, include "'dignitary' or nonphysical tort[s] such as defamation"), *superseded by statute on other grounds*, Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1605, 110 Stat. 1838; *see also* Restatement (Second) of Torts § 7 (defining "injury" as "the invasion of any legally protected interest of another"); Restatement (Third) of Torts: Liability for Economic Harm § 2, cmt. a (Tentative Draft) ("Defamation . . . is regarded as inflicting a kind of personal injury: harm to the plaintiff's reputation."); Black's Law Dictionary (9th ed. 2009) (defining "personal injury" as "any invasion of a personal right, including mental suffering"). Doe and Roe suffered personal injuries under § 2255.

That cannot be, Boland insists, because § 2255 plaintiffs must show two things—that they are "victims" *and* that they suffered a "personal injury"—suggesting that a plaintiff's "personal injury" means more than showing he was a "victim." Not necessarily. Courts, sure enough, generally construe statutes to avoid surplusage. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012). But Boland focuses

Case: 07-10-02787-DAP Doc #: 10421 Filed: 08-13-09/12 1 of 09 1/09/12 Page ID #: 173

on "victim" and "personal injury" at the expense of other context-illuminating words in the statute's first sentence. Section 2255 requires that a person be a minor when she is the victim of a sex crime but allows that person to recover when she incurs an injury, "regardless of whether the injury occurred while such person was a minor." In this instance, the plaintiffs became victims of Boland's conduct at the same time that they suffered injuries, namely the moment Boland created the morphed images with their likenesses. But victimhood and injury need not occur simultaneously. A child abused through a pornographic video might have one § 2255 claim against the video's creator as soon as it is produced and another against the distributor who sells a copy of the video twenty years later. Cast in this light, the statute's separate references to "victim" and "personal injury" show only that minor victims may sue for injuries they incur later in life; the statute does not create one category of victims and another category of people who suffer personal injuries.

Timing is not the only sign that § 2255 does not create separate categories. Even if this statutory explanation did not exist, the presumption against surplusage does not apply to doublets—two ways of saying the same thing that reinforce its meaning. *Freeman*, 132 S. Ct. at 2042–43. The U.S. Code is replete with meaning-reinforcing redundancies: an invalid contract is "null and void"; agency action must not be "arbitrary and capricious"; bureaucrats send "cease and desist" letters; a bankruptcy trustee can sell a debtor's property "free and clear" of other interests; and so on. *See, e.g.*, 16 U.S.C. § 2613; 7 U.S.C. § 13b; 11 U.S.C. § 363(f). When faced with an agency order, to use one of these examples, how could a citizen cease but not desist? He could not. "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan A. Garner, *Reading Law* 176–77 (2012); *see TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 578 (6th Cir. 2010) (observing that "lawyers frequently say two (or more) things when one will do or say two things as a way of emphasizing one point").

Case: 07-10-02787-DAP Doc #: 10421 Filed: 08-13-09/12 5 of 09 1/09/12 Page ID #: 173

Case: 10-4237 Document: 006111484843 Filed: 12/06/2012 Page: 6

Case: 1:07-cv-02787-DAP Doc #: 142-1 Filed: 01/09/13 1 of 11. PageID #: 1774

Just so here. A victim by definition is someone who suffers an injury. A defendant convicted of a child-pornography offense must pay restitution to a "victim": "the individual harmed as a result of a commission of a [child-pornography] crime." 18 U.S.C. § 2259(c). That definition also comports with the common understanding of what it means to be a "victim." *See, e.g.*, Webster's Second Int'l Dictionary 2841 (1953) ("A person or living creature injured . . . at the hands of another person."); Black's Law Dictionary (9th ed. 2009) ("A person harmed by a crime, tort, or other wrong."); Oxford English Dictionary Online (3d ed. 2012) ("One who suffers some injury, hardship, or loss."). Jane Doe and Jane Roe undoubtedly were victims of Boland's conduct. So too they undoubtedly suffered personal injuries by any conventional reading of that phrase.

These injuries also suffice to establish standing under Article III. Standing requires a plaintiff to show an "injury in fact," namely an "actual or imminent" invasion of a "concrete and particularized" legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Jane Doe and Jane Roe are real children with legally protected interests in their reputations. *See Ashcroft*, 535 U.S. at 249. By sharing the morphed images with defense counsel and court staff and displaying the images in a courtroom, Boland invaded those interests. Unlike plaintiffs who seek to collect for an abstract injury, *see Lujan*, 504 U.S. at 563–64, Jane Doe and Jane Roe suffered injuries in fact. And unlike plaintiffs whose only injury is the violation of a statutory right, *see Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 988–89 (6th Cir. 2009); *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012), Boland's display of the morphed images in court harmed Doe and Roe. Section 2255 provides Doe and Roe relief, namely $150,000 in presumed damages, but it did not create the rights Boland violated.

Boland separately argues that § 2255 requires victims of child pornography to show that they incurred "actual damages," and plaintiffs offer no evidence of any such damages. Most tort plaintiffs, it is true, must show the amount of their damages. But § 2255 is no ordinary cause of action. The statute declares that any victim "shall be deemed to have sustained damages of no less than $150,000 in value." 18 U.S.C.

§ 2255(a). Under Boland's interpretation, victims would have to prove some amount of damages first, and if that amount were less than $150,000, the court would increase the damages to the statutory minimum. Such a reading turns § 2255 upside down. The point of a minimum-damages requirement is to allow victims of child pornography to recover *without* having to endure potentially damaging damages hearings. Were it otherwise, a fresh damages hearing might inflict fresh wounds, *increasing* the child's suffering *and* increasing the compensatory damages to which she is entitled. "Congress could rationally conclude" that all children depicted in morphed pornography "are seriously injured and deserve a high threshold amount of damages." *Boland*, 630 F.3d at 498. Once a child has shown she was the victim of a sex crime, there is little point in forcing her to prove an amount of damages, only to have the court disregard that figure and award the statutory minimum. The district court did not err in awarding Doe and Roe the minimum statutory amount without proof of "actual damages."

Section 2255, we recognize, was not the only cause of action plaintiffs filed, but it was all they needed to succeed. The plaintiffs also sued under § 2252A(f), which allows "[a]ny person aggrieved by" child pornography to "commence a civil action." Unlike § 2255, however, § 2252A(f) contains no threshold damages provision. Under § 2252A(f)(2)(B), a court may award "compensatory and punitive damages" to a plaintiff. Because the plaintiffs did not try to show the exact amount of their damages, *see* R. 72, the district court could not have based its award on this cause of action. The district court's award of the statutory minimum under § 2255—$150,000 to each plaintiff—confirms that the plaintiffs prevailed on that statute alone, and, as we have just shown, they did so permissibly.

B.

This damages award does not run afoul of the First Amendment, which says that "Congress shall make no law . . . abridging the freedom of speech." Not all speech, whether verbal or visual, receives First Amendment protection. Obscenity, defamation, fraud, incitement and solicitation of crime are all examples of communication for which the speaker must take responsibility and from which the First Amendment offers no

sanctuary. *See United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010). Child pornography is the same. *Ferber*, 458 U.S. at 763–64. The "evil" of child pornography "so overwhelmingly outweighs the expressive interests, if any, at stake" in this form of communication that it lies categorically beyond constitutional protection, meaning that "no process of case-by-case adjudication is required" to uphold restrictions on it. *Id.* The rationale is straightforward: Governments have a compelling interest in protecting children from abuse, the value of using children in pornography is non-existent, and the market for child pornography is "intrinsically related" to the underlying abuse. *Id.* at 759.

All of this would make a free-speech challenge to a criminal or civil penalty imposed for *actual* child pornography easy to reject. *Id.* at 763. But what of *morphed* images like the ones Boland created? The relevant statute defines "child pornography" to include morphed images, as it covers a "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C). In addressing a First Amendment challenge to this definition and one found in related statutes, *Ashcroft* struck down a ban on "virtual"—entirely computer-generated—child pornography and pornography that "appears to" depict children. 535 U.S. at 258. That opinion did not resolve the validity of a ban on morphed images, but it did note that those images "implicate the interests of real children" and thus bear a closer similarity to actual child pornography than to virtual or simulated child pornography. *Id.* at 242. Jane Doe and Jane Roe are real children. Their likenesses are identifiable in Boland's images. That Doe and Roe were real victims with real injuries offers one reason for rejecting Boland's First Amendment challenge.

The relatively weak expressive value of morphed images offers another. Morphed child pornography is indistinguishable from actual child pornography, which itself has "exceedingly modest, if not *de minimis*," First Amendment value. *Ferber*, 458 U.S. at 762–63. And unlike pornography that "appears to" depict children, morphed images are never necessary to achieve an artistic goal. *See Ashcroft*, 535 U.S. at 247

(discussing how the "appears to be" ban might prohibit a version of *Romeo and Juliet* that used adult actors to portray the star-crossed teenage lovers). Virtual children or actual adults create the same visual effect as a morphed image, yet do no harm to the interests of identifiable minors.

Other circuits have reached the same conclusion in rejecting First Amendment challenges to § 2256(8)(C) criminal prosecutions since the 2002 *Ashcroft* decision. The Second Circuit explained that the "underlying inquiry" is whether "an image of child pornography implicates the interests of an actual minor." *United States v. Hotaling*, 634 F.3d 725, 729 (2d Cir. 2011). Morphed images of this sort fit the bill. By using identifiable features of children, they place "actual minors" "at risk of reputational harm" and are thus "not protected expressive speech under the First Amendment." *Id*. at 729–30. The Eighth Circuit followed a similar path. Because a morphed image "implicates the interests of a real child," it creates "the type of harm which can constitutionally be prosecuted under [*Ashcroft v.*] *Free Speech Coalition* and *Ferber*." *United States v. Bach*, 400 F.3d 622, 632 (8th Cir. 2005).

The New Hampshire Supreme Court's decision in *State v. Zidel*, 940 A.2d 255 (2008), says nothing to the contrary. That decision invalidated a statute barring possession of morphed images because the *state* child-pornography laws aimed only to "combat the harm resulting to children from the distribution of depictions of sexual conduct involving live performance[s] or visual reproduction of live performances by children." *Zidel*, 940 A.2d at 263. A morphed image, the state court reasoned, does not involve a live sexual performance. *Id*. The federal child-pornography statutes, by contrast, target "computers and computer imaging technology" that can "invade the child's privacy and reputational interests" by "alter[ing] innocent pictures of children to create visual depictions of those children engaging in sexual conduct." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121(1)(6), (7), 110 Stat. 3009 (1996). The legitimate government interest in avoiding "injury to [a] child's reputation and emotional well-being," *Ashcroft*, 535 U.S. at 249, allows Congress to prohibit morphed images.

Boland adds that morphed images harm children only "*if* the person in the image becomes aware of the image's existence and *if* that person is a minor at the time of learning of the image's existence and *if* becoming aware of the image's existence causes psychological harm to the minor." Appellant's Br. at 26. Yet the same might be said of possession of actual child pornography. Under Boland's theory, the collector of child pornography only causes harm *if* he distributes the images to others, *if* he does so while the children depicted are still minors and *if* the children actually suffer a psychological harm. In today's digital world, any image is "primed for entry into the distribution chain" of underground child pornographers. *Hotaling*, 634 F.3d at 730 (citing *Osborne v. Ohio*, 495 U.S. 103, 110 (1990)). Even if Doe and Roe never see the images, the specter of pornographic images will cause them "continuing harm by haunting [them] in years to come." *Osborne*, 495 U.S. at 111. As a result, it is immaterial that Boland never displayed these images outside of a courtroom and never transmitted them electronically. The creation and initial publication of the images itself harmed Jane Doe and Jane Roe, and that is enough to remove Boland's actions from the protections of the First Amendment.

## C.

In claiming that § 2256(8)(C) violates the Sixth Amendment rights of current and future litigants, Boland faces a serious impediment. He recently raised the same argument before another panel and lost. *Boland v. Holder*, 682 F.3d 531, 536–37 (6th Cir. 2012).

\* \* \*

This $300,000 award undoubtedly amounts to tough medicine for Boland. When he created morphed images, he intended to help criminal defendants, not harm innocent children. Yet his actions did harm children, and Congress has shown that it "means business" in addressing this problem by creating sizeable damages awards for victims of this conduct. *Boland*, 630 F.3d at 495. Nor was this Boland's only option for trying to help his clients. He could have shown the difficulty of distinguishing real pornography from virtual images by transforming the face of an adult onto another, or

inserting a child's image into an innocent scene. If he felt compelled to make his point with pornography, he could have used images of adults or virtual children. Instead, he chose an option Congress explicitly forbade: morphed images of real children in sexually explicit scenes. That choice was not protected by the First Amendment, and the children therefore are entitled to the relief Congress offered them.

III.

For these reasons, we affirm.